PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone:     (415) 263-7000
Facsimile:     (415) 263-7010
E-mail:        dgrassgreen@pszjlaw.com
               jrosell@pszjlaw.com

*[Proposed] Counsel to the Debtor*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL LONGSHORE<br>AND WAREHOUSE UNION,<br><br>          Debtor. | Case No. 23-30662-HLB<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY FIRST DAY<br>MOTION FOR INTERIM AND FINAL<br>ORDERS AUTHORIZING DEBTOR TO<br>HONOR PREPETITION OBLIGATIONS<br>TO EMPLOYEES** |

The International Longshore and Warehouse Union (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves (the "Motion"), on an emergency basis, for the entry of interim and final orders, substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, respectively, pursuant to sections 105(a), 363(b), and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing, but not directing, the Debtor to: (a) pay prepetition employee wage and salary obligations owed by the Debtor to its employees; (b) reimburse ordinary course prepetition employee business expenses in accordance with the Debtor's existing company policy; (c) maintain and honor its existing employee benefits programs in the ordinary course of business; and (d) honor all prepetition paid leave claims (vacation pay, sick leave, jury duty pay) in the ordinary course of business, and (ii) (x) authorizing and directing all banks and other financial institutions to receive, process, honor, and negotiate any and all checks drawn on, and transfers made from, the Debtor's accounts to the extent the checks or

Case: 23-30662    Doc# 7    Filed: 10/02/23    Entered: 10/02/23 04:58:56    Page 1 of 26

transfers are on account of any of the foregoing; and (y) prohibiting all banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing; and (iii) for such additional relief that the Court deems just and proper.  In support of this Motion, the Debtor respectfully states as follows:

## I.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.

## BACKGROUND

### A.     The Chapter 11 Case

On September 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor is operating its businesses and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee, committee, or examiner has been made in this Chapter 11 Case.

### B.     General Background

The ILWU is organized under the laws of the State of California as a non-profit labor organization. Pursuant to its *Constitution*, the ILWU's objectives are (a) to unite in one organization, regardless of religion, race, creed, color, gender, sexual orientation, political affiliation or nationality, all workers within the jurisdiction of the ILWU; (b) to maintain and improve the wages, hours and working conditions of all its members without discrimination; (c) to educate the membership of the organization in the history of the American labor movement and in present day labor problems and tactics; and (d) to secure legislation in the interests of labor and to oppose anti-labor legislation.

Since its formation in 1937, the ILWU has grown to approximately 40,000 diverse members in over 50 local unions and affiliates throughout California, Washington, Oregon, Alaska, Hawaii, and Canada. The ILWU's members include workers employed in, among other work and industries, the (a) loading and unloading of vessels, rail, and trucks at ports; (b) warehousing, wholesaling, and distribution industries (including mining); (c) operation of tugs, towboats, barges, and ferries; (d) agriculture and aquaculture (including processing, transportation, and distribution) industries; (e) tourist industry (including hotels, resorts, and restaurants); (f) wholesale and retail trade, general manufacturing, and food processing; and (g) service industries (including hospitals and health care facilities, financial and insurance operations, newspapers, restaurants, breweries, early childhood education, etc.).

The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of William E. Adams in Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith and fully incorporated herein by reference.[1]

**C.     Need for Relief**

In the ordinary course of business, the Debtor pays wages and compensation and related accrued administrative fees to employees, pays for and/or maintains various Employee Benefits (as defined below), and withholds various taxes and other amounts as may be required by law (collectively, the "Compensation and Benefits"). By this Motion, the Debtor seeks authorization to pay all Compensation and Benefits that accrued prepetition and to continue to meet its obligations under the Compensation and Benefits programs.

