PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone:    (415) 263-7000
Facsimile:    (415) 263-7010
E-mail:        dgrassgreen@pszjlaw.com
                jrosell@pszjlaw.com

*[Proposed] Counsel to the Debtor*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 23-30662-HLB |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | Chapter 11 |
| Debtor. | **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF** |

The International Longshore and Warehouse Union ("ILWU" or "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves (the "Motion"), on an emergency basis, for the entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, respectively, pursuant to sections 105, 345, and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):  (i) authorizing the Debtor to (a) continue operating the Cash Management System (as defined herein) in the ordinary course of business, (b) honor and pay the Bank Fees (as defined herein) in the ordinary course of business, and (c) maintain existing business forms; and

(ii) granting related relief, as described more fully herein. In support of this Motion, the Debtor respectfully states as follows:

**I.**

**<u>JURISDICTION AND VENUE</u>**

The United States Bankruptcy Court for the Northern District of California (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.**

**<u>BACKGROUND</u>**

**A.	<u>The Chapter 11 Case</u>**

On September 30, 2023 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor is operating its businesses and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee, committee, or examiner has been made in this Chapter 11 Case.

**B.	<u>General Background</u>**

The ILWU is organized under the laws of the State of California as a non-profit labor organization. Pursuant to its *Constitution*, the ILWU's objectives are (a) to unite in one organization, regardless of religion, race, creed, color, gender, sexual orientation, political affiliation or nationality, all workers within the jurisdiction of the ILWU; (b) to maintain and improve the wages, hours and working conditions of all its members without discrimination; (c) to educate the membership of the organization in the history of the American labor movement and in present day labor problems and tactics; and (d) to secure legislation in the interests of labor and to oppose anti-labor legislation.

Since its formation in 1937, the ILWU has grown to approximately 40,000 diverse members in over 50 local unions and affiliates throughout California, Washington, Oregon, Alaska, Hawaii, and Canada. The ILWU's members include workers employed in, among other work and industries, the

2

(a) loading and unloading of vessels, rail, and trucks at ports; (b) warehousing, wholesaling, and distribution industries (including mining); (c) operation of tugs, towboats, barges, and ferries; (d) agriculture and aquaculture (including processing, transportation, and distribution) industries; (e) tourist industry (including hotels, resorts, and restaurants); (f) wholesale and retail trade, general manufacturing, and food processing; and (g) service industries (including hospitals and health care facilities, financial and insurance operations, newspapers, restaurants, breweries, early childhood education, etc.).

The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of William E. Adams in Support of First Day Motions* (the "First Day Declaration"), filed concurrently herewith and fully incorporated herein by reference.[1]

**C.     Cash Management System**

In the ordinary course of business, the Debtor uses a cash management system (the "Cash Management System") to collect, manage, and disburse funds used in its business.  The Cash Management System is essential to the stability of the Debtor's assets and business objectives.

As of the Petition Date, the Debtor maintains seven (7) bank accounts (the "Bank Accounts") at United Business Bank and Community Bank of the Bay (collectively, the "Banks"). Payments to creditors are made from the Bank Accounts, in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers. A summary of bank accounts is attached hereto as **Exhibit C**.

United Business Bank Accounts.  The Debtor maintains five (5) bank accounts at United Business Bank: (a) one checking account (the "Main Checking Account"), (b) one money market account (the "Money Market Account"), (c) one savings account, and (d) two certificate of deposit accounts.

Community Bank of the Bay Accounts.  The Debtor maintains two bank accounts at Community Bank of the Bay: (a) one savings account and (b) one certificate of deposit account.

---

[1]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

3

In general, funds are deposited directly into the Money Market Account and transferred twice a month to the Main Checking Account to cover anticipated disbursements. On average, the Main Checking Account maintains a balance of approximately $300,000. As of the Petition Date, the majority of the Debtor's cash (approx. $8.9 million) was held in the Money Market Account.

All disbursements are made from the Main Checking Account. Although the Debtor maintains multiple savings accounts and certificate of deposit accounts, money is not generally transferred between accounts.

**D.**     **Credit Cards**

The Debtor maintains an unsecured corporate credit card account at United Business Bank, which is used to pay for miscellaneous expenses, including travel expenses for employees. As of the Petition Date, the balance of the corporate credit card account was approximately $0. Pursuant to this Motion, the Debtor seeks authority to continue using its credit card account in the ordinary course of business.

