SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
GIANNA SEGRETTI, Cal. Bar No. 323645
KORAY ERBASI, Cal. Bar No. 332877
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email    okatz@sheppardmullin.com
    gsegretti@sheppardmullin.com
    kerbasi@sheppardmullin.com

Attorneys for ICTSI Oregon, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION,<br><br>    Debtor. | Case No. 23-30662<br><br>Chapter 11 Proceeding<br><br>**ICTSI OREGON, INC.'S RESPONSE AND RESERVATION OF RIGHTS RE DEBTOR'S FIRST DAY MOTIONS**<br><br>Date:    October 4, 2023<br>Time:    10:00 a.m.<br>Place:    Via Zoom<br><br>The Hon. Hannah L. Blumenstiel |

-1-

This is the response and reservation of rights of creditor ICTSI Oregon, Inc. to the "First Day Motions" [Doc. 7 and 8] filed by the above captioned debtor. ICTSI is concurrently filing the Declaration of Michael Garone (the "Garone Declaration") in support of this response. Attached as exhibits to the Garone Declaration are the documents referenced in the footnotes below. Some of the exhibits are voluminous, but they are nevertheless provided as points of reference or background, and for the sake of completeness. ICTSI does not, however, intend to argue in a detailed manner from the exhibits at the time of the emergency hearing.

**PRELIMINARY STATEMENT**

While the relief sought via the First Day Motions might be considered routine in a typical case, this case is anything but typical. Consider the following:

-there is a serious question regarding whether this bankruptcy filing is proper at all, or should be dismissed in light of the existence of several indicia of bad faith, including prominently what appears to be forum shopping to resolve a two-party dispute in this Court;

-the debtor's eligibility for relief under Subchapter V is questionable, given that (a) ILWU's liability to ICTSI has been adjudicated repeatedly, including most recently by a jury in 2019, (b) the question remaining to be determined is primarily the amount of damages to be awarded to ICTSI as a result of the debtor's wrongful conduct, and (c) ILWU only purports to hold debts below Subchapter V's $7.5 million threshold because its damages expert, who testified to a jury in 2019 that ICTSI's damages were $7.6 million, revised his estimate downward earlier this year; and

-the debtor is racing to proceed to plan confirmation but has yet to even file its schedules of assets and liabilities, or its statement of financial affairs, which suggests that speed is being prioritized over transparency, even though as discussed below ICTSI believes that several non-debtor affiliates will be implicated in the ultimate resolution of this bankruptcy case and discovery will be needed to test a liquidation analysis that as of now says nothing substantive about fraudulent transfers, potential breach of fiduciary duty claims, or claims against non-debtor affiliates.

While relief associated with the First Day Motions may be appropriate on an interim basis,

-2-

ICTSI believes that in light of the emergency nature of the requests, any order should be expressly interim in scope, narrowly tailored, and without prejudice to the positions creditors might take at a final hearing or on any other matters in the case.

What follows is a background discussion to provide the Court with context missing from the debtor's moving papers. This context also relates to the points raised above and is hopefully a helpful roadmap to the Court of matters likely to be at issue in the near term.

## **BACKGROUND AND DISCUSSION**

ICTSI leased a container shipping terminal at which ILWU members (a) performed stevedoring services, (b) engaged in a half-decade of unlawful labor actions, and (c) caused up to $142 million in damages. Under 29 U.S.C. §§158(b)(4)(B), 187, a business is entitled to recover damages from a union that coerces it in pursuit of the union's goals elsewhere. Here, ILWU wanted another union's jobs—jobs controlled by the Port of Portland.[1] To force that reassignment, ILWU in May 2012 threatened to destroy the Port's tenant, ICTSI, and began unlawfully executing that threat.[2] Among other things, ILWU's unlawful labor actions caused ICTSI's customers to eventually stop sending ships to ICTSI's leased terminal.[3] Out of options, ICTSI bought out its lease in March 2017.[4]

ILWU's liability for damages is clear. The District Court for the District of Oregon (Judge Michael Simon presiding) promptly enjoined ILWU's pursuit of the other union's jobs and later held ILWU in contempt of court; and the NLRB also twice found ILWU's conduct to be unlawful (both times affirmed by the D.C. Circuit).[5]

---

[1] See Exhibit A to Garone Declaration (Final Jury Instr. at 20, 23, 31, *ICTSI Or., Inc., v. ILWU*, No. 3:12-cv-01058-SI (D. Or. Oct. 31, 2019), ECF No. 615).

[2] *Id*. at 22-28.

[3] *ICTSI Or., Inc. v. ILWU*, 442 F. Supp. 3d 1329, 1358 (D. Or. 2020)

[4] *Id*. at 1356.

[5] Final Jury Instr. at 17-22. The referenced decisions include *ILWU v. NLRB*, 705 F. App'x 1 (D.C. Cir. 2017) (*per curiam*) (affirming NLRB decision); *ILWU v. NLRB*, 705 F. App'x 3 (D.C. Cir. 2017) (*per curiam*) (affirming NLRB decision); *Hooks ex rel. NLRB v. ILWU*, 72 F. Supp. 3d 1168 (D. Or. 2014) (holding ILWU in contempt for violating injunction between its issuance in July 2012 and August 13, 2013).

