PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
jrosell@pszjlaw.com

*Counsel to the Debtor*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL LONGSHORE<br>AND WAREHOUSE UNION,<br><br>Debtor. | Case No. 23-30662 (HLB)<br><br>Chapter 11<br><br>**NOTICE OF ORDER SETTING SCHEDULE IN CONNECTION WITH PLAN CONFIRMATION PROCESS AND RELATED DEADLINES**<br><br>Pre-Trial Conference:<br><br>Date: January 18, 2024<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Zoom / Telephonic<br>Judge: Hon. Hannah L. Blumenstiel |

**PLEASE TAKE NOTICE THAT**, on October 26, 2023, the Court entered an *Order Setting Schedule in Connection With Plan Confirmation Process and Related Deadlines* [Docket No. 59] (the "Confirmation Scheduling Order"), a copy of which is attached hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE THAT**, on November 2, 2023, the above-captioned debtor and debtor in possession (the "Debtor") filed its *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 60] (the "Plan"), a copy of which is attached hereto as Exhibit B.

**PLEASE TAKE FURTHER NOTICE THAT**, on or before **January 5, 2024**, all creditors and other parties in interest entitled to vote on the Plan shall transmit written notice of their acceptance or rejection of the Plan to counsel to the Debtor.

**PLEASE TAKE FURTHER NOTICE THAT**, on or before **January 9, 2024**, the Debtor shall file its ballot summary.

**PLEASE TAKE FURTHER NOTICE THAT**, on or before **January 15, 2024**, any creditor or other party in interest that wishes to object to confirmation of the Plan must file and serve such written objection.

**PLEASE TAKE FURTHER NOTICE THAT** the Court will hold a pre-trial scheduling conference on **January 18, 2024 at 10:00 a.m. (Pacific Time)** (the "Pre-Trial Conference") at which time the Court will (i) set the deadline for the Debtor to file its brief in support of confirmation of the Plan and (ii) schedule a hearing to consider confirmation of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Pre-Trial Conference will not be conducted in the presiding judge's courtroom but instead will be conducted by telephone or video. All interested parties should consult the Bankruptcy Court's website (https://www.canb.uscourts.gov/) for information explaining how to arrange an appearance at a video/telephonic hearing. If you have questions about how to appear at the court hearing and participate in the video hearing, you may contact the court by calling 888-821-7606 or by using the Live Chat feature on the Court's website.

Dated:   November 2, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/   Jason H. Rosell*
Debra I. Grassgreen
Jason H. Rosell

*Counsel to the Debtor*

# EXHIBIT A

## Confirmation Scheduling Order

**(Exhibits Omitted)**

Signed and Filed: October 26, 2023

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

1  PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
2  Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
3  San Francisco, California 94104
Telephone:    (415) 263-7000
4  Facsimile:    (415) 263-7010
E-mail:    dgrassgreen@pszjlaw.com
5            jrosell@pszjlaw.com
6  Counsel to the Debtor

7              **UNITED STATES BANKRUPTCY COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9              **SAN FRANCISCO DIVISION**

10  In re:                                 Case No. 23-30662-HLB

11  INTERNATIONAL LONGSHORE              Chapter 11
    AND WAREHOUSE UNION,
12                                        **ORDER SETTING SCHEDULE IN**
        Debtor.                          **CONNECTION WITH PLAN**
13                                        **CONFIRMATION PROCESS AND**
                                          **RELATED DEADLINES**
14
15                                        Pre-Trial Conference:

16                                        Date:    January 18, 2024
                                          Time:    10:00 a.m. (Pacific Time)
17                                        Place:   Zoom / Telephonic
                                          Judge:   Hon. Hannah L. Blumenstiel

18        The Court having held a scheduling conference on October 19, 2023 to discuss (i) a date and

19  time for convening a hearing on confirmation (the "Confirmation Hearing") of the *Plan of*

20  *Reorganization for Small Business Under Chapter 11* [Docket No. 18] (the "Plan") filed by the above-

21  captioned debtor and debtor in possession (the "Debtor"), (ii) deadlines for briefing in advance of the

22  Confirmation Hearing, and (iii) deadlines for conducting any discovery that might be necessary prior

23  to the Confirmation Hearing;

24        **IT IS HEREBY ORDERED THAT:**

25        **Plan Solicitation Deadlines**

26        1.      The Court will hold a pre-trial scheduling conference on **January 18, 2024 at 10:00**

27  **a.m. (Pacific Time)** (the "Pre-Trial Conference") at which time the Court will (i) set the deadline for

28

the Debtor to file its brief in support of confirmation of the Plan and (ii) schedule the Confirmation Hearing.

2.    On or before **November 3, 2023**, the Debtor shall serve a copy of this Order, a copy of the Plan (or any amended Plan), and a copy of the notice attached hereto as <u>Exhibit A</u>, on the United States Trustee, the Subchapter V Trustee, and all creditors and other parties in interest.  Within seven (7) calendar days of the completion of service of the foregoing, the Debtor shall file a certificate of service demonstrating compliance with this paragraph.

3.    On or before **November 3, 2023**, the Debtor shall transmit via email a form of ballot to counsel to ICTSI (Oregon), Inc.

