SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
GIANNA SEGRETTI, Cal. Bar No. 323645
KORAY ERBASI, Cal. Bar No. 332877
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email         okatz@sheppardmullin.com
              gsegretti@sheppardmullin.com
              kerbasi@sheppardmullin.com

Attorneys for ICTSI Oregon, Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30662 HLB |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | Chapter 11 |
| Debtor. | **ICTSI OREGON, INC.'S STATEMENT RE STATUS CONFERENCE HEARING** |
| | <u>Hearing</u> |
| | Date:    November 16, 2023<br>Time:    10:00 a.m. (Pacific Time)<br>Judge:   Hon. Hannah L. Blumenstiel<br>Place:    Zoom.Gov |

**STATEMENT**

ICTSI Oregon, Inc. ("ICTSI"), as creditor and party in interest in the above-captioned chapter 11 case (the "Bankruptcy Case") of International Longshore and Warehouse Union (the "Debtor"), files this statement (the "Statement") to apprise the Court and other parties in interest of recent developments in connection with the Debtor's plan confirmation process, and to preview certain concerns that may require the Court's guidance in the future.

For the avoidance of doubt, ICTSI is not seeking any relief from the Court in connection with this Statement. ICTSI has been in regular contact with the subchapter V trustee, Mark Sharf, as to the matters discussed below.

**A.   The Debtor's Section 341(a) Meeting of Creditors.**

Counsel to ICTSI attended the Debtor's section 341(a) meeting of creditors held on October 24, 2023, and the continued meeting of creditors held on November 6, 2023. At these meetings, the Debtor's General Counsel, Lindsay Nicholas, provided testimony regarding the Debtor's connection to and interactions with the ILWU's Coast Longshore Division (the "CLD").[1]

Ms. Nicholas testified that the CLD is currently paying for the ILWU's legal fees and expenses associated with all litigation listed on the Debtor's Schedules (*i.e.*, 11 separate pending cases). The ICTSI litigation is the sole exception to this pattern.

Ms. Nicholas further testified that, for more than a decade, the CLD also paid the ILWU's legal and defense fees incurred in connection with the ICTSI litigation. However, on the eve of the Debtor's bankruptcy filing, the CLD stopped such payments, and that obligation moved to Debtor.

In the same vein, Ms. Nicholas testified that the CLD historically listed the contingent liability associated with the ICTSI litigation on its own LM-2 forms that it must file with the U.S. Department of Labor, with this liability again curiously being transferred to the ILWU mere months before the Debtor's bankruptcy filing.

---

[1] According to the Debtor's own website, "[t]he core of the union, historically, has been the [CLD], which established the union through its victory in the 1934 West Coast maritime strike. The Coast Longshore Division is made up of approximately 30 locals, divided among longshore workers (including, for example, container handling equipment operators and mechanics), marine clerks, and foremen." *How The Union Works*, International Longshore & Warehouse Union, *available at* https://www.ilwu.org/about/how-our-union-works/ (last visited November 9, 2023).

Ms. Nicholas further testified that she is unaware of any written or oral agreement requiring the CLD to pay these legal fees, but could not comment on whether the payment was either a loan or a gift or something else. The CLD's course of conduct in paying for the ILWU's legal fees raises questions, especially given that many millions of dollars in payments are implicated.

Debtor's counsel objected to at least one question Mr. Sharf posed to Ms. Nicholas that went to the Debtor's relationship with the CLD. Similarly, Debtor's counsel instructed Ms. Nicholas not to answer some of ICTSI's similar questions. While ICTSI recognizes that it has the right to take discovery with respect to this information in connection with the plan confirmation process, ICTSI is concerned that the Debtor will be either unwilling or unable (as discussed below) to adequately respond.

Beyond Ms. Nicholas' testimony, ICTSI understands that the Debtor's President, William E. Adams, and Vice President, Robert Olvera Jr., each also serves as Chairman and Vice Chairman, respectively, of the CLD's executive committee. ICTSI further understands that Messrs. Adams and Olvera each maintain only one email address (with a @ilwu.org domain) to conduct business on behalf of both the Debtor and the CLD, and one office space (at the ILWU headquarters in San Francisco), is shared between the Debtor and CLD. Both entities also share a single computer server.

Discerning the true nature and extent of the relationship between the Debtor and the CLD has predictably been a primary focus of ICTSI thus far in the discovery process. The various overlaps in management, operations, and potentially assets between the Debtor and the CLD, and the absence of any mention of the CLD in the Debtor's schedules of assets and liabilities or statement of financial affairs, other than three transfers made within 90 days prepetition, are anticipated to arise in connection with plan confirmation.

**B.      The Discovery Process.**

As of the time of this filing, ICTSI has served two sets of discovery requests on the Debtor. The Debtor has thus far produced some documents and answers to certain of ICTSI's first set of discovery requests, and responses and objections to others. ICTSI has kept Mr. Sharf apprised as to the status of the discovery process.

**C.  The Path Ahead.**

The Debtor is in a very challenging situation. Its principals (Messrs. Adams and Olvera) are also the principals of the CLD. Having to navigate discovery directed to the Debtor's claims at the CLD has no doubt left the Debtor and its principals in an uncomfortable position. This task is further complicated by the blurred lines between the Debtor and the CLD. ICTSI is coming to appreciate the extent of the entanglement between the Debtor and the CLD.

Against this backdrop, it may be very difficult for the Debtor to act impartially as an estate fiduciary in matters relating to the CLD. ICTSI is further concerned that this type of entanglement and overlap could extend to other divisions and entities under the broader ILWU organizational umbrella. As a further complication with respect to CLD, Debtor's counsel jointly represented both the Debtor and the CLD prepetition.[2]

ICTSI previews that this case might require (and benefit from) judicial guidance in the above areas, or an increased role of the trustee, Mr. Sharf.

**D.  Conclusion.**

ICTSI is concerned that the full nature and extent of the Debtor's assets have not been fully disclosed, and that the fiduciaries acting for the Debtor may not be suited to conduct the investigation necessary.

Dated:  November 9, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ *Ori Katz*
ORI KATZ
GIANNA SEGRETTI
KORAY ERBASI

*Attorneys for ICTSI Oregon, Inc.*

---

[2] See *Application to Employ Pachulski Stang Ziehl & Jones LLP as Counsel to the Debtor* [Docket No. 29] ("Counsel previously jointly represented the Debtor and Coast Longshore Division ("CLD"). On September 3, 2023, Counsel terminated its relationship with CLD and signed a new engagement agreement with ILWU only on September 5, 2023.").

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, I served by electronic mail a true and accurate copy of the foregoing to all counsel of record.

/s/ *Ori Katz*
ORI KATZ