The relief requested by this Motion is necessary and appropriate to ensure a smooth transition into chapter 11, to normalize and maintain the Debtor's existing business operations during the turbulent early stages of this Chapter 11 Case, and to preserve and maximize value for the benefit of the Debtor's creditors. As the Debtor intends to continue to operate its business postpetition, it is imperative that it retain the support of its employees. Any delay by the Debtor in honoring its prepetition employee obligations will destroy its relationship with its employees, irreparably impair

---

[1]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

employee morale, and may cause employees to seek other employment. Indeed, the Debtor believes that any failure to honor certain of the Debtor's employee-related obligations in the ordinary course of its business would create hardship and discontent among the Debtor's employees, which would in turn decrease productivity and undermine the Debtor's ability to continue normal operations, and ultimately, to preserve and maximize the value of the estate. Without employee support, the Debtor faces the imminent risk that its operations will be severely impaired.

**D.** **The Employees**

The Debtor has 25 employees (the "Employees"), of which 23 work full-time and two (2) work part-time. As of the Petition Date, the Debtor believes that its prepetition Employee wage and salary obligations, business expenses incurred on corporate credit cards, and benefits obligations have been paid current. However, certain other forms of compensation (including sick pay, paid time off, and withholdings for benefit plan contributions) related to services rendered prepetition have not yet been honored because such benefits, although accrued before the Petition Date, were not payable but rather will become payable in the ordinary course of business.

It is crucial that the Court authorize the Debtor to pay to its Employees any and all prepetition wages and salaries and expense reimbursements earned and incurred in the ordinary course of business, and to honor prepetition benefits programs as they come due. For the avoidance of doubt, the Debtor does not believe that it owes compensation to any Employee in excess of the statutory cap of $15,150 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Statutory Cap").

Subject to the Court's approval, the Debtor intends to continue its prepetition compensation and benefits programs in the ordinary course of business. Out of an abundance of caution, the Debtor further requests confirmation of their right to modify, change, and/or discontinue any of their compensation and benefits programs and/or to implement new programs, policies, and benefits in the Debtor's sole discretion and in the ordinary course of business during this Chapter 11 Case and without the need for further Court approval, subject to applicable law.

E.      **Employee Obligations**

  1.      **Employee Wage Obligations**

In the ordinary course of business, the Debtor incurs obligations to its Employees for salaries and wages (the "Wage Obligations"). All of the Debtor's Employees are paid on the same bi-weekly schedule. On average, the Debtor pays up to approximately $138,000[2] per pay period in Wage Obligations. The Debtor believes that it has issued payment for all Wage Obligations that were due and owing as of the Petition Date but that there may be certain unpaid Wage Obligations as of the Petition Date on account of uncashed checks (the "Unpaid Wages").

In an abundance of caution, the Debtor seeks authority to pay up to $50,000 on account of prepetition Wages Obligations (subject to the Statutory Cap), including any Unpaid Wages, and to continue to pay Wages Obligations in the ordinary course of business on a postpetition basis and consistent with past practices.

  2.      **Withholding Obligations**

During each applicable pay period, the Debtor routinely deducts certain amounts from Employees' paychecks for, among other things, union dues, garnishments, child support, and retirement savings (collectively, the "Deductions"). The Deductions are forwarded to various third-party recipients.

Additionally, the Debtor is required by law to withhold amounts related to, among other things, federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities. The Debtor must then match the Employee Payroll Taxes from its own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes" and together with the Deductions, the "Withholding Obligations"). The Payroll Taxes are paid the same business day as the Wage Obligations are paid. The Payroll Taxes generally are processed and forwarded to the appropriate federal, state, or local taxing authority at

---

[2]    This is the approximate maximum gross bi-weekly payroll figure, inclusive of all wages, salaries, allowances (car, expense, and housing), and Withholding Obligations.

the same time the Employees' payroll checks are disbursed. Accordingly, as of the Petition Date, the Debtor believes that it is current on account of pre-petition Employee Payroll Taxes.

In an abundance of caution, the Debtor seeks authority to continue to remit any and all unpaid Withholding Obligations to the appropriate parties and to continue to withhold and remit the Withholding Obligations in the ordinary course of business on a postpetition basis and consistent with past practices.