**E.**     **Bank Fees**

The Debtor incurs certain fees and charges in connection with the ordinary course operation of the Cash Management System, including, without limitation, those fees as specified in the prepetition agreements entered into between the Debtor and the Banks (collectively, the "Bank Fees"). The Bank Fees include stop payment charges, wire transfer fees, and other customary miscellaneous charges. On average, the Debtor incurs approximately $100.00 in Bank Fees per month. In the ordinary course of business and typically on a monthly basis, the Banks charge the Debtor and deduct from the appropriate bank accounts certain service charges and other fees, costs, and expenses. The Debtor believes there are approximately $0.00 in Bank Fees that have accrued prepetition and are outstanding as of the Petition Date. Accordingly, out of an abundance of caution, the Debtor seeks approval to pay prepetition Bank Fees up to $1,000.00 and to pay any postpetition Bank Fees, and for the Banks to deduct, any such Bank Fees in the ordinary course when due.

**F.**     **Business Forms**

The Debtor uses numerous preprinted business forms in the ordinary course of its business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in

4

connection with its Cash Management System. The Debtor would be required by the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering entirely new business forms referencing the Debtor's status as a debtor-in-possession absent relief from the Court. To the extent necessary, the Debtor seeks authority to use pre-existing business forms without such a reference in order to minimize expense to the estate. The Debtor submits that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtor will likely be aware of its status as a debtor-in-possession and, therefore, changing business forms is unnecessary and would be unduly burdensome. To the extent the Debtor exhausts its existing supply of checks, the Debtor will reissue checks with the designation "Debtor-in-Possession" and the corresponding case number.

## G. Compliance with Section 345 of the Bankruptcy Code

Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.

The Banks where the Debtor maintains its Bank Accounts are not currently authorized depositories under the U.S. Trustee Guidelines. However, cause exists to allow the Debtor to continue using the existing Bank Accounts consistent with historical practices. The Cash Management System is critical to the ongoing stability of the Debtor's business. Relocating the Cash Management System to new accounts and/or an authorized depository: (a) would impose an excessive administrative burden on the Debtor; and (b) could have unwanted or detrimental effects, and disruption on the Debtor's business would stem from such a transition. For example, the Debtor's payroll is directly funded from its Bank Accounts – not to a central payroll processor. Accordingly, opening new bank accounts would require the Debtor to reconfigure its payroll processing system.

The Debtor will continue to work in good faith with the U.S. Trustee to address any concerns regarding the use of these accounts on a postpetition basis. To the extent the Court determines that the requirements of section 345(b) of the Bankruptcy Code are not satisfied, the Debtor requests a 30 day suspension of such requirements, subject to the Debtor's rights to seek further extensions.

Case: 23-30662    Doc# 8    Filed: 10/02/23    Entered: 10/02/23 05:10:01    Page 5 of 28

**BASIS FOR RELIEF REQUESTED**

**A.     Maintaining the Existing Cash Management**
**       System is Essential to Debtor's Operational Stability**

The U.S. Trustee Guidelines require a debtor-in-possession to, among other things: establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes; close all existing bank accounts and open new debtor-in-possession accounts; maintain a separate debtor-in-possession account for cash collateral; and obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Enforcement of this provision of the U.S. Trustee Guidelines during this Chapter 11 Case would severely disrupt the administration of the Debtor's estate. For example, as discussed above, without the relief requested herein, the Debtor would be required to reconfigure its payroll processing system. Accordingly, the Debtor respectfully requests authorization to operate the Bank Accounts in the same manner as was maintained in the ordinary course of business prior to the Petition Date.

Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Bankruptcy courts routinely treat requests for authority to continue using existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). Requiring a debtor to maintain separate accounts "would be a huge administrative burden and

Case: 23-30662    Doc# 8    Filed: 10/02/23    Entered: 10/02/23 05:10:01    Page 6 of 28

economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"). As such, the continued use of existing cash management systems and prepetition bank accounts on a postpetition basis has been approved as a routine matter in bankruptcy cases in this district and other districts. *See, e.g.*, *In re Borrego Cmty. Health Found.*, No. 22-02384-LT11 (Bankr. S.D. Cal. Sept. 16, 2022) [Docket No. 28] (authorizing the debtors' continued use of their existing cash management systems and prepetition bank accounts); *In re Watsonville Hosp. Corp.*, No. 21-51477 (Bankr. N.D. Cal. Jan. 6, 2022) [Docket No. 169] (same); *In re California-Nevada Methodist Homes*, No. 21-40363 (Bankr. N.D. Cal. June 25, 2021) [Docket No. 209] (same); *In re Galileo Learning, LLC*, No. 20-40857 (RLE) (Bankr. N.D. Cal. July 1, 2020) [Docket No. 110] (same); *In re Wave Computing, Inc.*, No. 20-50682 (MEH) (Bankr. N.D. Cal. June 8, 2020) [Docket No. 195] (same); *In re Imperial Toy LLC*, No. 19-52335 (MEH) (Bankr. N.D. Cal. Nov. 20, 2019) [Docket No. 24] (same); *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 13, 2019) [Docket No. 881] (same); *In re Verity Health Sys. of California*, No. 18-20151-ER (Bankr. C.D. Cal. Oct. 31, 2018) [Docket No. 728] (same); *In re Sultan Fin. Corp.*, No 2:18-bk-18021-ER (Bankr. C.D. Cal. Jul. 18, 2018) [Docket No. 44] (same); *In re Blue Earth, Inc.*, No. 16-30296 (DM) (Bankr. N.D. Cal. Mar. 23, 2016) [Docket No. 27] (same); *In re Rdio, Inc.*, No. 15-31430 (Bankr. N.D. Cal. Nov. 20, 2015) [Docket No. 54] (same); *In re NewZoom, Inc.*, No. 15-31141 (Bankr. N.D. Cal. Sept. 11, 2015) [Docket No. 31] (same); *In re Clement Support Servs., Inc.*, No. 15-50794 (Bankr. N.D. Cal. Mar. 17, 2015) [Docket No. 37] (same); *In re Ajacks Rests., Inc.*, No. 14-31157 (Bankr. N.D. Cal. Aug 18, 2014) [Docket No. 22] (same); *In re CEP Reorganization, Inc.*, No. 14-44191 (Bankr. N.D. Cal. May 12, 2014) [Docket No. 42] (same).

Here, continued use of the Cash Management System will facilitate this Chapter 11 Case by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtor respectfully submits that parties in interest will not be harmed by the maintenance of the existing Cash Management System because the Debtor employs appropriate mechanisms and internal control procedures to

prevent unauthorized payments on account of obligations incurred before the Petition Date. As such, maintaining the Cash Management System is in the best interests of the Debtor's estate.

Furthermore, as discussed above, in the ordinary course of business, the Debtor conducts transactions through electronic wire transfers and other similar methods. If the Debtor's ability to conduct transactions by debit, wire, credit card, ACH transfer, or other similar methods is impaired, the estate will incur additional and unnecessary costs. Accordingly, the Debtor submits that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check.

**B.** **Authorizing (i) the Banks to Continue to Maintain, Service, and Administer the Bank Accounts and (ii) the Debtors to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted**

The Debtor respectfully requests that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as an account of the Debtor as debtor-in-possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided*, *however*, that any check, advise, draft, or other notification that the Debtor advised the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

The Debtor further requests that the Court authorize the Banks to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtor also requests that, to the extent the Banks honor a prepetition check or other item drawn on any account either (i) at the direction of the Debtor, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Banks will not be deemed to be liable to the Debtor or its estate on account of such prepetition check or other item honored postpetition. The Debtor respectfully submits

8

that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

The Debtor further requests that the Court authorize it to pay the Bank Fees and authorize the Banks to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the applicable Bank Account, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtor's inability to pay the prepetition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business postpetition could hinder its ability to manage the Cash Management System to the detriment of the Debtor's estate.

## C. Modifying Certain Requirements of Section 345(b) Is Warranted

Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." 11 U.S.C. § 345(b). Alternatively, the debtor may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.[2] Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more authorized depositories.

To the extent that the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtor seeks a waiver of the deposit and investment requirements set forth therein. Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause." In evaluating whether "cause" exists, courts have considered a number of factors, including: (a) the sophistication of the debtor's business; (b) the size of the debtor's business

---

[2] Section 9303 of Title 31 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond. 31 U.S.C. § 9303.

9

operations; (c) the amount of the investments involved; (d) the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any, to the debtor; (j) the harm, if any, to the estate; and (k) the reasonableness of the debtor's request for relief from section 345(b) of the Bankruptcy Code requirements in light of the overall circumstances of the case. *In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Here, these factors warrant a modification of the requirements of section 345 of the Bankruptcy Code to the extent the Cash Management System does not already strictly comply with its requirements.