In 2019, Judge Simon presided over a jury trial in which the jury found that (a) ILWU persisted in its illegal conduct through ICTSI's termination of business operations in March 2017; and (b) ILWU and its local's course of unlawful conduct between June 2012 and March 2017 was the sole cause of ICTSI's damages.[6]

When ILWU filed its bankruptcy petition, the parties were on the cusp of retrying damages. Although the first jury awarded ICTSI $93.6 million damages, the district court found that ICTSI had not adequately proved certain assumptions, mostly relating to its lost profits.[7] Thus, when the Court gave ICTSI a choice between a new trial on damages or accepting $11.45 million for buying out its lease and $7.6 million, reflecting *ILWU's* expert's estimate of ICTSI's excess labor costs and lost profits, *id*. at 1366,[8] ICTSI elected to better prove its tens of millions in lost profits in a new trial.

Currently, each party has served hundreds of pages of new expert reports; spent weeks deposing experts; and filed extensive *Daubert* motions and responses on August 25, 2023, and September 27, 2023, respectively. Pending confirmation from ILWU that a final witness could be available, Judge Simon was prepared to schedule a *Daubert* hearing for December 16, 2023. The two-week trial was set for February 26, 2024, with the only anticipated wrinkle being whether Judge Simon might benefit from additional time to decide pretrial matters.

There is no escaping the indicia that ILWU filed a bankruptcy petition principally to avoid liquidating its liability to ICTSI in a forum that has already invested hundreds (if not thousands) of hours in the dispute.

---

[6] *See* Exhibit B to Garone Declaration (Special Verdict, Qs. 1, 3, 4, 6, *ICTSI Or., Inc., v. ILWU*, No. 3:12-cv-01058-SI (D. Or. Nov. 4, 2019), ECF No. 620).

[7] *ICTSI Or., Inc.*, 442 F. Supp. 3d at 1359-66.

[8] This figure of $7.6 million, testified to by the debtor's own expert, casts serious doubt on the debtor's eligibility to proceed via Subchapter V. That doubt remains even though, in preparation for the damages trial scheduled for February 26, 2024, ILWU's damage expert changed his estimation method and now says ILWU's unlawful conduct most likely did not cause any damages, or, caused, at most, $3.9 million before considering additional capital expenditures. *See* Exhibit G to Garone Declaration (Defendants' Damages Summary),

-4-

SMRH:4876-8027-9396.6
Case: 23-30662   Doc# 28   Filed: 10/03/23   Entered: 10/03/23 16:09:32   Page 4 of 6
ICTSI OREGON, INC.'S
RESPONSE RE FIRST DAY MOTIONS]

Separately, and with respect to issues that will require serious attention at a later date (and on more than 48 hours notice), the Court should be aware that ILWU has in the past appeared to take liberties with how it treats associated or affiliated non-debtor related entities. A single illustration helps to demonstrate this point, though the full extent of the issue likely extends beyond the following example.

Under the Labor-Management Reporting and Disclosure Act, labor unions are required to file several annual financial reports with the Department of Labor. Among those forms is an LM-2, which, to ICTSI's knowledge, the debtor has not in the recent past filed under its own name. Instead, different divisions of the debtor have each separately filed LM-2s. Historically, ILWU's Coast Longshore Division listed on its LM-2 form the contingent liability, attorney fees, expert witness expenses, and other costs associated with ICTSI's claims.[9] Meanwhile, ILWU National Headquarters, another ILWU entity, had not listed those liabilities or expenses.[10] That changed in 2022, with the contingent liability for ICTSI's claim (but no associated attorney fees or expenses) shifting to ILWU National Headquarters, which has significantly fewer assets than the ILWU Coast Longshore Division.[11] It is unclear to ICTSI how the ILWU entity seeking relief here aligns with the various ILWU divisions and their assets, liabilities, and future cash flow. But to the extent this case proceeds to a plan process, a robust inquiry into this area will be necessary in order to test the debtor's liquidation analysis.

## CONCLUSION

This is no routine bankrputcy filing. Setting aside the interim relief sought via the First Day Motions, a larger question looms: whether the debtor is pursuing a proper bankruptcy purpose at all in seeking relief from this Court. Answering that question will be critically important.

---

[9] See Exhibit C to Garone Declaration (See, e.g., Coast Longshore Division 2021 LM-2 at 23-24, 28-29, 54.)

[10] See Exhibit E to Garone Declaration (See, e.g., National Headquarters 2021 LM-2 at 32-35, 59.)

[11] See Exhibits D and F to Garone Declaration (See, e.g., Coast Longshore Division 2022 LM-2 at 5, 43, 77; National Headquarters 2022 LM-2 at 5, 29-35, 54.)

Dated: October 3, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Ori Katz
ORI KATZ
GIANNA SEGRETTI
KORAY ERBASI

Attorneys for ICTSI Oregon, Inc.