4.    On or before **January 5, 2024**, all creditors and other parties in interest entitled to vote on the Plan shall transmit written notice of their acceptance or rejection of the Plan to counsel to the Debtor.

5.    On or before **January 9, 2024**, the Debtor shall file its ballot summary.

6.    On or before **January 15, 2024**, any creditor or other party in interest that wishes to object to confirmation of the Plan must file and serve such written objection.

**Plan Discovery Deadlines**

7.    <u>Fact Discovery</u>.  Fact discovery shall be completed by **December 22, 2023** (the "<u>Fact Discovery Deadline</u>"). Completion means that depositions must be concluded, although not necessarily transcribed. As to written and production discovery, responses must be due before the Fact Discovery Deadline. The Court will attempt to resolve all discovery disputes on an expedited basis via telephonic conference, which any party may initiate by request to the Court's Courtroom Deputy and notice to the other party after they have met, conferred, and made a good faith effort to resolve the dispute. The party requesting the conference should submit a brief letter explaining the issues to be presented.

8.    <u>Deadline to Serve Discovery Requests</u>.  The last day for any party to serve discovery requests is **December 1, 2023**.

9.    <u>Responses to Discovery Requests</u>.  The deadline to (i) serve written responses to discovery requests and (ii) begin document production shall be 14 calendar days after service of such

discovery requests. The deadline to substantially complete document production shall be 21 calendar days after service of discovery requests.

10. <u>Expert Discovery and Evidence</u>. Direct evidence must be presented by a declaration that authenticates the report of the expert. See FRCP 26(a)(2)(B), incorporated via Fed. R. Bankr. P. 7026. Each party must file and serve declarations of experts and other documentary evidence related thereto no later December 29, 2023. A party that intends to offer an expert solely to contradict or rebut evidence on the same subject matter identified by another party must file and serve the disclosures required by Rule 26(a)(2) by January 12, 2024. FRCP 26(a)(2)(D)(ii).

**\*\* END OF ORDER \*\***

<u>**ACKNOWLEDGED AND AGREED TO FORM:**</u>

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

*/s/ Ori Katz*
Ori Katz (California Bar No. 209561)
Gianna Segretti (California Bar No. 323645)
Koray Erbasi (California Bar No. 332877)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415.434.9100
Facsimile:      415.434.3947
Email           okatz@sheppardmullin.com
                gsegretti@sheppardmullin.com
                kerbasi@sheppardmullin.com

*Attorneys for ICTSI Oregon, Inc.*

Case: 23-30111 Doc# 659 Filed: 11/02/23 Entered: 11/02/23 14:07:51 Page 6 of 26

# EXHIBIT B

**Plan**

☒ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11  02/20

International Longshore & Warehouse Union 's **Plan of Reorganization, Dated** November 2, 2023

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The International Longshore and Warehouse Union (the "ILWU" or "Debtor") is a non-profit labor organization exempt from federal income tax under section 501(c)(5) of the Internal Revenue Code. The ILWU has approximately 40,000 members in over 50 local unions and affiliates in the states of California, Washington, Oregon, Alaska, Hawaii, and Canada.

The organization of the ILWU began in 1934 when it was the Pacific Coast District of the International Longshoremen's Association (ILA) with headquarters in New York. The membership of the Pacific Coast District voted to disaffiliate from the ILA in the summer of 1937, and formed itself into the ILWU as an independent union now headquartered in San Francisco, California.

The ILWU's members include workers employed in, among other industries, the (a) loading and unloading of vessels, rail, and trucks at ports; (b) warehousing, wholesaling, and distribution industries (including mining); (c) operation of tugs, towboats, barges, and ferries; (d) agriculture and aquaculture (including processing, transportation, and distribution) industries; (e) tourist industry (including hotels, resorts, and restaurants); (f) wholesale and retail trade, general manufacturing, and food processing; and (g) service industries (including hospitals and health care facilities, financial and insurance operations, newspapers, restaurants, breweries, early childhood education, etc.).

The Debtor has approximately 25 employees and works with the local unions (which are not chapter 11 debtors in this case) in California, Washington, Oregon, Hawaii, Alaska, and Canada. The Debtor is managed by the President (currently William E. Adams) and the other Titled Officers, and further has an Executive Board that meets at least three (3) times each year, pursuant to the Debtor's Constitution, amended as of June 2021 (as may be amended from time to time, the "Constitution").

The ILWU's objectives as a labor union include: (a) to unite in one organization, regardless of religion, race, creed, color, gender, sexual orientation, political affiliation or nationality, all workers within the Debtor's jurisdiction; (b) to maintain and improve the wages, hours and working conditions for all of its members without discrimination; (c) to educate the membership in the history of the American labor movement and in present day labor problems and tactics; and (d) to secure legislation in the interests of labor and to oppose anti-labor legislation.