### 3. Reimbursable Expenses

Certain Employees customarily incur business expenses in the ordinary course of performing their duties on behalf of the Debtor. Such expenses may include, but are not limited to, business-related travel expenses (the "Reimbursable Expenses").

Generally, Employees incur the Reimbursable Expenses on corporate credit cards issued by the Debtor on accounts maintained by the Debtor's bank or Employees submit requests for reimbursement. In the aggregate, the Employees incur, on average, approximately $38,500 per month in Reimbursable Expenses, although these amounts can vary significantly from month to month depending on the amount of travel actually done by Employees and other expenses incurred at any given time. The Debtor believes that it is current on unpaid prepetition Reimbursable Expenses owed as of the Petition Date. In an abundance of caution, the Debtor seeks authority to pay any unpaid prepetition Reimbursement Expenses, not to exceed $45,000, and to continue to honor, reimburse, and pay postpetition Reimbursable Expenses in the ordinary course of business in its discretion.

### 4. Employee Benefits

The Debtor provides a number of health, insurance, and other benefits, including, among others, medical and prescription, life and disability insurance, dental insurance, vision insurance, and allowances (collectively, the "Employee Benefits"). The Debtor's Employee Benefits include:

(a) **Health Coverage**: The Debtor makes monthly contributions on behalf of Employees to certain welfare benefits plans and insurance providers in order to provide medical (HMO or PPO), vision, dental, prescription drug, AD&D and life insurance (collectively, the "Health Coverage"). The monthly cost of the Health Coverage is approximately $117,000, of which approximately $70,500 is on account of current, active Employees and approximately $46,500 is on account of retired, former employees. The Debtor believes that

it is current on payments owing as of the Petition Date on account of its Employees' Health Coverage.

(b) **Disability Coverage**. The Debtor offers short-term and long-term disability insurance (the "<u>Disability Coverage</u>") through Pacific Guardian Life (in Hawaii) and UNUM Life Insurance (non-Hawaii) for its Employees. Under the Disability Coverage, the Debtor covers 100% of the costs of premiums for basic coverage. As of the Petition Date, the Debtor believes that it is current on related premiums on account of incurred but yet unpaid Disability Coverage premiums.

(c) **COBRA Coverage**: Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("<u>COBRA</u>"), certain Employees who are no longer employed by the Debtor (the "<u>COBRA Employees</u>") may continue Medical Coverage, Vision Coverage, and Dental Coverage (the "<u>COBRA Benefits</u>"). COBRA Employees are entitled by law to continue to receive COBRA Benefits for up to 18 months, and in some instances up to 36 months, following termination of employment.

(d) **Car / Expense / Housing Allowance**: Certain Employees receive car, expense and/or housing allowance (collectively, the "<u>Car / Expense / Housing Programs</u>"), which cost the Debtor approximately $29,000 per month in the aggregate. The Debtor seeks authority to continue the Car / Expense / Housing Programs, which are a significant part of certain Employees' compensation and included in regular payroll either once or twice per month, in the ordinary course of business on a postpetition basis.

As described above, failure to continue the Employee Benefits could cause Employees to experience severe hardship and make it difficult to retain the Debtor's workforce. Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to continue to honor its Employee Benefits and to pay any prepetition claims with respect thereto in the ordinary course of business.

5. **401(k) Plan**

The Debtor maintains a retirement savings plan for the benefit of its Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "<u>401(k) Plan</u>"). The 401(k) Plan is sponsored by the Debtor and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.[3] Additionally, the Debtor makes certain employer contributions to the 401(k) Plan. The approximate aggregate annual cost of the 401(k) Plan does not exceed $85,000. The Debtor intends to continue to maintain the 401(k) Plan postpetition and respectfully requests that the Court authorize the Debtor to honor any prepetition

---

[3] Two of the Debtor's Employees continue to participate in the 401(k) plan in which they initially enrolled with a prior employer.

obligations and to continue to pay an obligations as they come due in the ordinary course of business in respect to the 401(k) Plan.