The Debtor maintains five (5) Bank Accounts at United Business Bank and two (2) Bank Accounts at Community Bank of the Bay. The Debtor understands that neither of those Banks have executed a Uniform Depository Agreement with the U.S. Trustee and that they are not authorized depositories under the U.S. Trustee Guidelines. Nonetheless, the Debtor believes based on its business relationships, and the history of the institutions, that the Banks are well-capitalized and financially stable. The Debtor's funds maintained at the Banks are insured by the Federal Deposit Insurance Corporation. Thus, the Debtor believes that any funds that are deposited in these Bank Accounts should be secure up to applicable limits.

The Debtor believes that the Banks are well-positioned to perform depository and cash management functions during this Chapter 11 Case. If the Debtor is granted a waiver, the Debtor will not be burdened with the significant administrative difficulties and expenses relating to opening new accounts in a manner that ensures all of its funds are fully insured. In addition, the risk of severe disruption of the Debtor's integrated operations will be minimized. Accordingly, the Debtor respectfully submits that cause exists to allow the Debtor to continue using the Bank Accounts at the Banks consistent with historical practices.

In addition, the Debtor has elected to proceed under subchapter V of chapter 11 of the Bankruptcy Code – the purpose of which is to exit bankruptcy as expeditiously as possible with as little interruption to its operations as possible. The Debtor respectfully submits that being permitted to

Case: 23-30662   Doc# 8   Filed: 10/02/23   Entered: 10/02/23 05:10:01   Page 10 of 28

maintain its cash management system in the ordinary course of business aligns with the policy goals of subchapter V.

**D.     The Court Should Authorize the Debtor to
        <u>Continue Using Its Existing Business Forms</u>**

To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtor requests authorization to continue to use its business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtor's status as a debtor-in-possession.  The Debtor submits that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtor will likely be aware of its status as a debtor-in-possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  To the extent the Debtor exhausts its existing supply of checks, the Debtor will reissue checks with the designation "Debtor-in-Possession" and the case number.

Courts have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g.*, *In re Borrego Cmty. Health Found.*, No. 22-02384-LT11 (Bankr. S.D. Cal. Sept. 16, 2022) [Docket No. 28] (authorizing the debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re Watsonville Hosp. Corp.*, No. 21-51477 (Bankr. N.D. Cal. Jan. 6, 2022) [Docket No. 169] (same); *In re California-Nevada Methodist Homes*, No. 21-40363 (Bankr. N.D. Cal. June 25, 2021) [Docket No. 209] (same); *In re Galileo Learning, LLC*, No. 20-40857 (RLE) (Bankr. N.D. Cal. July 1, 2020) [Docket No. 110] (same); *In re Wave Computing, Inc.*, No. 20-50682 (MEH) (Bankr. N.D. Cal. June 8, 2020) [Docket No. 195] (same); *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 13, 2019) [Docket No. 881] (same); *In re Verity Health Sys. of California*, No. 18-20151-ER (Bankr. C.D. Cal. Oct. 31, 2018) [Docket No. 728] (same); *In re Sultan Fin. Corp.*, No 2:18-bk-18021-ER (Bankr. C.D. Cal. Jul. 18, 2018) [Docket No. 44] (same); *In re Blue Earth, Inc.*, No. 16-30296 (DM) (Bankr. N.D. Cal. Mar. 23, 2016) [Docket No. 27] (same); *In re Victor Valley Cmty. Hosp.*, No. 10-39537-CB (Bankr. C.D. Cal. Sep. 17, 2010) [Docket No. 32] (same); *In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, No. 09-34714-BB (Bankr. C.D. Cal. Sep. 17, 2009) [Docket No. 38] (same); *In re Z Gallerie*, No. 09-18400-VZ (Bankr. C.D. Cal. Apr. 16, 2009) [Docket No. 46] (same).

Case: 23-30662   Doc# 8   Filed: 10/02/23   Entered: 10/02/23 05:10:01   Page 11 of 28

**IV.**

**EMERGENCY CONSIDERATION**

The Debtor respectfully requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm. For reasons discussed above, the relief requested herein is integral to the Debtor's administrative activities in this Chapter 11 Case and is necessary to preserve the value of the Debtor's business and to maximize the value of the estate for the benefit of all stakeholders. Failure to receive such authorization and other relief during the 21 days of this Chapter 11 Case would severely disrupt the administration of the Debtor's estate at this critical juncture. Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

**V.**

**REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS**

The Debtor respectfully requests a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**VI.**

**RESERVATION OF RIGHTS**

Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights

to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or non-bankruptcy law; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code.  The Debtor reserves all of its rights under the Bankruptcy Code.