### B. Events Contributing to Chapter 11 Filing and Goals of Case

Historically, the Debtor has been a financially sound and stable organization, primarily funded by per capita payments from local unions and affiliates. However, in 2012, ICTSI Oregon, Inc. ("ICTSI") sued the Debtor and International Longshore and Warehouse Local 8 (Portland, Oregon) ("Local 8") in the U.S. District Court, District of Oregon (the "ICTSI Litigation") for alleged unlawful labor practices including work stoppages and slowdowns at the Port of Portland (Oregon) terminal. In November 2019, a jury trial verdict was reached against the Debtor, finding the Debtor and Local 8 had caused damages to ICTSI of approximately $94 million. The jury concluded that 55% of those damages were the responsibility of the Debtor and 45% were the responsibility of Local 8. The court, however, granted the Debtor's request to delay entry of the judgment pending resolution of their post-trial motions, including a renewed motion for judgment as a matter of law and a motion for a new trial. On March 5, 2020, the court found the maximum damages supported by the evidence was $19,061,248, and ordered ICTSI to decide by March 19, 2020, whether it would accept that reduced amount, which the ILWU offered to pay, or proceed with a new trial. On April 1, 2020, after ICTSI rejected the reduced damages amount, the Debtor requested the court to (1) stay the case and permit the Debtor to appeal the court's denial of its motion for judgment as a matter of law and (2) reconsider its decision to limit the new trial to damages. On April 6, 2020, the court denied the Debtor's motion to reconsider but granted the Debtor leave to seek an interlocutory appeal of the court's denial of its motion for judgment as a matter of law. In September 2020, the Ninth Circuit Court of Appeals granted the Debtor's petition to file an interlocutory appeal and granted ICTSI's cross-petition to file its own interlocutory appeal. On January 18, 2022, the appeals court dismissed both appeals for lack of jurisdiction, and a new trial on damages was scheduled. The trial is scheduled for February 2024.

The Debtor has vigorously disputed the relevant issues in the ICTSI Litigation, but can no longer afford the legal fees associated with defending itself in the ICTSI Litigation. Moreover, to the extent the Debtor is found liable, it would not be able to afford anything more than a *de minimis* payment on account of the judgment. The Debtor estimates that it will need to incur more than $8.5 million in additional legal fees and related expenses through the conclusion of the new damages trial and any related appeals. The Debtor simply cannot sustain the cost of litigation related to the new trial.

To address its significant liabilities, the Debtor filed this subchapter V case to restructure its operations and affairs, and emerge as a stronger organization and labor union, to the benefit of the Debtor's many thousands of union members. As set forth herein, all creditors with allowed administrative and priority claims against the Debtor will be paid in full on the Effective Date or otherwise in the ordinary course of business. The Debtor is unaware of any secured claims against the Debtor.

Pursuant to the Plan, holders of Class 3A Claims (ICTSI Litigation) will receive the GUC Fund ($6.1 million) on the effective date of the Plan in full and final satisfaction of such claims. Holders of Class 3B Claims (Non-ICTSI Litigation General Unsecured Claims) will have their claims reinstated on the effective date of the Plan and will be paid in full in the ordinary course of business from the Debtor's working capital reserve. Class 3B Claims are not subject to the discharge.

**C. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such creditor would receive in a chapter 7 liquidation. The liquidation analysis, attached to the Plan as **Exhibit A**, demonstrates that the Plan meets this requirement. As shown in the liquidation analysis, (a) the liquidation value of the assets is approximately $6.5 million and (b) the projected recovery to holders of Class 3A Claims (ICTSI Litigation) in a chapter 7 liquidation is approximately $5.7-6.0 million. The Debtor's creditors will receive at least as much under the Plan as they otherwise would have received in a chapter 7 liquidation. Specifically, holders of Class 3A Claims (ICTSI Litigation) will receive $6.1 million under the Plan, as opposed to approximately $5.8 million in a chapter 7 liquidation.

**D. Ability to make future plan payments and operate without further reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Debtor has provided financial projections, attached hereto as **Exhibit B**, to analyze its ability to meet its obligations under the Plan. The Debtor believes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor. The Debtor's financial projections show that the Debtor will have (a) projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of -$733,000.00 and (b) an ending cash balance for the period of $548,000.00, which is net of the GUC Fund ($6.1 million) to be funded on the effective date of the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code proposes to pay creditors of International Longshore & Warehouse Union from Debtor's available cash, including, with respect to general unsecured creditors, as soon as reasonably practicable after the Effective Date.

This Plan provides for:   | 1 |   class of priority claims;

| 0 |   classes of secured claims;

| 2 |   sub-classes of non-priority general unsecured clams; and

| 0 |   classes of equity security holders.

Holders of Class 3A Claims (ICTSI Litigation) will receive the proceeds of the GUC Fund ($6.1 million), which represents substantially all of the Debtor's cash on hand (other than a working capital reserve), as soon as reasonably practicable after the Effective Date. Class 3A is impaired and entitled to vote.