### 6. Defined Benefit Pension Plan

The Debtor also maintains an ERISA-qualified defined benefit pension plan for the benefit of its Employees (the "Pension Plan"). The Debtor makes contributions totaling approximately $165,000 per quarter to the Pension Plan, provided that the precise amount is calculated based upon a percentage of the gross pay of the participants and thus it is variable. Based on its prepetition practice, the next contribution would be made in or around January 2024 for the fourth quarter of 2023. The Debtor respectfully requests that the Court authorize the Debtor to continue to honor its commitment to continue to maintain the Pension Plan and to continue to pay any obligations as they come due in the ordinary course of business in respect to the Pension Plan.

### 7. Workers' Compensation Insurance

The Debtor maintains workers' compensation insurance for its Employees at the statutorily required level for each state in which it has Employees (collectively, and as described herein, the "Workers' Compensation Program"). As part of the Workers' Compensation Program, the Debtor maintains workers' compensation insurance policies with four providers in the four different states in which it operates: (a) Noguchi & Associates (HI), (b) State Compensation Insurance Fund (CA), (c) Department of Labor & Industries (WA) and (d) SAIF Corporation (OR) (the "Workers' Compensation Policies"), for which the annual premiums are approximately $16,000, and are paid in annual, monthly or quarterly installments.

The Debtor must continue claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities are outstanding before the Petition Date, to ensure that the Debtor complies with applicable workers' compensation laws and requirements.[4] To the extent any Employees assert claims arising under the Workers' Compensation Program, the Debtor requests that the Court modify the automatic stay

---

[4] The Debtor's Workers' Compensation Program may change postpetition in the ordinary course due to changes in applicable laws and regulations and the Debtor's ability to meet requirements thereunder. By this motion, the Debtor requests authority to continue the Workers' Compensation Program postpetition, including making any necessary modifications thereto.

under section 362 of the Bankruptcy Code to permit the Employees to proceed with such claims. This requested modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

Because the Debtor is statutorily and/or contractually obligated to maintain the Workers' Compensation Program, its inability to do so may result in adverse legal consequences that potentially could disrupt the reorganization process. As of the Petition Date, the Debtor believes it is current on account of accrued but unpaid Workers' Compensation Program obligations. The Debtor requests authority to (a) pay prepetition amounts due on account of the Workers' Compensation Program and consistent with past practice, (b) continue the Workers' Compensation Program in the ordinary course of business, and (c) to the extent applicable, modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

**8.      Paid Time Off**

In the ordinary course of business, the Debtor provides paid time off to certain of its Employees (the "Paid Time Off").

Full-time Employees generally accrue two to six weeks of Paid Time Off per year depending on seniority. Accrued Paid Time Off carries over from one calendar year to the next. Employees may "cash out" any Accrued Paid Time Off at any time. In addition, if eight weeks of accrual has been exceeded on the Employee's anniversary date of hire, Employees are required either to use or "cash out" the excess balance.

Accruals of Paid Time Off, however, are not a current cash payment obligation.  By this Motion, the Debtor seeks authority, but not direction, to pay any "cash out" amounts required under applicable law with respect to earned but unused Paid Time Off and to continue the Paid Time Off policy in the ordinary course.

In addition, the Debtor provides certain other forms of paid and unpaid leave, including, for example, (a) leave under the Family and Medical Leave Act, and (b) other paid and unpaid leaves of absence for personal reasons, including those required by law. Importantly, while certain Employees may "cash out" certain paid leave balances that exceed a certain threshold, these other forms of paid

and unpaid leave do not generally involve incremental cash outlays beyond standard payroll obligations.

The Debtor believes that the continuation of Paid Time Off is essential to maintaining Employee morale during the Chapter 11 Case. Further, the policies are broad-based programs upon which all Employees have come to depend. The Debtor anticipates that their Employees will utilize any accrued paid leave in the ordinary course of business under their current policies, which will not create any material cash flow requirements beyond the Debtor's regular payroll obligations.