**VII.**

**NOTICE**

Notice of this Motion has been provided by email, telephone, or first class mail to:  (i) the Office of the U.S. Trustee Region 17; (ii) the Banks; and (iii) the holders of the top twenty largest unsecured claims against the Debtor.  No prior request for the relief sought in this Motion has been made by the Debtor to this Court or any other court.

**VIII.**

**CONCLUSION**

**WHEREFORE,** the Debtor respectfully requests entry of orders, substantially in the forms attached hereto, granting the relief requested, and providing such other and further relief as is just and proper.

Dated:    October 2, 2023          **PACHULSKI STANG ZIEHL & JONES LLP**


*/s/ Jason H. Rosell*
Debra I. Grassgreen
Jason H. Rosell

*[Proposed] Counsel to the Debtor*

13

# EXHIBIT A

**Proposed Interim Order**

PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone:     (415) 263-7000
Facsimile:      (415) 263-7010
E-mail:          dgrassgreen@pszjlaw.com
                    jrosell@pszjlaw.com

*[Proposed] Counsel to the Debtor*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 23-30662-HLB |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | Chapter 11 |
| Debtor. | **INTERIM ORDER APPROVING DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF, ON AN INTERIM BASIS** |

The *Debtor's Emergency Motion for an Order Authorizing the Debtors to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* [Docket No. ●] (the "Motion"),[3] filed on October 2, 2023 by the International Longshore and Warehouse Union (the "Debtor"), the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Chapter 11 Case"), came before the Court for hearing on October [_], 2023, at [____ _.m.]. Appearances were as noted on the record. Based upon the Court's review of the Motion, the declarations and other pleadings filed in support of the Motion, the arguments of counsel at the hearing on the Motion, and all pleadings and evidence of record in this case, and finding that good cause exists for granting the relief requested on an interim basis,

---

[3]  A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED**, as set forth herein, on an **interim** basis.

2.      The Debtor is authorized, but not directed, to: (a) continue operating the Cash Management System as described in the Motion; (b) honor its prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtor's status as a debtor in possession; (d) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit C** to the Motion, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines (to the extent applicable); (e) treat the Debtor Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (f) deposit funds into and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (g) maintain and use its credit card account at Union Business Bank in the ordinary course of business; and (h) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform its obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (h), such action is taken in the ordinary course of business and consistent with historical practices.

3.      The Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtor shall only instruct or request any Banks to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

4.      The Banks are authorized to debit the Debtor's accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for:

(a) all checks drawn on the Debtor's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

5.      Any existing agreements between or among the Debtor, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtor and the Bank, and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtor and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices and the Debtor's prepetition secured debt agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

6.      Any requirement of section 345(b) is hereby waived until the Final Hearing.

7.      For the Banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Interim Order, the Debtor shall:  (a) contact such bank, (b) provide such bank with the Debtor's employer identification number, and (c) identify each of its Bank Accounts held at such bank as being held by a debtor in possession in this Chapter 11 Case.  For any Bank at which the Debtor holds Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good-faith efforts to cause the Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Interim Order.

8.      Subject to the terms hereof, the Debtor is authorized, but not directed, in the ordinary course of business consistent with historical practices to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, provided that the Debtor gives notice

to the U.S. Trustee within 15 days of opening or closing a bank account. The relief granted in this Interim Order is extended to any new bank account opened by the Debtor in the ordinary course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," provided that any new domestic bank account opened by the Debtor shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

9. All banks maintaining any of the Bank Accounts that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided, however*, that any such bank shall not be found to be in violation of this Interim Order nor liable to the Debtor or its estate should any such bank honor or pay any bank payment: (a) in a good faith belief that the Court has authorized such payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

10. The Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

11. The Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtor was responsible for such items prior to the Petition Date.

12. Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any order of this

Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order: (a) at the direction of the Debtor, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

13. Any banks, including the Banks, are further authorized to honor the Debtor's directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; *provided* that the Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

14. Nothing contained in the Motion or this Interim Order shall be construed to: (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date; or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

15. Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver

or limitation of any claims, causes of action, or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

16.     The Debtor is authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with the relief granted herein.

17.     Nothing in this Interim Order authorizes the Debtor to accelerate any payments not otherwise due.

18.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

21.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

22.     A final hearing to consider the relief requested in the Motion shall be held on [_____] at [_____] (prevailing Pacific Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to [_____] at [_____] (prevailing Pacific Time).