Class 3B Claims (General Unsecured Claims) consist of all other non-priority general unsecured creditors of the Debtor. These claims include (1) approximately $100,000 in employee accrued personal time off and (2) the following pending litigation matters, which are primarily equitable in nature and not reasonably capable of being reduced to monetary damages:

1.  *Belaustegui v. International Longshore and Warehouse Union, et al.*, Case No. 23-55094
2.  *Bragg, et al. v. Pacific Maritime Association, et al.*, Case No. 19STCV35714
3.  *IAM Dist. Lodge 160 v. International Longshore and Warehouse Union, et al.*, Case No. 21-cv-01288
4.  *IAM Dist. Lodge 160 v. International Longshore and Warehouse Union, et al.*, NLRB Case No. 19-CD-303801
5.  *International Longshore and Warehouse Union, et al. v. National Labor Relations Board*, Case No. 23-632
6.  *Walsh v. International Longshore and Warehouse Union*, Case No. 19-cv-02103

The Debtor estimates that the aggregate non-contingent liquidated claims in Class 3B is approximately $100,000. Pursuant to this Plan, the Debtor does not seek a discharge with respect to Class 3B Claims and any such claims and related litigation will be reinstated on the Effective Date. Accordingly, Class 3B is unimpaired, deemed to accept, and not entitled to vote.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

### Article 2: Classification of Claims and Interests

2.01  **Class 1**.....................................  All allowed claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). The Debtor estimates there will be approximately $86,060.74 in Class 1 Claims comprised of employee accrued personal time off. Class 1 Claims will be assumed by the Debtor and honored in the ordinary course of business.

2.02  **Class 2**.....................................  The claim of _____N/A_____, to the extent allowed as a secured claim under § 506 of the Bankruptcy Code.

The Debtor is unaware of any valid secured claims and estimates there will be $0 in Class 2 Claims.

2.03  **Class 3A**  .................................  Class 3A includes any non-priority unsecured claim of ICTSI arising from the ICTSI Litigation allowed under § 502 of the Bankruptcy Code.

2.04  **Class 3B**  .................................  Class 3B includes any allowed non-priority unsecured claims.

2.05  **Class 4**.....................................  Equity interests of the Debtor. N/A. While the Debtor has union members, such members do not hold any securities or other equity interests in the Debtor.

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01  **Unclassified claims**          Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02  **Administrative expense claims**          Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid (i) in full on the Effective Date of this Plan, in cash, (ii) otherwise if applicable, in the ordinary course of business, or (iii) upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03  **Priority tax claims**          Each holder of a priority tax claim will be paid (i) in full on the Effective Date of this Plan, in cash, (ii) otherwise if applicable, in the ordinary course of business, or (iii) upon such other terms as may be agreed upon by the holder of the claim and the Debtor. However, the Debtor is exempt from federal taxes under Section 501(c)(5) of the Internal Revenue Code and is exempt from California franchise taxes under Section 23701a of the Revenue and Taxation Code.

3.04  **Statutory fees**          All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05  **Prospective quarterly fees**          All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

### Article 4: Treatment of Claims and Interests Under the Plan

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Each holder of an allowed Class 1 Claim will be paid (i) in full on the Effective Date of this Plan, in cash, (ii) otherwise if applicable, in the ordinary course of business, or (iii) upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |

Case 23-30662    Doc# 61    Filed 11/02/23    Entered 11/02/23 10:50:51    Page 10 of 19
26

| Class 2 – **Secured claims** | ☐ Impaired<br>☒ Unimpaired | The Debtor is unaware of any prepetition secured claims. If there are secured claims, the holder thereof will receive one of the following treatments, at the Debtor's option: (i) the holder will retain its lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, will be paid to such holder in full satisfaction and release of its allowed secured claim; (ii) the holder will receive a cash payment equal to the amount of its allowed secured claim in full satisfaction and release of such; or (iii) the applicable collateral will be abandoned to the holder, in full satisfaction and release of such secured claim. |
| --- | --- | --- |
| Class 3A – **ICTSI Litigation Claim** | ☒ Impaired<br>☐ Unimpaired | Class 3A consists solely of the ICTSI Litigation Claim.<br><br>Holders of allowed Class 3A Claims shall receive their *pro rata* share of the GUC Fund as soon as reasonably practicable after the Effective Date or, if later, after their Class 3A Claim is allowed. For the avoidance of doubt, upon making the GUC Fund payments to the applicable holders, all Class 3A Claims shall be discharged pursuant to Section 1141 of the Bankruptcy Code.<br><br>Holders of allowed Class 3A Claims are impaired and entitled to vote on the Plan. |
| Class 3B – **General Unsecured Claims** | ☐ Impaired<br>☒ Unimpaired | Class 3B consists of any allowed non-priority unsecured claims, other than the ICTSI Litigation Claim.<br><br>Notwithstanding Section 1141 of the Bankruptcy Code, the Debtor expressly waives the right to any discharge of the Class 3B Claims. As a result, Class 3B Claims will be reinstated on the Effective Date and are unimpaired. Moreover, any pending litigation, other than the ICTSI Litigation, will be permitted to continue on and after the Effective Date.<br><br>Holders of allowed Class 3B Claims are unimpaired and not entitled to vote on the Plan. |
| Class 4 - **Equity security holders of the Debtor** | ☐ Impaired<br>☐ Unimpaired | N/A |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| --- | --- | --- |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order or otherwise upon written agreement by the Debtor. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) | The Debtor assumes the executory contracts and unexpired leases set forth on **Exhibit C** (the "Assumed Contract List") as of the Effective Date. For the avoidance of doubt, pursuant to this Plan, the Debtor seeks to assume all of its executory contracts and unexpired leases on the Effective Date of the Plan. |
| --- | --- | --- | --- |
| | | (b) | The Debtor shall reject on the Effective Date of the Plan the following executory contracts and unexpired leases:<br><br>None. |