## II.

## BASIS FOR RELIEF REQUESTED

**A.  Sufficient Cause Exists to Authorize the Debtor to
        Honor the Compensation and Benefits Obligations**

**1.      Certain of the Compensation and Benefits Are Entitled To Priority Treatment**

Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Compensation and Benefits to priority treatment to the extent such payments do not exceed $15,150 per individual. As priority claims, the Debtor is required to pay these claims in full to confirm a chapter 11 plan.[5] To the extent that an Employee receives no more than $15,150 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments and does not have any material negative impact on recoveries for general unsecured creditors. Indeed, payment of the Compensation and Benefits at this time enhances value for the benefit of all interested parties.[6] To the extent that an Employee is owed more than $15,150 on account of certain Compensation and Benefits, the Debtor submits that the full payment of such obligations in the ordinary course is warranted under section 363(b)(1) of the Bankruptcy Code and the doctrine of necessity.

---

[5]    *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).

[6]    *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("The need to pay [employee wage] claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted.").

The Debtor's workforce is essential to the Debtor's business, and payment of the Compensation and Benefits at this time is necessary to avoid potential material disruption to the Debtor's ordinary-course operations. Finding, attracting, and training new qualified talent would be extremely difficult. Such recruitment efforts would most likely require, among other things, higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees. Further, delaying payment of Compensation and Benefits risks a needless, value-destructive disruption of the Debtor's business.

### 2. Payment of Certain Compensation and Benefits Is Required by Law

As discussed above, the Debtor seeks authority to pay the Withholding Obligations to the appropriate third-party payees. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages. Certain Withholding Obligations are not property of the Debtor's estate because the Debtor has withheld such amounts from Employees' wages on another party's behalf.[7] Further, federal and state laws require the Debtor to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority.[8] Because the Withholding Obligations may not be property of the Debtor's estate, the Debtor requests authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.[9]

Similarly, state laws require the Debtor to maintain the Workers' Compensation Program. If the Debtor fails to maintain the Workers' Compensation Program, state laws may prohibit the Debtor from operating in those states. Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtor's continued operations and the success of the Chapter 11 Case. The Debtor, therefore, respectfully requests that the Court recognize that the Withholding Obligations are not property of the Debtor's estate and, regardless of whether the

---

[7]  *See* 11 U.S.C. §§ 541(b)(1), (d).

[8]  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

[9]  *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998).

Debtor collected the amounts prior to the Petition Date, authorize the Debtor to transmit such monies to the proper parties in the ordinary course of business.

**B.**     **Payment of the Compensation and Benefits and the Relief Sought Herein Is a Sound Exercise of the <u>Debtor's Business Judgment and Necessary to Preserve the Value of the Estate</u>**

Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.[10] In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims. In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."[11] Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."[12] Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."[13] Indeed, at least one court has specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate."[14]

Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."[15] "In determining whether to authorize the use, sale or lease of property of

---

[10]   *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989).

[11]   *CoServ*, 273 B.R. at 497.

[12]   *Id.*

[13]   *Id.*

[14]   *Id.*

[15]   11 U.S.C. § 363(b)(1).

the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."[16]

The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[17] Under section 105(a), courts may permit payments of prepetition obligations when essential to the continued operation of a debtor's business. The rationale for payment—the rehabilitation of a debtor in reorganization cases—aligns with the paramount policy and goal of chapter 11.

These standards are satisfied here. The Debtor submits that the payment of the Compensation and Benefits in the ordinary course represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying the Compensation and Benefits in the ordinary course will benefit the Debtor's estate and its creditors by allowing the Debtor's business operations to continue without interruption. Indeed, the Debtor believes that without the relief requested herein, Employees may seek alternative employment opportunities. Such a development would hinder the Debtor's ability to operate its business. The loss of valuable Employees and the resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when the Debtor needs to focus on stabilizing its business operations. Accordingly, the Debtor must do their utmost to retain its Employees by, among other things, paying Compensation and Benefits in the ordinary course.