23.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**\*\* END OF ORDER \*\***

# EXHIBIT B

**Proposed Final Order**

DOCS_DE:244780.4 42339/001

PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone:     (415) 263-7000
Facsimile:      (415) 263-7010
E-mail:           dgrassgreen@pszjlaw.com
                     jrosell@pszjlaw.com

*[Proposed] Counsel to the Debtor*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 23-30662-HLB |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | Chapter 11 |
| Debtor. | **FINAL** **ORDER APPROVING DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF** |

The *Debtor's Emergency Motion for an Order Authorizing the Debtors to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* [Docket No. ●] (the "Motion"),[1] filed on October 2, 2023 by the International Longshore and Warehouse Union (the "Debtor"), the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Chapter 11 Case"), came before the Court for hearing on October [_], 2023, at [____ _.m.] and October [_], 2023, at [____ _.m.]. Appearances were as noted on the record. Based upon the Court's review of the Motion, the declarations and other pleadings filed in support of the Motion, the arguments of counsel at the hearing on the Motion, and all pleadings and evidence of record in this case, and finding that good cause exists for granting the relief requested on a final basis,

---

[1] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED, as set forth herein, on a final basis.

2.      The Debtor is authorized, but not directed, to:  (a) continue operating the Cash Management System as described in the Motion; (b) honor its prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtor's status as a debtor in possession; (d) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit C** to the Motion, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines (to the extent applicable); (e) treat the Debtor Bank Accounts for all purposes as accounts of the Debtor as debtor in possession; (f) deposit funds into and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (g) maintain and use its credit card account at Union Business Bank in the ordinary course of business; and (h) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform its obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (h), such action is taken in the ordinary course of business and consistent with historical practices.

3.      The Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order; *provided* that the Debtors shall only instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

4.      The Banks are authorized to debit the Debtor's accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for:

(a) all checks drawn on the Debtor's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtor's accounts with such Bank prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

5. Any existing agreements between or among the Debtor, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtor and the Bank, and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtor and the Bank may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices and the Debtor's prepetition secured debt agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order.

6. To the extent any of the Debtor's Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtor is hereby granted a period of forty-five days from the date of this Final Order, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtor or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The Debtor may obtain a further extension of the forty-five day period referenced above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

7. For any Banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Final Order, the Debtor shall: (a) contact such bank, (b) provide such bank with the Debtor's employer

identification number, and (c) identify each of the Debtor's Bank Accounts held at such bank as being held by a debtor in possession in this Chapter 11 Case. For any Banks at which the Debtor holds Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good-faith efforts to cause such Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Final Order.

8.     Subject to the terms hereof, the Debtor is authorized, but not directed, in the ordinary course of business consistent with historical practices and the Debtor's prepetition secured debt agreements, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as the Debtor may deem necessary and appropriate, *provided* that the Debtor gives notice to the U.S. Trustee within 15 days of opening or closing a bank account. The relief granted in this Final Order is extended to any new bank account opened by the Debtor in the ordinary course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," *provided* that any new domestic bank account opened by the Debtor shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

9.     All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided, however*, that any such bank shall not be found to be in violation of this Final Order nor liable to the Debtor or its estate should any such bank honor or pay any bank payment: (a) in a good faith belief that the Court has authorized such payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

10.    The Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

11.    The Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers

of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtor was responsible for such items prior to the Petition Date.

12. Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtor with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order: (a) at the direction of the Debtor, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtor, its estate, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

13. Any banks, including the Banks, are further authorized to honor the Debtor's directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; *provided* that the Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

14. Nothing contained in the Motion or this Final Order shall be construed to: (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date; or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

15. Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-

bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

16.     The Debtor is authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with the relief granted herein.

17.     Nothing in this Final Order authorizes the Debtor to accelerate any payments not otherwise due.

18.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

20.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

21.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**\*\* END OF ORDER \*\***

# EXHIBIT C

## List of Bank Accounts

|     | Institution | Account Type | Last 4 Digits of Account Number |
|-----|-------------|--------------|--------------------------------|
| 1.  | United Business Bank | Checking Account (Main) | 0034 |
| 2.  | United Business Bank | Money Market Account | 0045 |
| 3.  | United Business Bank | Savings Account | 4001 |
| 4.  | United Business Bank | Certificate of Deposit Account | 5554 |
| 5.  | United Business Bank | Certificate of Deposit Account | 0009 |
| 6.  | Community Bank of the Bay | Certificate of Deposit Account | 3735 |
| 7.  | Community Bank of the Bay | Savings Account | 3735 |