## Article 7: Means for Implementation of the Plan

<u>Funding With Cash on Hand for Effective Date Payments and GUC Fund</u>

As set forth in Article 4, all creditors with allowed administrative and priority claims against the Debtor will be paid in full on the Effective Date or otherwise in the ordinary course of business. The Debtor is unaware of any secured claims against the Debtor. With respect to general unsecured creditors, (1) the ICTSI will receive the proceeds of the GUC Fund as. soon as practicable after the Effective Date, and (2) any allowed Class 3B Claim will be paid from the Debtor's working capital reserve in the ordinary course of business. In all events, distributions will be made up to the allowed amount of the creditor's claim.

<u>Post-Confirmation Management and Administration of Plan</u>

As of the Effective Date, the Debtor's current management will continue in their management of the Debtor and administer the Plan, including, without limitation, the filing of objections to claims, making Plan payments and distributions pursuant to the Plan, and otherwise carrying out the provisions of the Plan.

<u>Pension Plan</u>

The Debtor sponsors the Pension Plan for Officers & Professional Staff of International Longshore & Warehouse Union (the "<u>Pension Plan</u>"). The Pension Plan is a multiple-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>") and insured by the Pension Benefit Guaranty Corporation ("<u>PBGC</u>"). The Pension Plan has a total of approximately 147 participants.

Upon the Effective Date, the Debtor shall remain the sponsor of the Pension Plan and shall comply with all applicable statutory provisions under Title IV of ERISA, and the Internal Revenue Code of 1986, as amended.

No provision contained in the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1192 thereof), shall be construed as discharging, releasing, exculpating, or relieving the Debtor or any person or entity in any capacity, from any requirement under ERISA with respect to the Pension Plan, or any liability to the Pension Plan or the PBGC imposed under any law or regulation. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability as a result of any such provisions of satisfaction, release, injunction, exculpation, and discharge of claims in the Plan, Confirmation Order, or the Bankruptcy Code.

## Article 8: General Provisions

**8.01 Definitions and rules of construction**

The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

**Bankruptcy Code:**  Chapter 11 of Title 11 of the United States Code.

**Claim:**  A claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class 3A Claims:**  The ICTSI Litigation Claim.

**Class 3B Claims:**  Any non-priority unsecured claim other than a Class 3A Claim.

**GUC Fund:** $6.1 million in cash, to be funded from Debtor's available cash on the Effective Date, and held in a segregated account for the benefit of holders of allowed Class 3A Claims.

**ICTSI:**  ICTSI Oregon, Inc. and/or its successors and assigns.

**ICTSI Litigation Claim:**  Any non-priority unsecured claim of ICTSI against the Debtor relating to the claims and matters involved in that certain action entitled *ICTSI v. ILWU and Local 8* pending in the U.S. District Court for the District of Oregon (including, without limitation, any claims for alleged violations of federal labor law).

**Local 8:** International Longshore and Warehouse Union Local 8.

**Working Capital Reserve:**  The "Beginning Cash for Operations" in 2024 identified on **Exhibit B**.

**8.02 Effective date**

The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**8.03 Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |

| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |

| 8.07 | **Corporate governance** | N/A |

| 8.08 | **Retention of Jurisdiction** | From and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes: |

(a) To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate or liquidate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(b) To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

(c) To hear and determine any and all applications by Professionals for an award of on account of any Professional Fee Claims;

(d) To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

(e) To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

(f) To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(g) To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; and

(h) To close the Chapter 11 Case when the administration of the Chapter 11 Case has been completed.

## Article 9: Discharge

**Discharge of the Debtor**

If the Debtor's Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or
(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in section 1192; or
(ii) excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Notwithstanding the foregoing, section 1141 of the Bankruptcy Code, and the payment of the Class 3B Claims under the Plan, the Debtor expressly waives

Case 23-30662 Doc# 661 Filed 11/02/23 Entered 11/02/23 10:50:51 Page 6 of 19
26

the right to any discharge of the Class 3B Claims.

On the Effective Date, the reorganized Debtor may, in its discretion, fund the entire GUC Fund into a segregated account (the "Segregated Account") to be held for the benefit of holders of allowed Class 3A Claims. The funding in full of the Segregated Account shall constitute completion of all payments due under the Plan for purposes of section 1191(b) of the Bankruptcy Code. Upon funding of the Segregated Account in full, the Debtor shall be immediately entitled to a discharge of Class 3A Claims.

## Article 10: Other Provisions

Exculpation: The Debtor and its officers, directors, managers, employees, professionals, advisors and agents, each solely in their capacities as such, will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan or any agreement created or entered into in connection with the Plan; *provided, however,* that this limitation will not affect or modify the obligations created under the Plan, or the rights of any holder of an allowed claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction). Without limiting the generality of the foregoing, each exculpated party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.