In addition, many of the Employees rely exclusively on the Compensation and Benefits to satisfy their daily living expenses. Consequently, such individuals will be exposed to significant financial difficulties if the Debtor is not permitted to pay Compensation and Benefits in the ordinary course. Moreover, failure to timely satisfy these obligations will jeopardize workforce morale and

---

[16] *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Ionosphere*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages).

[17] 11 U.S.C. § 105(a).

loyalty at this critical time, when needed most. Furthermore, if this Court does not grant the relief requested herein, Employees will not receive health coverage. The loss of health care coverage will result in considerable anxiety for Employees (and likely attrition) at a time when the Debtor needs all Employees to perform their best. Additionally, as set forth above, Employee attrition would cause the Debtor to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtor's operations at this critical juncture.

**C.    A Limited Waiver of the Automatic Stay
        for Workers' Compensation Claims is Warranted**

Section 362(a) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.][18]

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."[19]

In accordance with section 362(d) of the Bankruptcy Code, the Debtor seeks to modify the automatic stay to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum. Cause exists here to modify the automatic stay because staying workers' compensation claims could have a detrimental effect on the financial wellbeing and morale of certain Employees and lead to the departure of Employees who are critical at this juncture. Such departures could cause a severe disruption in the Debtor's business, which would be to the detriment of all parties in interest.

**D.    Processing of Checks and Electronic Fund Transfers Should be Authorized**

The Debtor has sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to any authorized

---

[18]    11 U.S.C. § 362(a)(1).

[19]    *Id.* at § 362(d)(1).

payment in respect of the relief requested herein. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtor respectfully requests that the Court authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## III.

## EMERGENCY CONSIDERATION

The Debtor respectfully requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As previously discussed throughout, the Employees are critical to maintaining the Debtor's business operations and its ability to meet its financial and operational reporting and other obligations in bankruptcy.  If the Debtor does not receive the requested relief immediately, its business operations would be severely disrupted at this critical juncture in the Chapter 11 Case. Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

## IV.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtor respectfully requests a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the Adams Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**V.**

**RESERVATION OF RIGHTS**

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or non-bankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code. The Debtor reserves all of its rights under the Bankruptcy Code.

**VI.**

**NOTICE**

Notice of this Motion has been provided by email, phone, or first class mail to: (i) the Office of the U.S. Trustee Region 17, and (ii) the holders of the top twenty largest unsecured claims against the Debtor.

No prior request for the relief sought in this Motion has been made by the Debtor to this Court or any other court.

**VII.**

**CONCLUSION**

**WHEREFORE,** the Debtor respectfully requests entry of orders, substantially in the form attached hereto, granting the relief requested, and providing such other and further relief as is just and proper.

Dated:     October 2, 2023          **PACHULSKI STANG ZIEHL & JONES LLP**

                                    */s/ Jason H. Rosell*
                                    _____
                                    Debra I. Grassgreen
                                    Jason H. Rosell

                                    *[Proposed] Counsel to the Debtor*

# <u>EXHIBIT A</u>

**Proposed Interim Order**

DOCS_LA:351019.7

PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
jrosell@pszjlaw.com

*[Proposed] Counsel to the Debtor*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL LONGSHORE<br>AND WAREHOUSE UNION,<br><br>    Debtor. | Case No. 23-30662-HLB<br><br>Chapter 11<br><br>**INTERIM ORDER APPROVING DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTOR TO HONOR PREPETITION OBLIGATIONS TO EMPLOYEES ON AN INTERIM BASIS** |

The *Debtor's Emergency Motion for an Order Authorizing Debtor to Honor Prepetition Obligations to Employees* [Docket No. ●] (the "Motion")[1], filed on October 2, 2023, by the International Longshore and Warehouse Union (the "Debtor"), the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Chapter 11 Case"), came before the Court for hearing on October [_], 2023, at [___ _.m.]  Appearances were as noted on the record. Based upon the Court's review of the Motion, the declarations and other pleadings filed in support of the Motion, the arguments of counsel at the hearing on the Motion, and all pleadings and evidence of record in this case, and finding that good cause exists for granting the relief requested on an interim basis,

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is **GRANTED**, as set forth herein, on an **interim** basis.