Injunction: In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold, or may hold Claims against or interests in the Debtor that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, with respect to any such Claim or interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, with respect to any such Claim or interest; (c) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtor, with respect to any such Claim or interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or interest.

Debtor Name    International Longshore & Warehouse Union    Case number    23-30662-HLB

**x** William E Adams

[Signature of the Plan Proponent]

William E. Adams

[Printed Name]

**x** Jason Rosell

[Signature of the Attorney for the Plan Proponent]

Jason H. Rosell

[Printed Name]

# EXHIBIT A

**Liquidation Analysis**

## INTERNATIONAL LONGSHORE AND WAREHOUSE UNION
## LIQUIDATION ANALYSIS NOTES

A chapter 11 plan cannot be confirmed unless the bankruptcy court determines that the plan is in the "best interests" of all holders of claims and interests that are impaired by the plan and that have not accepted the plan. The "best interests" test requires a bankruptcy court to find either that (i) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

The Debtor's financial advisor has prepared this liquidation analysis ("***Liquidation Analysis***") based on a hypothetical liquidation under chapter 7 of the Bankruptcy Code. It is assumed, among other things, that the hypothetical liquidation under chapter 7 would commence under the direction of a court-appointed trustee (the "***Trustee***") and would continue for a period of time, during which all of the Debtor's material assets would be sold, deposits would be refunded, and the cash proceeds, net of liquidation related costs, would be distributed to creditors in accordance with applicable law.

The Liquidation Analysis has been prepared assuming that the Debtor converted to chapter 7 bankruptcy in December 2023 (the "***Conversion Date***").

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtor's assets in a chapter 7 case is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor, its management, and advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation.

THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTOR'S ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON THE DEBTOR'S BUSINESS JUDGEMENT. THE RECOVERIES SHOWN DO NOT CONTEMPLATE A SALE OR SALES OF BUSINESS UNITS ON A GOING CONCERN BASIS.

DOCS_SF:109645.2

THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS WAS NOT COMPILED OR EXAMINED BY ANY INDEPENDENT ACCOUNTANTS. NEITHER THE DEBTOR NOR ITS ADVISORS MAKE ANY REPRESENTATIONS OR WARRANTIES THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

In order to maximize recoveries to the Debtor's creditors, this Liquidation Analysis assumes that the Trustee would commence efforts to liquidate the Debtor's assets on the Conversion Date and complete such liquidation within three-months (the "**_Liquidation Period_**"). This Liquidation Analysis assumes that, during the Liquidation Period, the Trustee would, among other things, (i) employ some existing employees (five) on a contract basis, and (ii) spend three (3) months liquidating physical assets and assessing the Debtor's affairs.

The Liquidation Analysis is appended hereto, and should be read in conjunction with the following notes and assumptions:

**Summary Notes to Liquidation Analysis**

      1.    *Additional claims*. The cessation of business in a liquidation is likely to trigger certain claims that otherwise would not exist under a plan. Some of these claims could be significant and may be entitled to priority in payment over general unsecured claims. Those priority claims would be paid in full before any proceeds from liquidation would be made available to pay general unsecured claims or to make any distribution in respect of equity interests. While some of these claims could be significant, no adjustment has been made for these potential claims unless specified in the assumptions to the Liquidation Analysis.

      2.    *Dependence on unaudited financial statements*. This Liquidation Analysis is based, in part, on unaudited financial statements, which may differ from audited results.

      3.    *Distribution of net proceeds*. Priority and administrative claim amounts, professional fees, trustee fees, and other such claims that may arise in a liquidation scenario would be paid in full from the liquidation proceeds before the balance of those proceeds is made available to pay prepetition priority, secured, and unsecured claims. Under the absolute priority rule, no junior creditor would receive any distribution until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors, are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis, are estimated in accordance with the absolute priority rule.

**Projected Distributable Assets**

**A.**    **Unrestricted Cash**

    Unrestricted cash consists of estimated cash in the Debtor's cash management system on the Conversion Date. These amounts are the result of cash flow projections completed by the Debtor's financial advisor through the Conversion Date.

2

B.     **Accounts Receivable**

Accounts receivable are comprised of pro rata payments from local unions and affiliates. Estimated amounts on the Conversion Date are a function of cash flow projections completed by the Debtor's financial advisor through the Conversion Date. The Liquidation Analysis assumes that local unions and affiliates will not pay outstanding pro rata amounts following a conversion, and that they ultimately could not be compelled to do so (either by way of defense, lack of pursuit by a chapter 7 trustee, or setoff).

C.     **Supplies Inventory**

The gross value reflected in the Liquidation Analysis is based on the projected cost balance in the Debtor's accounting records as of December 30, 2023, and does not reflect their expected market value. Inventory items primarily consist of jackets, pins, books and other promotional material and are not expected to perform well during a liquidation.

D.     **Furniture & Equipment**

The net value reflected in the Liquidation Analysis is based on the accrued balances in the Debtor's accounting records, and do not reflect their expected market value. Only approximately $35,000 of furniture and equipment has been purchased after 2018. In a liquidation, minimal recovery is assumed.