2.    The Debtor is authorized, but not directed, to make payments to applicable third parties from the Withholding Obligations and in respect of the Employee Benefits, and costs

---

[1]    A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

associated therewith, in accordance with the Debtor's ordinary course of business and stated policies, as set forth in the Motion..

3. The Debtor is authorized, but not directed, to continue to maintain its Workers' Compensation Program in the ordinary course of business. The automatic stay, to the extent applicable, is lifted without further order of this Court, to allow (a) holders of workers' compensation claims to proceed with their claims, and (b) the administration, handling, defense, settlement and/or payment of a claim covered by the Workers' Compensation Program and the costs related thereto in accordance with such policy (and the agreements related thereto); *provided, however*, that nothing in this Interim Order or the Motion gives a non-workers' compensation claimant relief from the automatic stay.

4. The Debtor is authorized, but not directed, to honor outstanding checks and electronic payments for Compensation and Benefits obligations that may be outstanding as of the Petition Date.

5. In accordance with this Interim Order and any other order of this Court, the banks and financial institutions at which the Debtor maintains its accounts are authorized to honor checks presented for payment, whether issued prior to or after the Petition Date, and to honor all fund transfer requests made by the Debtor related thereto, to the extent that sufficient funds are on deposit in such accounts.

6. The Debtor is authorized to pay prepetition amounts on account of Compensation and Benefits, including all processing and administrative fees associated with payment of the Compensation and Benefits; *provided*, *however*, that no payments to or on behalf of any Employee will exceed the Statutory Cap under 11 U.S.C. § 507(a)(4) and (5) except to the extent required by applicable state law and in paragraph 7 of this Order.

7. The Debtor is authorized to continue to administer and provide its Employee Benefits postpetition in the ordinary course of business and in the Debtor's discretion. Nothing herein shall be deemed to authorize the payment of any amounts which violate, implicate, or otherwise are subject to 503(c) of the Bankruptcy Code.

8.      The Debtor shall not pay any amounts to "insiders" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code, under any bonus, incentive, or retention plan without seeking authority from the Court.

9.      The automatic stay is hereby modified pursuant to section 362(d) of the Bankruptcy Code solely to allow the Debtor, in its discretion, to continue to assess, determine, and adjudicate any unpaid Workers' Compensation Claims during the Chapter 11 Case.

10.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in the Motion or this Interim Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against the Debtor; (b) a waiver of the Debtor's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtor and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. Any payment made pursuant to this Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtor's or any other party-in-interest's rights to subsequently dispute such claim.

11.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

14.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

15.     A final hearing to consider the relief requested in the Motion shall be held on [_____] at [_____] (prevailing Pacific Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to [_____] at [_____] (prevailing Pacific Time).

16.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**\*\* END OF ORDER \*\***

# __EXHIBIT B__

**Proposed Final Order**

1  PACHULSKI STANG ZIEHL & JONES LLP
   Debra I. Grassgreen (CA Bar No. 169978)
2  Jason H. Rosell (CA Bar No. 269126)
   One Sansome Street, Suite 3430
3  San Francisco, California 94104
   Telephone:   (415) 263-7000
4  Facsimile:   (415) 263-7010
   E-mail:      dgrassgreen@pszjlaw.com
5               jrosell@pszjlaw.com