E.     **Chapter 7 Administrative Expense**

The Liquidation Analysis assumes that the Trustee will run the liquidation. Winddown efforts are anticipated to extend from the Conversion Date through March 2024 (3 months). Projected winddown costs are primarily related to:

o   Rent at all locations will be paid for 1 month.

o   Rent at headquarters location will be paid over the entire liquidation period (3 months)

o   Retention of certain employees (5) over the liquidation period and two-week retention bonus for those individuals to assist with the wind-down process is assumed.

Trustee fees are calculated according to section 326 of the Bankruptcy Code.

Chapter 7 Professional fees include estimates for certain legal and financial advisory professionals required during the wind-down period. The fees for these professionals are estimated to be between $250,000 and $300,000.

DOCS_SF:109645.2

**Projected Claims**

**F.      Administrative Claims**

The Liquidation Analysis assumes that accrued and unpaid administrative expenses will not be paid prior to the Conversion Date. These amounts are treated as unpaid Administrative Claims owed by the chapter 7 estate, primarily from postpetition trade obligations, and estimated at 1-2 weeks of projected vendor payments reflected in the 13-week cashflow budget.

**G.      Priority Claims**

Priority Claims are comprised of (i) the priority portion of accrued PTO and (ii) the estimated severance obligations for employees on the Conversion Date, consistent with the Debtor's existing severance policies.

**H.      General Unsecured Claims**

General Unsecured Claims are estimated to include the general unsecured portion of accrued and unpaid PTO for employees, plus rejection damages for the Debtor's lease in Washington.

# International Longshore and Warehouse Union
## Case No. 23-30662-HLB

## Liquidation Analysis

| Grosss Liquidation Proceeds: | | Est. Balance Sheet 12/30/2023 | Low $ | % | High $ | % |
|---|---|---|---|---|---|---|
| Cash and cash equivalents | A | $ 7,381 | $ 7,381 | 100% | $ 7,381 | 100% |
| Trade Accounts Receivable | B | 842 | - | 0% | 84 | 10% |
| Supplies Inventory | C | 259 | - | 0% | - | 0% |
| Furniture & Equipment | D | 43 | - | 0% | 4 | 10% |
| **TOTAL GROSS LIQUIDATION PROCEEDS** | | | $ 7,381 | | $ 7,470 | |
| (-) Wind-Down Expenses | E | | (316) | | (253) | |
| (-) Trustee Fees | E | | (221) | 3% | (224) | 3% |
| (-) Legal & Financial Advisors | E | | (300) | | (250) | |
| **TOTAL NET LIQUIDATION PROCEEDS** | | | $ 6,544 | | $ 6,743 | |

| Claims Recovery Analysis (in $000s) Class Claims | Claims Estimate | Low Recovery Estimate $ | % | High Recovery Estimate $ | % |
|---|---|---|---|---|---|
| Administrative Claims - Estimate | $65-$130 | $ 130 | 100% | $ 65 | 100% |
| 1 Priority Claims | 614 | 614 | 100% | 614 | 100% |
| 2 Secured Claims | - | - | - | - | - |
| 3A ICTSI Claims | 10,484 | 5,737 | 55% | 5,998 | 57% |
| 3B General Unsecured Claims | 114 | 63 | 55% | 65 | 57% |

# EXHIBIT B

**Feasibility Analysis / Projected Disposable Income**

**ILWU**

**5-Year Projected Disposable Income Analysis**
**($000s)**

| ($000s) | 2024 | 2025 | 2026 | 2027 | 2028 | 5-Year Total |
|---|---|---|---|---|---|---|
| **Beginning Cash** | 7,381 | | | | | |
| **Plan Payment** | (6,100) | | | | | |
| **Beginning Cash For Operations** | 1,281 | 1,376 | 1,801 | 2,494 | 1,248 | |
| **Revenue** | | | | | | |
| **Per Capita Assessments** | | | | | | |
| Administration | 9,231 | 9,231 | 9,231 | 9,231 | 9,231 | 46,154 |
| Dispatcher per Capita | 118 | 118 | 118 | 118 | 118 | 589 |
| **Total Per Capita** | **9,348** | **9,348** | **9,348** | **9,348** | **9,348** | **46,742** |
| Dispatcher Subscription and Over-Circulation | 27 | 27 | 27 | 27 | 27 | 134 |
| In-Kind Rent Donation | 134 | 134 | 134 | 134 | 134 | 671 |
| Interest Income | 14 | 14 | 14 | 14 | 14 | 71 |
| Book and Video Income | 10 | 10 | 10 | 10 | 10 | 48 |
| Royalty Income | 11 | 11 | 11 | 11 | 11 | 56 |
| **Total Revenue** | **9,545** | **9,545** | **9,545** | **9,545** | **9,545** | **47,723** |
| **Expenses** | | | | | | |
| **Budgeted Expenses** | | | | | | |
| Program Services: | | | | | | |
| Dispatcher | (567) | (590) | (613) | (637) | (662) | (3,070) |
| Research and Education | (535) | (558) | (582) | (607) | (632) | (2,914) |
| Organizing and Field Services | (2,628) | (2,739) | (2,855) | (2,975) | (3,100) | (14,297) |
| Washington Office | (272) | (283) | (295) | (308) | (321) | (1,480) |
| Education | (180) | (809) | (195) | (261) | (850) | (2,296) |
| Convention | (1,292) | - | - | (1,512) | - | (2,804) |
| Public Relations | (207) | (215) | (223) | (232) | (242) | (1,119) |
| **Total Program Services** | **(5,682)** | **(5,195)** | **(4,763)** | **(6,532)** | **(5,807)** | **(27,980)** |
| Supporting Services: | | | | | | |
| Administration | (3,696) | (3,850) | (4,011) | (4,179) | (4,353) | (20,090) |
| **Total Budgeted Expenses** | **(9,378)** | **(9,045)** | **(8,775)** | **(10,711)** | **(10,161)** | **(48,070)** |
| Non-Budgeted Expenses | (71) | (74) | (77) | (80) | (83) | (386) |
| **Total Expenses** | **(9,450)** | **(9,119)** | **(8,852)** | **(10,791)** | **(10,244)** | **(48,456)** |
| **Projected Disposable Income** | **95** | **425** | **693** | **(1,247)** | **(700)** | **(733)** |
| **Ending Cash** | **1,376** | **1,801** | **2,494** | **1,248** | **548** | |