6  *[Proposed] Counsel to the Debtor*

7                **UNITED STATES BANKRUPTCY COURT**

8                **NORTHERN DISTRICT OF CALIFORNIA**

9                    **SAN FRANCISCO DIVISION**

10

11 In re:                                    Case No. 23-30662-HLB

12 INTERNATIONAL LONGSHORE               Chapter 11
   AND WAREHOUSE UNION,
                                         **FINAL** ORDER APPROVING DEBTOR'S
13        Debtor.                         **EMERGENCY MOTION FOR AN ORDER**
                                          **AUTHORIZING DEBTOR TO HONOR**
14                                        **PREPETITION OBLIGATIONS TO**
                                          **EMPLOYEES**
15

16        The *Debtor's Emergency Motion for an Order Authorizing Debtor to Honor Prepetition*

17 *Obligations to Employees* [Docket No. ●] (the "Motion")[1], filed on October 2, 2023, by the

18 International Longshore and Warehouse Union (the "Debtor"), the debtor and debtor-in-possession

19 in the above-captioned bankruptcy case (the "Chapter 11 Case"), came before the Court for hearing

20 on October [_], 2023, at [____ _.m.] and October [_], 2023, at [____ _.m.] Appearances were as noted

21 on the record. Based upon the Court's review of the Motion, the declarations and other pleadings

22 filed in support of the Motion, the arguments of counsel at the hearing on the Motion, and all

23 pleadings and evidence of record in this case, and finding that good cause exists for granting the

24 relief requested on a final basis,

25        **IT IS HEREBY ORDERED THAT:**

26        1.      The Motion is **GRANTED**, as set forth herein, on a **final** basis.

27

28 ───────────────
   [1]   A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

2.      The Debtor is authorized, but not directed, to make payments to applicable third parties from the Withholding Obligations and in respect of the Employee Benefits, and costs associated therewith, in accordance with the Debtor's ordinary course of business and stated policies, as set forth in the Motion..

3.      The Debtor is authorized, but not directed, to continue to maintain its Workers' Compensation Program in the ordinary course of business. The automatic stay, to the extent applicable, is lifted without further order of this Court, to allow (a) holders of workers' compensation claims to proceed with their claims, and (b) the administration, handling, defense, settlement and/or payment of a claim covered by the Workers' Compensation Program and the costs related thereto in accordance with such policy (and the agreements related thereto); *provided, however*, that nothing in this Final Order or the Motion gives a non-workers' compensation claimant relief from the automatic stay.

4.      The Debtor is authorized, but not directed, to honor outstanding checks and electronic payments for Compensation and Benefits obligations that may be outstanding as of the Petition Date.

5.      In accordance with this Final Order and any other order of this Court, the banks and financial institutions at which the Debtor maintains its accounts are authorized to honor checks presented for payment, whether issued prior to or after the Petition Date, and to honor all fund transfer requests made by the Debtor related thereto, to the extent that sufficient funds are on deposit in such accounts.

6.      The Debtor is authorized to pay prepetition amounts on account of Compensation and Benefits, including all processing and administrative fees associated with payment of the Compensation and Benefits; *provided*, *however*, that no payments to or on behalf of any Employee will exceed the Statutory Cap under 11 U.S.C. § 507(a)(4) and (5) except to the extent required by applicable state law and in paragraph 7 of this Order.

7.      The Debtor is authorized to continue to administer and provide its Employee Benefits postpetition in the ordinary course of business and in the Debtor's discretion. Nothing herein shall be deemed to authorize the payment of any amounts which violate, implicate, or otherwise are subject to 503(c) of the Bankruptcy Code.

8.     The Debtor shall not pay any amounts to "insiders" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code, under any bonus, incentive or retention plan without seeking authority from the Court.

9.     The automatic stay is hereby modified pursuant to section 362(d) of the Bankruptcy Code solely to allow the Debtor, in its discretion, to continue to assess, determine, and adjudicate any unpaid Workers' Compensation Claims during the Chapter 11 Case.

10.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in the Motion or this Final Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against the Debtor; (b) a waiver of the Debtor's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtor and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. Any payment made pursuant to this Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtor's or any other party-in-interest's rights to subsequently dispute such claim.

11.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

14.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

15.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**\*\* END OF ORDER \*\***