# EXHIBIT C

**Assumed Contract List**

**EXHIBIT C**
**Assumed Contracts Schedule**

| Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|
| Alaska Longshore Division | International Longshore and Warehouse Union Charter | $0.00 |
| American Radio Association | Statement of Agreement on Affiliation dated March 30, 2006 | $0.00 |
| AT&T | Telecommunications Services | $0.00 |
| California Advocacy, Marvin Pineda | Lobbying Services | $0.00 |
| CenturyLink | Telecommunications Services | $0.00 |
| Donna Walden | Hawaii Office Lease | $0.00 |
| Federated Auxiliaries 01 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 02 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 03 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 04 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 05 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 08 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 11 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 14 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 17 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 35 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 38 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries 41 | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries Northern California Area | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries Oregon Area | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries Southern California Area | International Longshore and Warehouse Union Charter | $0.00 |
| Federated Auxiliaries Washington Area | International Longshore and Warehouse Union Charter | $0.00 |
| Hei Mitchell | Southern California Office Lease | $0.00 |
| Holiday Inn Golden Gateway | Venue Space for Women's Conference (October 20-22, 2023) | $0.00 |
| ILWU Local  04 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  05 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  06 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  07 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  08 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  09 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  10 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  100 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  12 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  13 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  14 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  142 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  142 | Memorandum of Agreement dated February 18, 2020 | $0.00 |
| ILWU Local  18 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  19 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  20 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  200 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  21 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  22 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  23 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  24 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  25 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  26 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  27 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  28 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  29 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  30 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  32 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  34 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  40 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  46 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  47 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  50 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  51 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  52 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  53 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  54 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  56 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  63 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  63 OCU | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  65 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  68 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  75 | International Longshore and Warehouse Union Charter | $0.00 |

**EXHIBIT C**
**Assumed Contracts Schedule**

| Contract Counterparty | Description of Contract | Cure Amount |
|---|---|---|
| ILWU Local  91 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  92 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  94 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local  98 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 1000 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 1222 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 160 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 400 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 500 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 502 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 505 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 508 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 514 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 517 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 519 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 520 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 522 | International Longshore and Warehouse Union Charter | $0.00 |
| ILWU Local 523 | International Longshore and Warehouse Union Charter | $0.00 |
| Inlandboatmen's Union of the Pacific | International Longshore and Warehouse Union Charter | $0.00 |
| Internatiional Longshore and Warehouse Union Local 5 | Portland Office Lease | $0.00 |
| Koppelman & Associates | Video Production Services | $0.00 |
| Northern California District Council | International Longshore and Warehouse Union Charter | $0.00 |
| Northwest Technologies | Information Technology Services | $0.00 |
| Office & Professional Employees International Union, Local 29 | Collective Bargaining Agreement (Clerical Employees) | $0.00 |
| Oregon Area District Council | International Longshore and Warehouse Union Charter | $0.00 |
| Pacific Longshoremen's Memorial Association, Inc. | Headquarter Office Lease | $0.00 |
| Pacific Longshoremen's Memorial Association, Inc. | Services Contract dated February 11, 1997 | $0.00 |
| Pacific Maritime Association | Collective Bargaining Agreement | $0.00 |
| Pacific Media Workers Guild, CWA Local 39521 | Collective Bargaining Agreement (Organizing Employees) | $0.00 |
| Pacific Media Workers Guild, CWA Local 39521 | Collective Bargaining Agreement (Professional Staff) | $0.00 |
| Sentinel-XAOM | Copier Lease | $0.00 |
| Southern California District Council | International Longshore and Warehouse Union Charter | $0.00 |
| Southern California Edison | Electricity Agreement | $0.00 |
| The Seattle Labor Temple, Inc. | Washington Office Lease | $0.00 |
| Vital Records Control | Records Management Services | $0.00 |
| Washington Area District Council | International Longshore and Warehouse Union Charter | $0.00 |
| Westin Bayshore | Venue Space for International Convention (June 2024) | $0.00 |