SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
GIANNA SEGRETTI, Cal. Bar No. 323645
KORAY ERBASI, Cal. Bar No. 332877
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email         okatz@sheppardmullin.com
              gsegretti@sheppardmullin.com
              kerbasi@sheppardmullin.com

Attorneys for ICTSI Oregon, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No.  23-30662 HLB |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | Chapter 11 Proceeding |
| Debtor. | **DECLARATION OF AMANDA T. GAMBLIN IN SUPPORT OF ICTSI OREGON, INC.'S MOTION FOR ENTRY OF AN ORDER COMPELLING PRODUCTION OF DOCUMENTS** |
| | Requested Hearing |
| | Date:      [to be set]<br>Time:      [to be set]<br>Judge:     Hon. Hannah L. Blumenstiel<br>Place:     Zoom.Gov |

-1-

GAMBLIN DECLARATION IN SUPPORT OF ICTSI'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS.

I, Amanda T. Gamblin, hereby declare and state the following:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would testify competently hereto. I am over 18 years of age.

2. On November 17, 2023, ICTSI sent a letter to the Court raising various discovery issues. Attached as Exhibit 1, is a true and correct copy of that letter. ICTSI represented that "[a]fter meeting and conferring both via telephone conference and e-mails, the parties have been unable to reach a resolution and seek the Court's guidance."

3. One issue raised by ICTSI was that "Debtor is utilizing an inadequate search methodology, which is likely to miss many responsive documents." (Exhibit 1, p. 4) ICTSI requested that "the Court order the Debtor to expand its highly rigid approach to identifying responsive documents and to provide its discovery process log to ICTSI and the Court to ensure Debtor is fulfilling its discovery obligations." (*Id.*)

4. On November 28, 2023, Debtor responded that ICTSI "has neither proposed other Debtor custodians whose emails should be searched, explained why searching the electronic files of the Debtor's executives is insufficient, or explained why it did not comment previously on Debtor's proposed search terms. Having declined to engage in the process to this point, it should not be permitted to now come to this Court for relief on this issue." Attached hereto as Exhibit 2, is a true and correct copy of Debtor's letter.

5. Under the Court's mandatory discovery dispute resolution process, ICTSI was prohibited from filing a reply to refute Debtor's representations to the Court.

6. On December 4, 2023, in reliance on the Debtor's representations, the Court held that "ICTSI has not fulfilled its obligation to meet and confer in good faith. Instead of working with ILWU to come up with mutually acceptable search terms, it chose instead to cast aspersions and unnecessarily burden the court." (ECF Doc# 105, p. 3) The Court also found and concluded that "ICTSI has abused the court's expedited discovery procedures" and prohibited ICTSI from utilizing the court's expedited discovery procedures in the future. (*Id.*)

7. Had the Court's expedited discovery procedures allowed ICTSI to respond to Debtor's misrepresentation, it would have included the following information.

GAMBLIN DECLARATION IN SUPPORT OF ICTSI'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS

8.      On November 1, 2023, ILWU responded to ICTSI First Set of Requests for Production of Documents and First Set of Requests for Interrogatories.  A true and correct copy of each is attached as Exhibits 3 and 4, respectively.

9.      On November 2, 2023, Debtor's counsel sent ICTSI's counsel a proposal to conduct the following searches.

| Request Number | Proposed Search Terms |
|---|---|
| 5 | amend* w/15 (constitution or bylaw) |
| 10 | audit* w/15 (quarter* or books or financial) |
| 11 | Convention w/25 "financial report" |
| 13 | budget w/15 convention |
| 15 | budget w/15 convention |

Attached here as Exhibit 5 is a true and correct copy of the email.

10.     On Friday November 3, 2023, counsel for the Debtor and counsel for ICTSI met to confer on ILWU's objections.  The conferral lasted approximately 90 minutes.  During that conferral, ICTSI and Debtor's counsel discussed Debtor's proposed search terms at length.  As to each request listed by Debtor in the table above, I proposed a search methodology.

11.     Request for Production 5 requests:

> "All documents and communications dated from January 1, 2012 to the present that refer to amendments or changes to, or potential amendments or changes to, the constitutions, bylaws, or other documents of the ILWU related to union governance."

During conferral, I asked Debtor's counsel what ILWU's governing documents were.  Debtor's counsel said it was only the ILWU Constitution.  Knowing that the ILWU Constitution was amended in 2021, I suggested that they ask ILWU if it could find some related emails in their inboxes or files.  Debtor could then search for all related emails (which is only two clicks of the mouse in Microsoft Outlook).  Once it obtained those, it could produce any relevant documents and then ICTSI could suggest search terms and other custodians.  I explained that it was difficult for ICTSI to draft search terms without knowing what ILWU's governing documents are, what language ILWU uses to discuss them, and who at ILWU would be discussing such issues.  But if ILWU could produce a

GAMELLO DECLARATION IN SUPPORT OF ICTSI'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS

few relevant emails, ICTSI could see who discusses governing documents and what language they use and then could suggest custodians and search terms.

12. Request for Production No. 10, requests:

"All documents, including but not limited to communications, from January 1, 2012, to present related to audits of the ILWU's books and all quarterly audits of said books and accounts kept by the ILWU International Secretary-Treasurer."

I suggested that, in addition to the search terms, ILWU start with an audit report and search for emails to which the audit document is attached. I also suggested ILWU search for emails between "ilwu.com" and the auditor's domain. ICTSI could not suggest a search term any more refined than that because it did not know who the auditor was. I also suggested that ILWU counsel ask the Secretary-Treasurer for any emails he may have with the auditor. I suggested that, after ILWU did this preliminary searching, it could produce any responsive documents and we would offer additional search terms, if it appeared that any were needed. But it was entirely possible that the above searches would have uncovered most if not all responsive documents.

13. Request for Production No. 11 requests:

"All documents, including but not limited to communications, from January 1, 2012, to present related to statements presented by the International Secretary-Treasurer at Conventions showing the financial and general condition of the ILWU."

During conferral, I suggested that in addition to its suggested searches, ILWU start with the Secretary's presentations at the Conventions. I asked if the presentations were PowerPoint presentations or some other type and counsel for the Debtor did not know. I explained that without knowing what kind of presentations they were, or who would be discussing them, it was difficult for ICTSI to suggest search terms. I suggested that, if the Secretary-Treasurer's presentations are PowerPoint presentations, ILWU counsel ask the Secretary-Treasurer what he calls such documents and search for them. I explained, that because we do not have access to the Secretary-Treasurer, we cannot tell ILWU what the name of the document is to search for. Like with other searches, once ILWU found the presentations, they could search for any emails to which the presentation is attached, and with two clicks, find related emails. From there, I suggested that ILWU may be able to identify additional words or custodians that it might make sense to search. And in any event,

-4-

DECLARATION IN SUPPORT OF ICTSI'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS

ILWU could produce relevant documents after performing such searches and then ICTSI would suggest additional search terms and custodians, if necessary.

14. I made similar suggestions with respect to each RFP and suggested that ILWU also search for emails and documents in response to Requests for Production Nos. 13 and 14. Jennifer Nassiri suggested that ILWU search Leal Sundet's email as well as the other custodians, and Debtor's counsel responded that it would not do so because, even though Mr. Sundet's email may reside on ILWU's email server, Mr. Sundet had been an employee of the Coast Longshore Division. My contemporaneous notes regarding the conferral meeting are as follows in red:

| Request Number | Proposed Search Terms |
|---|---|
| 5 | amend* w/15 (constitution or bylaw)  Are these the only governing documents?  What documents do they consider to be governance documents?  Can they identify when they last made a change or amendment to one of these documents?  Can you ask for some emails about that change and then run down all related emails and provide those to us.  Once we see what language they use to discuss changes we can come up with search terms. |
| 10 | audit* w/15 (quarter* or books or financial).  Again, it might be better to start with the audit documents and search for the attachments.  Also search for the auditors' email address domain.  If you find prior versions of audits, search for those attachments too.  Also, ask the Secretary Treasurer for his emails.  Give that all to us and we can give you search terms from there, if necessary. |
| 11 and 12? | Convention w/25 "financial report"  Again, start with the Secretary's presentations at conventions.  Are they ppts?  Other?  Search for those attachments and get the related emails.  Identify further searches, emails, servers, etc from the results.  Give those to us.  We can create search terms from there. |
| 13 | budget w/15 convention – Same.  Start with the budgets. |
| 14 | Financial reports? |
| 15 | budget w/15 convention |

15. ILWU agreed to consider our search proposal. I agreed to follow up with an email documenting our conversation, which I did the same day. A true and correct copy of that email is attached as Exhibit 6. With respect to search parameters, I stated:

"Search Terms for RFP 5, 10, 11 (and 12 ?), 13, 14 (?), and 15. We proposed several ways you might search for responsive documents. Using RFP 5 as an example, you could ask your client the last time the Constitution was amended and ask them to provide you emails about it. You could simultaneously search for emails to which the governing document is attached (or two [sic] which any amendments/redlines are attached) and then search for related emails. You could provide those documents to us from

which we could provide search terms and additional custodians. But we cannot provide search terms in a vacuum. Your client is the one with the background, knowledge, understanding, and responsibility to apply a thoughtful approach to finding responsive documents. I understood that your intention is to only search the terms you identified in your table and only for the custodians you identified (William Adams, Robert Olvera, Jr., Paul Sam Kreutz, Edwin Ferris, or Wesley Furtado (deceased)). I also understood that you would consider our approach or to expanding your approach to ensure that ILWU fulfills its obligation to identify and produce responsive documents."

Exhibit 6, p. 5.

16.     In response to my November 3, 2023 confirming email the ILWU responded "Amanda – your understanding is wrong. We will respond in full after we have had an opportunity to discuss with our client." Exhibit 6, p. 4.

17.     On November 8, 2023, Debtor's counsel responded that would not consider conducting the searches we suggested:

> "**<u>Search Terms</u>**: The Debtor will search the identified custodians using the previously identified search terms which constitute a "thoughtful approach to finding responsive document." We believe your suggestion regarding search terms for RFP No. 5 will be covered by our proposed search term: "amend w/15 (constitution or bylaw)."

A true and correct copy of Debtor's letter is attached as Exhibit 7. Debtor did not address any of the other search terms we discussed during the parties' conferral.

18.     On November 21, 2023, ICTSI served a subpoena on CLD containing many of the same requests because ILWU had claimed that it did not have possession or control over CLD documents. CLD responded on December 5, 2023, claiming that ICTSI should obtain many of the documents from Debtor.

19.     Attached hereto as Exhibit 8 is a true and correct copy of ICTSI's email to Debtor further conferring.

20.     Attached hereto as Exhibit 9 is a true and correct copy of Debtor's December 11, 2023 letter in response.

21.     As documents were being produced by ILWU, we were beginning to see who was involved in conversations about relevant topics. One of these custodians was Russ Bargmann who appeared to be a researcher that compiled various historical and financial analyses for ILWU's

-6-

officer. However, because ILWU only ran searches of the officers' email boxes (the five custodians), it did not pick up the attachments sent by Mr. Bargmann. ICTSI requested that he be added as a custodian, among other things. A true and correct copy of that request is attached as Exhibit 10.

22. A true and correct copy of Debtor's December 19, 2023 conferral letter is attached as Exhibit 11.

23. A true and correct copy of ICTSI's December 21, 2023 conferral letter is attached as Exhibit 12.

24. A true and correct copy of ICTSI December 27, 2023 conferral email is attached as Exhibit 13.

25. A true and correct copy of Debtor's December 28, 2023 conferral letter is attached as Exhibit 14.

26. ICTSI's Second, Third, and Fourth Requests for Production are attached as Exhibits 15, 16, and 17, respectively.

27. ILWU's produced documents on the following schedule:

11/3/23: DEBTOR_000001-001496, 224 documents = 1,496 pgs

11/10/23: DEBTOR_002266-004948, 328 documents = 2,683 pgs

11/22/23: DEBTOR_004949-006624, 36 documents = 1,676 pgs

11/28/23: DEBTOR_006625-006960, 150 documents = 336 pgs

11/29/23: DEBTOR_006961-007965, 82 documents = 1,005 pgs

12/4/23: DEBTOR_007966-010725, 46 documents = 2,760 pgs

12/6/23: DEBTOR_010726-015345, 650 documents = 4,620 pgs

12/8/23: DEBTOR_015346-107530, 72 documents = 2,185 pgs

12/11/23: DEBTOR_001497-002265, 71 documents = 769 pgs

12/19/23: DEBTOR_017531-021834, 328 documents = 4,304 pgs

12/21/23: DEBTOR_021835-036619, 5,106 documents = 14,785 pgs

TOTAL: 7,893 documents = 36,619 pgs

28. ILWU's production was due on the following schedule:

-7-

1    2023-10-19 ICTSI 1st RFP to ILWU served

2    2023-11-01 ILWU Resp to ICTSI 1st RFP rec'd

3         Begin production: 11/2

4         Complete production: 11/9

5    2023-11-08 ICTSI 2nd RFP to ILWU served

6    2023-11-22 ILWU Resp to ICTSI 2nd RFP rec'd

7         Begin production: 11/22

8         Complete production: 11/29

9    2023-11-28 ICTSI 3rd RFP to ILWU served

10   2023-12-06 ILWU Resp to ICTSI 3rd RFP rec'd

11        Begin production: 12/12

12        Complete production: 12/19

13   2023-12-01 ICTSI 4th RFP to ILWU served

14   2023-12-15 ILWU Resp to ICTSI 4tt RFP rec'd

15        Begin production: 12/15

16        Complete production: 12/22

17       29.      From our review of the over 5,000 documents produced on the last day of fact

18 discovery, it appears that few of them are responsive to ICTSI's Fourth Request for Production.

19 ICTSI's discovery vendor verified that some of the documents had been loaded two days prior, but

20 not delivered.

21       30.      Debtors' counsel conceded in conferral on December 27, 2023 that documents

22 showing the relationships between the various entities and divisions is relevant to plan confirmation.

23       I declare under penalty of perjury under the laws of the United States of America that the

24 foregoing is true and correct to the best of my personal knowledge.

25 Dated: January 2, 2024

26

27                      By _____

28                                   Amanda T. Gamblin

Case: 23-30662    Doc# 137    Filed: 01/02/24    Entered: 01/02/24 11:58:42    Page 135 of
148

**Exhibit 1**

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

Ori Katz
415.774.3238 direct
OKatz@sheppardmullin.com

November 17, 2023

**VIA E-MAIL (dan_sondheim@canb.uscourts.gov)**

The Honorable Hannah L. Blumenstiel
United States Bankruptcy Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re:　**In re International Longshore & Warehouse Union ("ILWU"), Case No. 23-30662 (HLB) — Discovery Dispute re Contested Plan Confirmation**

Dear Judge Blumenstiel:

On October 19, 2023, ICTSI propounded its first set of discovery requests. The Debtor responded and objected on November 1, 2023. After meeting and conferring both via telephone conference and e-mails, the parties have been unable to reach a resolution and seek the Court's guidance.

**1.　Debtor refuses to produce documents related to  CLD or other third-party obligations to pay ILWU's attorneys' fees and costs.** (*RFP Nos. 16, 18 & 31*)

The Debtor contends that it filed for bankruptcy because it cannot afford to pay attorneys' fees for the ICTSI Litigation.[1] Decl. of William E. Adams ISO First Day Mots. [Dkt. 9] ("First Day Decl.") at 5-7. But at the section 341(a) meeting of creditors, the Debtor's General Counsel admitted that its Coast Longshore Division ("CLD"), which Debtor claims to be a separate entity, paid all of the attorneys' fees and costs for the ICTSI Litigation through September 30, 2023. Understanding why CLD did so or whether it may be obligated to continue doing so is relevant to whether the Debtor (a) has scheduled all of its assets and liabilities and (b) can satisfy the best interests test.

Also, the Debtor's agreements with any other party—*e.g.*, stakeholders in the ICTSI Litigation or an insurer—address whether the Debtor became newly obligated to incur fees and costs. Thus, this Court should order the Debtor to produce documents responsive to RFP Nos. 16, 18, and 31.

**2.　The Debtor objects to producing CLD documents residing on ILWU's servers, disputing its possession or control of them.** (*Gen. Obj. Nos. 7, 12 & 14; RFP Nos. 3, 9 & 28*)

The Debtor and the CLD, which Debtor publicly describes as the "core of the union historically," share computer servers, email systems, and offices. For example, ILWU's President, William "Willie" Adams, is also the Chair of the CLD. He performs both roles from one email address (william.adams@ilwu.org) and one office. Tellingly, in the ICTSI Litigation, ICTSI obtained CLD-related documents by propounding discovery only on ILWU (CLD not being a named party), including CLD meetings minutes, letters on CLD letterhead, CLD bylaws, and emails authored by people using a CLD signature (but @ilwu.org addresses). ILWU's attorney engagement letters

---

[1]　The term "ICTSI Litigation" means *ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (D. Or.), and any related actions, appeals, or other proceedings.

Gamblin Dec., Exhibit 1
Page 1 of 5

confirm CLD's exclusive control over defendants' litigation strategies. DEBTOR_002267; 002281.

Debtor now refuses to produce CLD documents, disputing ILWU's possession or custody of them. Under Fed. R. Civ. P. 34, as incorporated under Fed. R. Bankr. P. 7034, ILWU must produce documents in its "possession, custody, or control." Because the phrase is disjunctive, whether ILWU controls the document is irrelevant if the document is in ILWU's possession or custody. And because CLD's documents are in the Debtor's actual possession, the Debtor must produce them if they are responsive. *In re Bankers Trust Company*, 32 F.3d 465, 470 (6th Cir. 1995) (holding that "legal ownership of the document is not determinative" where a party has actual possession of documents). Not only are the Debtor's past productions of CLD documents indicative of either their intertwined existence or Debtor's control, but under Rule 34, where a party has possession, control is irrelevant.

**3. Debtor refuses to produce other CLD documents, claiming they are not in the Debtor's possession, custody or control.** *(Gen. Obj. 14; RFP Nos. 2, 7, 9, 15, 21, 24, 26 & 28)*

Based on public and sworn representations regarding the unified entity that is the "ILWU," in its discovery requests ICTSI defined "ILWU" to include its various divisions and affiliates. The Debtor objected because "(1) such entities and persons are not parties to this Contested Matter, (2) such entities are not under the common control of the Debtor, and (3) such files may not be considered to be within the possession, custody, or control of the Debtor." All three objections fail.[2]

To begin, it is irrelevant if CLD is a party to this bankruptcy proceeding. Under Rule 34, the Debtor must produce relevant documents in its actual possession or custody, or if ILWU controls them. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). As discussed above, the requested CLD documents are within the Debtor's possession because the Debtor previously produced them in the ICTSI Litigation. With respect to "control," the Ninth Circuit applies the "legal right to control" test. *Id.* That test is necessarily satisfied because Debtor and CLD are inextricably intertwined.[3] For purposes of California law, the Debtor registered itself as a "charity" that is an unincorporated association, leaving its legal substance fuzzy. That is, it appears that Debtor and CLD are unincorporated organizations governed not by law, but by their own governance and whims.

Both the ILWU Constitution and the CLD Bylaws unmistakably conflate the two entities. By way of example, Debtor's Constitution compels that its "Titled Officers … shall not hold any other salaried official positions or salaried office in any other organization." Yet, the ILWU's President

---

[2] With respect to RFP 21 and 24, ICTSI offered to remove the offending language that assumed common control from the RFPs, but ILWU has persisted in its objections.

[3] That is, ILWU controls the documents without regard for whether the standard is strictly or broadly construed. *E.g.*, *M. G. v. Bodum USA, Inc.*, No. 19-CV-01069-JCS, 2020 WL 1667410, at *3 (N.D. Cal. Apr. 3, 2020); *but see Choice-Intersil Microsystems, Inc. v. Agere Sys., Inc.*, 224 F.R.D. 471 (N.D. Cal. 2004); *QC Labs v. Green Leaf Lab, LLC*, No. 818CV01451JVSJDEX, 2019 WL 6797250, at *7 (C.D. Cal. July 19, 2019). Note that in *United States S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450 (9th Circuit 1989) the Ninth Circuit enforced the Department of Labor's subpoena duces tecum for local unions' financial records but refused to enforce its request for election records because the DOL had not shown that the International "controlled" the local unions' election records. In this case, however, ICTSI is seeking records from ILWU divisions, not locals.

and Vice President are simultaneously Chair and Vice Chair of the CLD. It follows, then, that the CLD is not "any other organization." Furthermore, the CLD bylaws prohibit the CLD from holding its caucus meeting—the CLD's primary governance meeting—until the Debtor's President appoints the time and place. If CLD were a separate entity, it could not share officers with Debtor and would not be subject to the Debtor's President's authority for its governance.

Further, the Debtor and CLD trade liabilities at their convenience. Labor organizations are required to annually report their financial condition, including contingent liabilities, to the U.S. Department of Labor in what are called LM-2s, which are publicly available.[4] In its LM-2s, CLD has historically listed National Labor Relation Board ("NLRB") charges and private lawsuits filed against *the Debtor* as *CLD's* contingent liabilities and also paid millions of dollars to defend and resolve these charges and claims. Consistent with that practice, ILWU's LM-2 for CLD (DOL #541-805) repeatedly listed the contingent liability from ICTSI's claim and paid more than $9.5 million in attorneys' fees and costs related to the ICTSI Litigation from 2018 through 2022. In contrast, ILWU failed to list the contingent liability and associated attorney fees and costs on its LM-2s for its National Headquarters (DOL #000-202)—which appears to correspond to the Debtor—until its 2022 report filed in March 2023, when the contingent liability was newly listed (to the exclusion of any expended attorney fees). And yet, when the Subchapter V Trustee inquired at the Debtor's 341(a) meeting of creditors about CLD's payment of ILWU's attorney's fees for a decade, the Debtor's General Counsel disputed that those payments were a contractual obligation, a loan, or a gift – it was apparently some other thing for which there is no word.

Furthermore, in the ICTSI litigation, ILWU regularly overlapped itself with the CLD. For example:

- Before ALJ Schmidt in 2012 (a) evidence showed that CLD officer Leal Sundet used ILWU letterhead; and (b) ILWU's attorney denied that it would argue "that the General Counsel [of the NLRB] has the wrong Respondent because they don't name the [CLD]."[5]
- Before ALJ Wedekind in 2013, ILWU's attorney represented that it would not "argue that the Coast Committee is not … part of the International or that they're different."[6]
- ILWU's then-President, Mr. McEllrath testified that his job was "sit[ting] … as a chair of the [CLD] Coast Committee" and overseeing other divisions, of which "there's a lot."

Because CLD and ILWU are inextricably intertwined, ILWU possesses and controls documents that it purports belong to CLD. Certainly, that control is great enough that ILWU previously produced CLD documents. For these reasons, ILWU's objection should be overruled.

---

[4]    *See* U.S. Dep't of Labor, Office of Labor-Management Standards (OLMS) – LM Reports and Constitutions and Bylaws, https://olmsapps.dol.gov/olpdr/

[5]    Hr'g Tr. (Aug. 29, 2012) at 2055:7-56:2, *In re: ILWU*, NLRB Nos. 19-CC-082533 and 19-CC-082744. Sundet also agreed that the CLD is "part of the International period," characterized it as "an appendage of the International," and, despite claiming that it is a separate entity, argued that it is simply "a division of the International … like the warehouse division is a division of the International and other divisions." Hr'g Tr. (Aug. 23, 2012) at 1536:25-1538:14. Sundet also agreed that the "president of the International" generally "can … tell [elected officials of the CLD] what to do." *Id.* at 1539:1540:12.

[6]    Hr'g Tr. (Dec. 13, 2013) at 2106:11-2107:16, *In re: ILWU*, NLRB No. 19-CC-100903.

**4. The Debtor is utilizing an inadequate search methodology, which is likely to miss many responsive documents.** (RFP Nos. 5, 10, 11, 12, 13, 14, 15, 22, 23, 29, 30 & 34)

To identify documents and communications responsive to ICTSI's requests, Debtor intends to run only five searches related only to five requests—and against only five ILWU custodians (William Adams, Robert Olvera, Jr., Paul Sam Kreutz, Edwin Ferris, and Wesley Furtado (deceased)).[7] Debtor's approach is not intended to, nor will it, achieve compliance with its discovery obligations.

First, in a small organization with a single email server, limiting email searches to specific custodians is unnecessary. Second, Debtor's obligation is to craft search terms intended to reach the types of documents the opposing party seeks. For example, during conferral Debtor identified the ILWU Constitution, resolutions, and policies as governance documents, yet ILWU intends to only search for "amend* w15 (constitution or bylaw)" in response to RFP 5, which requests governance documents, their amendments, and related communications. Third, search terms may not be the best place to start. For example, in response to RFP 10 requesting documents and communications related to audited financial statements, ILWU could start with the audits themselves and search for emails to which the audits are attached, then search for related emails, and seeing the results may identify relevant search terms. Fourth, identifying search terms must be a process. For example, in response to RFP 11, requesting ". . . communications related to statements presented by the International Secretary-Treasurer at Conventions showing the financial and general condition of the ILWU." Debtor intends to search "Convention" within 25 words of "financial report." However, the word "convention" may not be capitalized in emails and parties may not use the words "financial report" when discussing the Secretary-Treasurer's presentation. If such searches return few results, they must be broadened. If search terms return irrelevant documents, they must be refined. And based on the responsive documents identified, further searches may be warranted.

Further, ILWU refuses to search for any communications responsive to RFPs 12, 14, 15, 22, 23, 29, 30, or 34. ICTSI requests that the Court order the Debtor to expand its highly rigid approach to identifying responsive documents and to provide its discovery process log to ICTSI and the Court to ensure Debtor is fulfilling its discovery obligations.

**5. The Debtor omits basic information known to it.** (Interrogatory Nos. 2, 5, and 6)

ICTSI requested that the Debtor identify the "officers, directors, and any other senior management or leadership" of the organizations that Debtor, on its Form 990 tax returns, attests are its related organizations: its political action fund ("PAF") (Rog 5), its title-holding company, Pacific Longshoremen's Memorial Association ("PLMA") (Rog 6), and CLD (Rog 2). ICTSI also requested similar information for the various other ILWU divisions (Rog 2). ILWU objected to Interrogatories 5 and 6 "on the grounds that any response to the information this Interrogatory seeks cannot be verified by the Debtor." But that is false. Debtor told the IRS that PAF, PLMA, and CLD are "related organizations," attesting to common control. *See* IRS, Instr. for Form 990 at 71 (2022) (definition). And Debtor's President, Willie Adams, is also an officer of PLMA, CLD, and (upon information and belief) PAF, so either knows or can find the requested information. ICTSI's requests for this information are critical in discerning the Debtor's true relationship with

---

[7] Debtor initially invited ICTSI to provide additional search terms and offer custodians. However, when ICTSI proposed additional custodians, e.g., former CLD officer Leal Sundet, Debtor balked.

these entities, and whether that relationship could give rise to additional estate assets.

**6. The Debtor objects to producing documents in the possession of its agents, representatives, accountants, and attorneys.** (Gen. Obj. No. 12)

ILWU refuses to produce documents in the possession of its agents, representative, accountants, or attorney because "(1) such entities or person are not parties to this Contested Matter, and (2) such files may not be considered to be within the possession, custody, or control of the Debtor." As discussed above, whether such persons are parties to this matter is irrelevant. And under basic principles of agency law, Debtor has a right to obtain its documents from its agents.

**7. The Debtor refuses to produce relevant documents, instead referring ICTSI to its audited financial statements.** (RFP Nos. 22, 23, 28, 29 & 30)

ICTSI seeks documents regarding the business or financial relationship between Debtor and its PAF (RFP 22) and PLMA (RFP 23) as well as regarding transfers of assets (RFPs 28-30). Debtor objects, directing ICTSI instead to its audited financial statements. But those statements disclaim conformance to GAAP in that they do not "consolidat[e] the financial statements of related but separate non-for-profit organizations in which the Union has both control and financial interest[.]" *See, e.g.*, DEBTOR_000461. Plus, ICTSI contends that ILWU has purposefully undercapitalized the Debtor entity and blurred the lines with affiliates. ICTSI is entitled to related discovery, including as it relates to transfers of real estate, assets, and the flow of money between Debtor, its affiliates, and other third parties, all of which are critical to whether the Plan is confirmable.

**8. Debtor objects to producing documents relevant to the "proceeding against [it] in the event the automatic stay is lifted."** (Gen. Obj. No. 9; RFP Nos. 16, 17, 18, 31, 32 & 33)

While the Debtor objects to producing documents that could be used in other litigation, relevance there does not foreclose its relevance here; a document can be relevant to both. To the extent the Debtor obliquely invokes the pending-proceeding rule, that rule is limited to Rule 2004 examinations. *See, e.g.*, *Differential Eng'g Inc. v. Geo-Logic Assocs. (In re Metal Recovery Sols., Inc.)*, No. NV-22-1081-BFL, 2023 Bankr. LEXIS 119, at *25 (B.A.P. 9th Cir. Jan. 17, 2023). ICTSI seeks discovery in the context of a contested matter, not under Rule 2004. In addition, the Debtor's objection is so vague as to encompass most of the information that ICTSI seeks.

Respectfully,

Ori Katz
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:     Jennifer Nassiri, Esq.
        Debra Grassgreen, Esq.
        Jason Rosell, Esq.

**Exhibit 2**



One Sansome Street, 34th Floor, Suite 3430
San Francisco, California 94104
**Tel. 415.263.7000**
Fax: 415.263.7010

November 28, 2023

Jason H. Rosell
415.217.5118
jrosell@pszjlaw.com

**VIA EMAIL (dan_sondheim@canb.uscourts.gov)**

The Honorable Hannah L. Blumenstiel
United States Bankruptcy Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     In re International Longshore & Warehouse Union, Case No. 23-30662
(HLB) – Response to ICTSI's Discovery Letter Dated November 17, 2023[1]

Dear Judge Blumenstiel:

Since October, the Debtor has responded, or is in the process of timely responding, to the discovery propounded by ICTSI.  ICTSI's discovery demands include three sets of requests for production ("RFPs") containing 70 individual requests – pursuant to which the Debtor has, to date, produced over 1,100 documents and is continuing to produce on a rolling basis – and two sets of interrogatories containing twelve separate interrogatories, to which the Debtor provided fulsome responses.  The Debtor has also worked diligently to schedule the depositions of five of its representatives as requested by ICTSI.  In addition to the discovery propounded on the Debtor in October, on November 21st, ICTSI served subpoenas for documents upon two entities that are associated with the Debtor, the Pacific Longshoremen's Memorial Association ("PLMA") and the ILWU Coast Longshore Division ("CLD").  The  PLMA subpoena contains 22 separate requests, and the CLD subpoena contains 52 separate requests, a significant portion of which requests cover the same documents that were requested from the Debtor.  It is the provision of information related to the entities associated with the Debtor which forms the bulk of ICTSI's purported discovery complaints against the Debtor set forth in its discovery letter.

ICTSI did not, however, sue the CLD or the PLMA in the underlying ICTSI Litigation. ICTSI, failing to bring suit against these entities within the applicable statute of limitations, now apparently seeks to remedy its failure in the Debtor's bankruptcy case.  ICTSI appears to be using its discovery letter as a platform to preview its argument to the Court that it should somehow be entitled to reach the assets of certain entities associated with the Debtor based on a relationship theory akin to (the Debtor surmises) substantive consolidation or alter-ego.  While the assertion of such a theory may be appropriate at plan confirmation (as would be the Debtor's response thereto), any attempt by ICTSI to set the stage with respect to its litigation position should not be in the context of its alleged discovery dispute.  Moreover, the numerous factual allegations in the

---

[1]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the ICTSI letter.

discovery letter with respect to the associated entities demonstrate to a large extent that the Debtor has provided, or ICTSI otherwise has access to, the very documents ICTSI now asserts that the Debtor has failed to provide. Contrary to ICTSI's assertions, the CLD, the PLMA, and the various purported "divisions and affiliates" referred to by ICTSI in its discovery requests are, in fact, separate non-debtor legal entities established more than 20 years ago (and, in the case of the PLMA, over 65 years ago). These entities are not subsidiaries of the Debtor or otherwise controlled by the Debtor. For example, although the CLD and the Debtor share certain office space and IT infrastructure, the CLD has its own governing body, its own employees, its own general counsel, its own bank accounts, its own contractual relationship with local unions, its own source of revenue and, most relevant to the instant discovery dispute, its own bankruptcy counsel.

The CLD and the PLMA, through their separate counsel, are the appropriate parties to provide the discovery responses directed or related to them, and the Debtor has indicated as such to ICTSI. Indeed, ICTSI has acknowledged that this is the appropriate avenue by serving discovery requests directly on these entities. Notwithstanding, the Debtor will facilitate such discovery directed to or related to these associated entities. Contrary to the assertions by ICTSI in its letter, the Debtor is not seeking to stymie ICTSI's reasonable and appropriate discovery demands and has worked, and will continue to work, diligently to provide ICTSI the discovery to which it is entitled in a cooperative and timely manner.

1. **Documents Responsive to RFP Nos. 16, 18 & 31 Regarding the Payment of Attorneys' Fees and Costs Related to the ICTSI Litigation Have Been and Will Be Produced and Disclosed**

*As its first point (ICTSI Letter, p. 1)*, ICTSI contends that the Debtor has refused to produce documents related to the CLD or other third-party obligations to pay ILWU's attorneys' fees and costs (RFP Nos. 16, 18 & 31). This is not the case. The documents requested by these RFPs have either already been provided or disclosed to ICTSI, or will be produced shortly in response to ICTSI's more targeted second set of RFPs.

Specifically, the Debtor has produced the relevant attorney engagement agreements. *See* DEBTOR_002266 – DEBTOR_002283. In addition, the *Declaration of John C. Rake in Support of the Employment of Larkins Vacura Kayser LLP as Professional Utilized in the Ordinary Course of Business* [Docket No. 101] discloses and describes the termination of the engagement agreement pursuant to which the CLD previously paid the Debtor's legal fees in connection with the ICTSI Litigation. Further, the Debtor has agreed to produce documents in response to the following requests contained in the ICTSI's second set of RFPs, which production is in process:

- "insurance and indemnity policies purchased, held or obtained by ILWU from January 1, 2012 to the present . . ." RFP No. 36.

- Documents and communications: "between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding the Coast Longshore Division's payment of attorneys' fees and expenses in connection with the ICTSI Litigation . . ." RFP No. 43.

- Documents and communications "between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding the Coast Longshore Division's payment of attorneys' fees, or cessation thereof, for the ICTSI Litigation." RFP No. 45.

- Documents "including communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division, regarding whether ILWU or any ILWU affiliated division or entity would have sufficient assets to pay fees, costs, or liability in the ICTSI Litigation that are dated from January 1, 2012 through the present." RFP No. 49.

The Debtor has therefore, consistent with the requirements of FRCP 26(b)(1), provided – or is in the process of providing – the information that ICTSI seeks with respect to the payment of fees in connection with the ICTSI Litigation.

### 2. Production of the CLD Documents Will Come From CLD Via its Counsel; the Debtor Will Work Cooperatively to Facilitate the Flow of Information

*As its second and third points (ICTSI Letter, pp. 1-3)*, ICTSI contends that the Debtor has objected to producing certain CLD documents (RFP Nos. 2, 3, 7, 9 15, 21, 24, 26 & 28; Gen. Obj. Nos. 7, 12 & 14). As noted above, ICTSI seeks various documents from the CLD, a separate legal entity from the Debtor with its own governing body, its own employees, its own general counsel, its own bank accounts and sources of revenue, and its own bankruptcy counsel. ICTSI has served a subpoena for documents directly on the CLD containing 52 separate document requests (a material portion of which are duplicative of those directed to the Debtor). ICTSI will thus receive the documents it seeks from the CLD, after the CLD's attorney has reviewed them for privilege and made determinations regarding confidentiality. As a practical matter, ICTSI's discovery requests to the CLD should address this issue as it will put the documents that ICTSI seeks in ICTSI's hands directly from the appropriate source. However, counsel for the Debtor will work cooperatively with counsel for the CLD and ICTSI to facilitate the flow of information to ICTSI.

### 3. ICTSI Refused to Engage With the Debtor Regarding the Formulation of Search Terms and Custodians; If ICTSI Has a Specific Proposal, it Should be Provided to the Debtor

*As its fourth point (ICTSI Letter, p. 4)*, ICTSI contends that the Debtor is utilizing an inadequate search methodology (RFP Nos. 5, 10-15, 22, 23, 29, 30 & 34). What ICTSI fails to disclose, however, is that it failed to appropriately engage in a process of selecting custodians and search terms. If ICTSI believed the Debtor's custodians and search terms were not likely to result in a production of sufficient responsive documents, it should have proposed additional custodians and specific search terms. It did not and, therefore, it is improper for ICTSI to now cry "foul" to this Court.

The Debtor shared both its search terms and proposed custodians shortly after it received ICTSI's first set of document requests. Specifically, with respect to search terms, on November 2, the Debtor shared its search terms with ICTSI, expecting that ICTSI would provide comments and engage in what is commonly an iterative and collaborative process to arrive at mutually agreeable terms. ICTSI declined to participate in that process. At around the same time, the Debtor informed

ICTSI that it intended to search the email files of the individuals who were the Debtor's executives during the relevant period and never received specific feedback from ICTSI as to other potential custodians. The Debtor conducted its searches of those executives' emails using the proposed search terms and has produced and is producing responsive documents on a rolling basis.

ICTSI now seeks this Court's intervention regarding both custodians and search terms that were used to locate responsive documents, but it has neither proposed other Debtor custodians whose emails should be searched, explained why searching the electronic files of the Debtor's executives is insufficient, or explained why it did not comment previously on the Debtor's proposed search terms.[2] Having declined to engage in the process to this point, it should not be permitted to now come to this Court for relief on this issue. Notwithstanding, if ICTSI has a specific proposal in this regard, it should share its proposal with the Debtor and the Debtor will work with ICTSI to respond.

**4.**     **The Information Requested by ICTSI With Respect to the Associated Entities' Leadership is Publicly Available; However, the Debtor Will Supplement Its Responses to Interrogatory Nos. 2, 5, and 6**

*As its fifth point (ICTSI Letter, pp. 4-5)*, ICTSI contends that the Debtor has not provided information with respect to its associated entities' leadership (Interrogatory Nos. 2, 5 & 6). As evidenced by the information set forth in the letter, ICTSI appears to have the very information it claims it lacks. In fact, the information ICTSI seeks is publicly available information. In addition, such information is appropriately sought directly from these separate legal entities with separate counsel. Notwithstanding, in the spirit of cooperation and so as to not burden the Court, the Debtor will supplement its responses to Interrogatory Nos. 2, 5, and 6 to provide this information.

**5.**     **The Debtor Will Produce the Requested Documents in the Possession of Its Accountants and Attorneys**

*As its sixth point (ICTSI Letter, p. 5)*, ICTSI requests that the Debtor agree to produce the requested documents that are in the possession of its accountants and attorneys. The Debtor agrees that it will facilitate and produce these requested documents.

**6.**     **The Debtor Has Provided Sufficient Financial Information in Response to RFP Nos. 22, 23, 28, 29 & 30**

*As its seventh point (ICTSI Letter, p. 5)*, ICTSI contends that the Debtor refuses to produce certain financial information, asserting that the provision of audited financial statements is insufficient (RFP Nos. 22, 23, 28, 29 & 30).

Specifically, RFP Nos. 22 and 23, seek "all documents, including but not limited to the business or financial relationship between or among the ILWU and the PAF (RFP No. 22) or the PLMA (RFP No. 23). RFP No. 28 is particularly broad and seeks: "[a]ll documents from January

---

[2]     ICTSI contends that the Debtor would not search the files of former officer of CLD, Leal Sundet. But Mr. Sundet, a former CLD officer, is not a representative of the Debtor, and is therefore not an appropriate custodian.

1, 2012 to the present regarding the transfer of any real property or other assets by or among the ILWU National Headquarters, the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, or any organization under the common control of any part of the ILWU. RFP Nos. 29 and 30 seek documents and communications "regarding the transfer of any real property or other assets, to, from or between the ILWU and the" PAF (RFP No. 29) and the PLMA (RFP No. 30).

ICTSI asserts that it is entitled to discovery relating to the transfer of "real estate, assets, and the flow of money between the Debtor, its affiliates, and other third parties, all of which are critical to whether the Plan is confirmable." However, it has not explained why the Debtor's audited financial statements are not sufficient to provide this information. Similarly, although ICTSI contends that "ILWU has purposefully undercapitalized the Debtor entity and blurred the lines with affiliates," it has failed to point to a single troubling transaction or transfer, notwithstanding the availability of over twenty years of LM-2s for both the Debtor and the CLD, which show the assets, liabilities, income, and expenses for each entity.

The Court has limited the discovery period to September 30, 2016 through the Petition Date [Dkt. No. 97]. To date, the Debtor has produced the Debtor's audited financial statements and LM-2s, since September 30, 2016, to ICTSI. These document are sufficient to identify any material non-ordinary course transactions and should be sufficiently responsive to ICTSI's requests. Moreover, the Debtor confirms that there have been no transfers of real property since 2012. If ICTSI identifies specific transactions for which it seeks additional information, ICTSI should provide any such specific request to the Debtor.

**7.** **The Debtor Has Not Withheld Documents Relating to the Lifting of the Automatic Stay (General Objection No. 9)**

*As its eighth and final point (ICTSI Letter, p. 5)*, ICTSI asserts that the Debtor's objection to producing documents relevant to the "proceeding against [i]t in the event the automatic stay is lifted." (Gen. Obj. No. 9; RFP Nos. 16, 17, 18, 31, 32 & 33). The Debtor has not withheld documents on the basis of this objection.

Respectfully,

*/s/ Jason H. Rosell*
Jason H. Rosell

cc: Debra Grassgreen, Esq.
Ori Katz, Esq.
Jennifer Nassiri, Esq.

**Exhibit 3**

PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
jrosell@pszjlaw.com

*Counsel to the Debtor*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL LONGSHORE<br>AND WAREHOUSE UNION,<br><br>          Debtor. | Case No. 23-30662 (HLB)<br><br>Chapter 11<br><br>**DEBTOR'S RESPONSES AND OBJECTIONS TO ICTSI OREGON, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO INTERNATIONAL LONGSHORE AND WAREHOUSE UNION** |

PROPOUNDING PARTY: ICTSI OREGON, INC.

RESPONDING PARTY: DEBTOR

SET NO.: ONE

     Debtor International Longshore and Warehouse Union (the "Debtor"), by and through its undersigned counsel, hereby responds (the "Response") to the *First Set of Requests for Production of Documents to International Longshore and Warehouse Union* (the "Requests for Production") of ICTSI Oregon, Inc. ("ICTSI") as follows:

### PRELIMINARY STATEMENT

     The Debtor has not completed its investigation, discovery, or preparation for this Contested Matter.[1]   Accordingly, this Response is based only upon such information and documents as are

---

[1] "Contested Matter" means the confirmation of the *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 18] (the "Plan") and the related *Order Setting Schedule in Connection With Plan Confirmation Process and Related Deadlines* [Docket No. 59].

DOCS_NY:48831

presently available and specifically known to the Debtor. This Response is provided without prejudice to the Debtor's rights: (a) to produce documents, evidence of any subsequently discovered fact or facts, or analyses not yet obtained or completed; (b) to otherwise assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed; and (c) to amend or withdraw any responses accordingly.

The Debtor makes no implied admissions regarding the contents of the responses below. That the Debtor has responded or objected to a Request for Production in whole or in part should not be taken as an admission by the Debtor as to the existence of any facts stated or assumed by the Requests for Production, that such response or objection constitutes evidence admissible against the Debtor, or that the Debtor agrees to the relevance or admissibility of any documents or information produced in response to any Requests for Production.

## **GENERAL OBJECTIONS**

The Debtor's general objections to the Requests for Production (the "General Objections") are set forth below. To avoid the necessity of restating in full each objection, these General Objections, as well as the limitations and restrictions noted in the Preliminary Statement above, are incorporated by reference into each of the Debtor's responses to the Requests for Production as if fully set forth therein.

The assertion of additional specific objections to the Requests for Production shall not be construed as waiving any general objection. Furthermore, neither the General Objections nor the assertion of additional specific objections to any Request shall waive the Debtor's right to challenge the relevance, materiality, and admissibility of the information provided or to object to the use of such information in any subsequent proceeding or hearing in this Contested Matter.

1.      The Debtor objects to each instruction, definition, and document request to the extent that it purports to impose any requirements on the Debtor beyond or inconsistent with the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, the Federal Rules of Bankruptcy Procedures, the Local Bankruptcy Rules of the Northern District of California, or any applicable rules, statutes, or common law. The Debtor is responding to the Requests for Production based on information maintained in the ordinary course of business and to the extent required by the

Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, the Federal Rules of Bankruptcy, the Local Bankruptcy Rules of the Northern District of California, and any other applicable rules, statutes, or common law.

2. The Debtor objects to the Requests for Production to the extent they seek material protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest doctrine, or any other applicable privilege, doctrine, or exemption. The inadvertent production of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information, or the subject matter thereof.

3. The Debtor objects to the Requests for Production to the extent they seek material that is neither relevant to the subject matter of this Contested Matter nor reasonably calculated to lead to the discovery of admissible evidence for this Contested Matter. By responding to the Requests for Production, the Debtor does not concede that any such information or materials are admissible in evidence or relevant to issues in this Contested Matter. The Debtor reserves any and all objections to the use or admission of any information, materials, or documents contained, identified, or produced in response to the Requests for Production.

4. The Debtor does not, by responding to the Requests for Production, accept or agree with any descriptions or assumptions contained therein.

5. The Debtor objects to the Requests for Production to the extent they seek documents or information that is more readily available or more accessible to ICTSI through its own files, or that can be obtained from other sources in a manner that is less burdensome, more convenient, and/or less expensive, including without limitation from public filings in the above-captioned chapter 11 case (the "Bankruptcy Case"). Responding to such requests would be oppressive, unduly burdensome, and unnecessarily expensive.

6. The Debtor objects to the Requests for Production to the extent they seek materials that the Debtor already produced to ICTSI in connection with the matter captioned *ICTSI Oregon, Inc. v. Longshore and Warehouse Union, Case No. 3:12-cv-1058-SI*, filed in the United States District Court for the District of Oregon.

7.     The Debtor objects to the Requests for Production to the extent they seek materials not in the Debtor's actual possession, custody, or control.

8.     The Debtor objects to the Requests for Production to the extent they are ambiguous, vague, cumulative, or duplicative of other requests.

9.     The Debtor objects to the Requests for Production as overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they seek to obtain documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay were lifted.

10.    The Debtor is responding to the Requests for Production as the Debtor reasonably interprets and understands the language of the requests. If ICTSI subsequently asserts an interpretation of the Requests for Production that differs from the Debtor's reasonable understanding, the Debtor reserves its right to supplement the Response and/or objections herein.

11.    The Debtor's responses to the Requests for Production shall not be construed in any way as an admission that any definition provided by ICTSI or any assertion made is either factually correct or legally binding upon the Debtor, or a waiver of any of the Debtor's objections, including but not limited to objections regarding privilege, confidentiality, and discoverability.

12.    The Debtor objects to Instruction No. 4 regarding the phrase "possession, custody or control of the ILWU" as overly broad and unduly burdensome because it seeks to require the Debtor to search the files maintained by "any of the ILWU's agents, representatives, accountants, or attorneys," even though (1) such entities and persons are not parties to this Contested Matter, and (2) such files may not be considered to be within the possession, custody, or control of the Debtor.  In addition, the Debtor objects to Instruction No. 4 to the extent that it seeks the production of material protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest doctrine, or any other applicable privilege, doctrine, or exemption.

13.    The Debtor objects to Instruction No. 17 as burdensome because it purports to require the Debtor to "indicate (to the extent reasonably practical) the specific Request or Requests to which each document or group of documents is being produced" which is not required by the applicable

rules. Where appropriate, the Debtor will respond by producing documents as they are kept in the usual course of business consistent with its obligations under the applicable rules.

14. The Debtor objects to the definition of the term "ILWU" in Definition 5 as overly broad and unduly burdensome and on the grounds that it assumes facts not in evidence because it seeks to require the Debtor to search files maintained by "ILWU International, ILWU National Headquarters, the Coast Longshore Division, the Hawaii Division, the Inland Boatman's Union of the Pacific-Marine Division, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, and any other organization under the common control of any part of the ILWU and the officers, employees, and agents thereof" even though (1) such entities and persons are not parties to this Contested Matter, (2) such entities are not under the common control of the Debtor, and (3) such files may not be considered to be within the possession, custody, or control of the Debtor. Any agreement by the Debtor to produce documents responsive to a particular Request seeking documents of the ILWU as defined in Definition 5 shall be construed to be an agreement to produce documents that are in the actual, possession, custody and control of the Debtor.

15. The Debtor objects to the Requests for Production to the extent that they seek production of documents from January 1, 2012 through the present as overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the other General Objections and Specific Responses, the Debtor will produce responsive documents that came into the Debtor's possession, custody, or control between January 1, 2019 and September 30, 2023 (the "Petition Date").

16. The Debtor objects to the disclosure of documents falling within any of its General Objections or the specific objections set forth below. In the event any documents falling within one or more of these objections is disclosed in these Responses, or otherwise produced, the disclosure is inadvertent and shall not constitute a waiver of the objections. This is in addition to, and not instead of, the Debtor's right to claw back inadvertently produced documents in accordance with Federal Rule of Evidence 502 and Civil Rule 26.

DOCS_NY:48831

Gamblin Dec., Exhibit 3
Page 5 of 22

17.     The Debtor incorporates by reference every general objection set forth above into each specific response set forth below.  A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request.  Moreover, the Debtor does not waive its right to amend its responses.

**RESPONSES**

**REQUEST FOR PRODUCTION NO. 1:**

The ILWU's organizational charts reflecting officers, directors, committeemen, senior managers, and employees from January 1, 2012, to the present.

**RESPONSE:**     Subject to and without waiving the foregoing General Objections, non-privileged responsive documents from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 2**:

The ILWU's organizational charts from January 1, 2012, to the present showing the relationships between and among all divisions, district councils, subordinate entities, and affiliated entities.

**RESPONSE:**     The Debtor objects to this Request on the grounds that it assumes facts not in evidence concerning "divisions, district councils, subordinate entities, and affiliated entities" mentioned in the Request and calls for a legal conclusion with respect to such entities.  Moreover, the Debtor does not have any "affiliates" as defined in section 101(2) of the Bankruptcy Code.

Subject to and without waiving the foregoing objection and General Objections, non-privileged responsive documents from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 2.

**REQUEST FOR PRODUCTION NO. 3:**

The ILWU's organizational documents submitted to state or federal business, corporate, or taxing authorities, or to secretaries of state for the purposes of obtaining employer's tax or business identification numbers.

1      **RESPONSE:**   Subject to and without waiving the foregoing General Objections, the

2 Debtor states that it does not currently have documents responsive to Request No. 3 in its possession,

3 custody, or control.

4   **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:**

5      The constitutions, bylaws, and other documents relating to union governance of the ILWU

6 including but not limited to the 2021 International constitution.

7      **RESPONSE:**   The Debtor objects to this Request as overly broad and burdensome as it

8 seeks "*other* documents" (emphasis added) and objects to the term "other documents" as vague and

9 ambiguous.

10      Subject to and without waiving the foregoing objections and General Objections, non-

11 privileged responsive documents from January 1, 2019 through the Petition Date will be produced in

12 response to Request for Production No. 4.

13   **REQUEST FOR PRODUCTION NO. 5:**

14      All documents and communications dated from January 1, 2012 to the present that refer to

15 amendments or changes to, or potential amendments or changes to, the constitutions, bylaws, or

16 other documents of the ILWU related to union governance.

17      **RESPONSE:**   The Debtor objects to this Request to the extent that it seeks information

18 covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable

19 privilege or exemption.  The Debtor further objects to this Request as overly broad and burdensome

20 as it seeks "*all* documents and communications" (emphasis added) and objects to the term "related to

21 union governance" as vague and ambiguous.

22      Subject to and without waiving the foregoing objections and the General Objections, non-

23 privileged responsive documents from January 1, 2019 through the Petition Date will be produced in

24 response to Request for Production No. 5.

25

26

27

28

**REQUEST FOR PRODUCTION NO. 6:**

All meeting minutes of the ILWU, including but not limited to, Debtor's National Organizing Committee, the International Executive Board, Conventions (all as described in the International Constitution) or other committees or governing bodies from January 1, 2012, to present.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption.

Subject to and without waiving the foregoing objection and the General Objections, non-privileged responsive documents from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 7:**

All financial statements or information of the ILWU, including any division or part of the ILWU that keeps such statements or information separately, dated from January 1, 2012, to the present, including detailed profit and loss statements, balance sheets, detailed cash flow reports, detailed budgets, detailed general ledgers, and similar financial documents.

**RESPONSE:**

The Debtor objects to this Request as vague and ambiguous as it fails to define the terms "division or part of the ILWU," on the grounds that it assumes facts not in evidence because the Debtor does not have "any other division, department or part" as a matter of law, and on the grounds that it is overly broad and burdensome as it is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objection and the General Objections, the Debtor's audited financial statements and other periodic financial statements and reports from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 7.

**REQUEST FOR PRODUCTION NO. 8:**

All tax returns of the ILWU dated from January 1, 2012, to the present.

**RESPONSE:** The Debtor objects to this request as burdensome to the extent that its 2021 tax return was produced in connection with its bankruptcy filing. Subject to and without waiving the foregoing objection and the General Objections, the Debtor will produce its 2019 and 2020 tax returns.

**REQUEST FOR PRODUCTION NO. 9:**

All documents filed by the ILWU with the Department of Labor, such as LM-1, LM-2, constitutions, and other similar documents, including such documents filed by any division or part of the ILWU that files such documents separately with the Department of Labor, from 2010 to the present including draft documents and communications about such documents.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly burdensome to the extent that it seeks publicly filed documents and to the extent that it seeks "*all* documents" (emphasis added), and on the grounds that it assumes facts not in evidence because the Debtor does not have "any other division, department or part" as a matter of law,

Subject to and without waiving the foregoing objection and the General Objection, documents filed by the Debtor with the Department of Labor from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 9.

**REQUEST FOR PRODUCTION NO. 10:**

All documents, including but not limited to communications, from January 1, 2012, to present related to audits of the ILWU's books and all quarterly audits of said books and accounts kept by the ILWU International Secretary-Treasurer

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly burdensome to the extent that it seeks publicly filed documents and to the extent that it seeks "*all* documents" (emphasis added).

Without waiving and subject to the foregoing objection and the General Objections, audited financial statements and other periodic financial statements and reports from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 10.

**REQUEST FOR PRODUCTION NO. 11:**

All documents, including but not limited to communications, from January 1, 2012, to present related to statements presented by the International Secretary-Treasurer at Conventions showing the financial and general condition of the ILWU.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly burdensome to the extent that it seeks "*all* documents" (emphasis added), and vague and overly broad as it does not define "statements."

Subject to and without waiving the foregoing objections and the General Objections, non-privileged responsive documents from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 11.

**REQUEST FOR PRODUCTION NO. 12:**

All documents, including but not limited to communications, from January 1, 2012, to present related to the International Secretary-Treasurer's presentation at Conventions of a statement showing the financial and general condition of the ILWU compiled from the latest reports of ILWU local unions.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly burdensome to the extent that it seeks "*all* documents" (emphasis added) and as vague and ambiguous insofar as the term "latest reports of ILWU local unions" is not defined.

1      Subject to and without waiving the foregoing objections and the General Objections, the

2 Debtor states that non-privileged responsive documents from January 1, 2019 through the Petition

3 Date will be produced in response to Request for Production No. 12.

4 **REQUEST FOR PRODUCTION NO. 13:**

5      All documents, including but not limited to communications, from January 1, 2012, to

6 present related to the International Secretary-Treasurer's submission of a proposed budget for the

7 general guidance of the Debtor or the ILWU during the period until the next regular Convention.

8      **RESPONSE:**     The Debtor objects to this Request to the extent that it seeks information

9 covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable

10 privilege or exemption.  The Debtor further objects to this Request as overly broad and burdensome

11 as it seeks "*all* documents and communications" (emphasis added), and as vague and ambiguous

12 insofar as the term "general guidance of the Debtor" is not defined.

13      Subject to and without waiving the foregoing objections and the General Objections, non-

14 privileged responsive documents from January 1, 2019 through the Petition Date will be produced

15 in response to Request for Production No. 13.

16 **REQUEST FOR PRODUCTION NO. 14:**

17      All documents, including but not limited to communications from January 1, 2012, to the

18 present regarding quarterly financial reports kept by the International Secretary-Treasurer regarding

19 the ILWU.

20      **RESPONSE:**     The Debtor objects to this Request to the extent that it seeks information

21 covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable

22 privilege or exemption.  The Debtor further objects to this Request as overly broad and burdensome

23 as it seeks "*all* documents, including but not limited to communications" (emphasis added).

24      Subject to and without waiving the foregoing objections and the General Objections, the

25 Debtor's audited and periodic financial reports from January 1, 2019 through the Petition Date will

26 be produced in response to Request for Production No. 14.

27

28

DOCS_NY:48454

**REQUEST FOR PRODUCTION NO. 15:**

All documents, including but not limited to communications, from January 1, 2012 to present relating to recommendations by the International Executive Board to the Convention on the budget submitted by the International Secretary-Treasurer regarding the ILWU.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine or any other applicable privilege or exemption. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents, including but not limited to communications" (emphasis added).

Subject to and without waiving the foregoing objections and the General Objections, non-privileged responsive documents from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 15.

**REQUEST FOR PRODUCTION NO. 16:**

All nonprivileged documents, including but not limited to communications, related to whether or how the ILWU would pay damages, settlement, fees, costs, or expenses related to the ICTSI Litigation.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this Contested Matter. The Debtor further objects to this Request to the extent that it seeks documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay is lifted.

**REQUEST FOR PRODUCTION NO. 17:**

Engagement or retention agreements between the ILWU and any attorneys, expert witnesses, expert consultants, or any other providers of goods or services related to the above captioned bankruptcy case (*In re: International Longshore and Warehouse Union*, Case No. 23-30062 HLB (. N.D. Cal. Sept. 30, 2023) and the ICTSI Litigation.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege. The Debtor further objects to this Request as overly broad and burdensome as it is not reasonably calculated to lead to the discovery of admissible evidence for this contested matter, and as it seeks information that is publicly available in the Bankruptcy Case. The Debtor further objects to this Request to the extent that it seeks documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay is lifted.

**REQUEST FOR PRODUCTION NO. 18:**

All documents, including but not limited to agreements and communications, between or among ILWU, ILWU Local 8, ILWU Local 40 or representatives for those organizations relating to the payment of attorney fees, expenses, costs, judgment or settlement amounts on behalf of ILWU, ILWU Local 8, or ILWU Local 40 in relation to labor actions against ICTSI and claims against any party in the ICTSI Litigation**.**

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, or any other applicable privilege. The Debtor further objects to the Request as overly broad and burdensome as it seeks "*all* documents, including but not limited to communications" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this contested matter. The Debtor further objects to this Request to the extent that it seeks documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay is lifted.

Case: 23-30062   Doc# 137   Filed: 01/02/24   Entered: 01/02/24 17:53:42   Page 34 of 148
Gamblin Decl., Exhibit 3
Page 13 of 22

**REQUEST FOR PRODUCTION NO. 19:**

All documents, including but not limited to agreements and communications, relating to the Pacific Maritime Association paying or potentially paying attorney fees, expenses, costs, judgment or settlement amounts in relation to labor actions against ICTSI or claims against any party in the ICTSI Litigation.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege and attorney work-product doctrine or any other applicable privilege. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this contested matter.

Subject to and without waiving the foregoing objection and the General Objections, the Debtor states that it is not currently aware of any documents responsive to Request No. 19 that are in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO 20:**

All nonprivileged documents, including but not limited to communications, related to the ILWU's retention of Paladin Management, including but not limited to documents and communications related to fees incurred, services provided, and any product or advice provided to the ILWU.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents, including but not limited to communications" (emphasis added). The Debtor further objects on the grounds that in light of the fact that the retention of Paladin Management has been approved, pursuant to a final non-appealable order, in the Bankruptcy Case, this Request is not reasonably calculated to lead to the discovery of admissible evidence for this Contested Matter.

**REQUEST FOR PRODUCTION NO. 21:**

All documents, including but not limited to communications, related to the business or financial relationship between or among the various divisions of the ILWU including but not limited to, ILWU National Headquarters, the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, or any other division, department, or part of the ILWU.

**RESPONSE:**     The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption.    The Debtor further objects to this Request (i) as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added), (ii) on the grounds that it assumes facts not in evidence concerning the Debtor's relationship to the purported "divisions" of the ILWU, (iii) because it seeks legal conclusions regarding the terms "district councils, divisions, department, or part," and (iv) because the Debtor does not have any "other division, department, or part" as a matter of law.

Subject to and without waiving the foregoing objections and the General Objections, to the extent that charters, from January 1, 2019 through the Petition Date, that are responsive to Request for Production No. 20 exist and are in the possession, custody, and control of the Debtor, such charters will be produced in response to Request for Production No. 20.

**REQUEST FOR PRODUCTION NO. 22:**

All documents, including but not limited to communications, related to the business or financial relationship between or among the ILWU and the ILWU Political Action Fund.

**RESPONSE:**     The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption.  The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this contested matter.

Subject to and without waiving the foregoing objections and the General Objections, in response to Request for Production No. 22, the Debtor refers ICTSI to the information contained in

its audited financial statements for the period between January 1, 2019 and the Petition Date, which will be produced.

**REQUEST FOR PRODUCTION NO. 23:**

All documents, including but not limited to communications, related to the business or financial relationship between or among the ILWU and the Pacific Longshoremen's Memorial Association.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege and attorney work-product doctrine or any other applicable privilege. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this Contested Matter.

Subject to and without waiving the foregoing objections and the General Objections, in response to Request for Production No. 23, the Debtor refers ICTSI to the information contained in its audited financial statements for the period between January 1, 2019 and the Petition Date, which will be produced.

**REQUEST FOR PRODUCTION NO. 24:**

All documents, including but not limited to communications, related to the business or financial relationship between or among the ILWU and any other organization under the common control of any part of the ILWU.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added) and on the grounds that it assumes facts not in evidence and seeks legal conclusions regarding the term "common control of any part of the ILWU."

**REQUEST FOR PRODUCTION NO. 25:**

All documents, including but not limited to communications, related to the creation of the Pacific Longshore Memorial Association and its acquisition of the property located at 1188 Franklin Street in the City of San Francisco.

**RESPONSE:**    The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added).

Subject to and without waiving the foregoing objections and the General Objections, the Debtor states that it does not currently have documents from January 1, 2019 through the Petition Date that are responsive to Request No. 25 in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 26:**

All documents, including but not limited to communications, relating to the creation of or grant of authority to operate as a labor organization or in any other capacity to the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division or the Office Clerical Division, ILWU district councils, or any organization under the common control of any part of the ILWU.

**RESPONSE:**    The Debtor objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added) and on the grounds that it assumes facts not in evidence concerning "CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division or the Office Clerical Division, ILWU district councils," on the grounds that it assumes facts not in evidence and seeks legal conclusions regarding the term "common control of any part of the ILWU," and on the grounds that it is vague and ambiguous.

Subject to and without waiving the foregoing objections and the General Objections, non-privileged responsive documents from January 1, 2019 through the Petition Date will be produced in response to Request for Production No. 26.

**REQUEST FOR PRODUCTION NO. 27:**

All documents, including but not limited to communications, regarding the acquisition, sale, or transfer of any real property by or to the ILWU since January 1, 2012.

**RESPONSE:** The Debtor objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added).

Subject to and without waiving the foregoing objection and the General Objections, the Debtor states that there has been no acquisition, sale, or transfer of real property by or to it between January 1, 2019 and the Petition Date.

**REQUEST FOR PRODUCTION NO. 28:**

All documents from January 1, 2012 to the present regarding the transfer of any real property or other assets by or among the ILWU National Headquarters, the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, or any organization under the common control of any part of the ILWU.

**RESPONSE:** The Debtor objects to this Request as overly broad and burdensome as it seeks "*all* documents" (emphasis added) and on the grounds that it assumes facts not in evidence and seeks legal conclusions regarding the term "common control of any part of the ILWU" and on the grounds that it seeks documents that are not within its possession, custody, or control as it requests documents relating to the transfer of real property or other assets not involving the Debtor.

Subject to and without waiving the foregoing objections and the General Objections, the Debtor states that (i) there were no transfers of real property by or to it between January 1, 2019 and the Petition Date and (ii) refers ICTSI to the information contained in its audited financial statements for the period between January 1, 2019 and the Petition Date, which will be produced, and to the information contained in the schedules [Docket No. 32] and statements [Docket No. 34] filed by the Debtor in the Bankruptcy Case.

**REQUEST FOR PRODUCTION NO. 29:**

All documents, including but not limited to communications, from January 1, 2012 to the present regarding the transfer of any real property or other assets to, from, or between the ILWU and the ILWU Political Action Fund.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents including but not limited to communications" (emphasis added).

Subject to and without waiving the foregoing objections and the General Objections, the Debtor will produce its audited financial statements from 2019 through the Petition Date from which the information sought in this Request can be determined.

**REQUEST FOR PRODUCTION NO. 30:**

All documents, including but not limited to communications, from January 1, 2012 to the present regarding the transfer of any real property or other assets to, from, or between the ILWU and the ILWU Pacific Longshoremen's Memorial Association.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or exemption. The Debtor further objects to this Request as overly broad and burdensome as it seeks "*all* documents and communications" (emphasis added).

Subject to and without waiving, the foregoing objection and the General Objections, the Debtor will produce its audited financial statements from 2019 through the Petition Date from which the information sought in this Request can be determined.

**REQUEST FOR PRODUCTION NO. 31:**

All documents, including but not limited to non-privileged communications, from January 1, 2012, to present between or among the ILWU, and any person or entity, including but not limited to ILWU Locals 8 and 40, related to indemnity and the ICTSI Litigation.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, the attorney work-product doctrine, the common interest

doctrine, or any other applicable privilege.  The Debtor further objects to the Request as overly broad and burdensome as it seeks "*all* documents including but not limited to communications" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this contested matter.  The Debtor further objects to this Request to extent that it seeks documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay is lifted.

**REQUEST FOR PRODUCTION NO. 32:**

All documents, including but not limited to non-privileged communications, from January 1, 2012, to present between or among the ILWU, and any person or entity, including but not limited to ILWU Locals 8 and 40, related to bonding contracts or agreements and the ICTSI Litigation.

**RESPONSE:**  The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, or any other applicable privilege.  The Debtor further objects to the Request as overly broad and burdensome as it seeks "*all* documents including but not limited to communications" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this contested matter.  The Debtor further objects to this Request to the extent that it seeks documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay is lifted.  The Debtor further objects to this Request as the phrase "bonding contracts or agreements" is vague and ambiguous.

Subject to and without waiving the foregoing objections and the General Objections, the Debtor states that it does not currently have documents from January 1, 2019 through the Petition Date that are responsive to Request No. 32 in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 33:**

All documents, including but not limited to non-privileged communications, from January 1, 2012, to present between or among the ILWU, and any person or entity, including but not limited to ILWU Locals 8 and 40, related to joint defense and the ICTSI Litigation.

**RESPONSE:**  The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, the attorney work-product doctrine, the common interest

doctrine, or any other applicable privilege. The Debtor further objects to the Request as overly broad and burdensome as it seeks "*all* documents including but not limited to communications" (emphasis added) and as it is not reasonably calculated to lead to the discovery of admissible evidence for this contested matter. The Debtor further objects to this Request to extent that it seeks documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay is lifted.

**REQUEST FOR PRODUCTION NO. 34:**

All documents, including but not limited to communications, relating to discussions, decisions, or agreements regarding the method of distribution of approximately $70 million referenced in the Memorandum of Understanding between the Pacific Maritime Association and the International Longshore and Warehouse Union attached hereto as Exhibit A.

**RESPONSE:** The Debtor objects to this Request to the extent that it seeks information covered by the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, or any other applicable privilege. The Debtor further objects to the Request as overly broad and burdensome as it seeks "*all* documents including but not limited to communications" (emphasis added), on the grounds that the Memorandum of Understanding references in Request No. 34 constitutes the best evidence of its contents, and on the grounds that the Letter of Understanding, dated July 1, 2022, concerning the "Promotion of Container Freight Stations (CFS) Program Fund," attached to Exhibit A, is not relevant to Request for Production No. 34.

**REQUEST FOR PRODUCTION NO 35:**

Job descriptions for Rebecca Contreras, Heidi Merriman, and Lindsay Nicholas since January 1, 2012.

**RESPONSE:** Subject to and without waiving the General Objections, the Debtor states that it does not currently have documents from January 1, 2019 through the Petition Date that are responsive to Request No. 35 in its possession, custody, or control.

| 1 | Dated: November 1, 2023 | PACHULSKI STANG ZIEHL & JONES LLP |

Dated: November 1, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jason Rosell*

Debra I. Grassgreen
Jason H. Rosell

*Counsel to the Debtor*

DOCS_NY:48781

**Exhibit 4**

1  PACHULSKI STANG ZIEHL & JONES LLP
   Debra I. Grassgreen (CA Bar No. 169978)
2  Jason H. Rosell (CA Bar No. 269126)
   One Sansome Street, Suite 3430
3  San Francisco, California  94104
   Telephone:    (415) 263-7000
4  Facsimile:    (415) 263-7010
   E-mail:       dgrassgreen@pszjlaw.com
5                jrosell@pszjlaw.com

6  *Counsel to the Debtor*

7              **UNITED STATES BANKRUPTCY COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9              **SAN FRANCISCO DIVISION**

10 In re:                                    | Case No. 23-30662 (HLB)

11                                           | Chapter 11

12 INTERNATIONAL LONGSHORE
   AND WAREHOUSE UNION,                      | **DEBTOR'S RESPONSES AND**
13                                           | **OBJECTIONS TO ICTSI OREGON,**
                                             | **INC.'S FIRST SET OF**
14                Debtor.                    | **INTERROGATORIES TO**
                                             | **INTERNATIONAL LONGSHORE AND**
15                                           | **WAREHOUSE UNION**

16

17 PROPOUNDING PARTY:    ICTSI OREGON, INC.

18 RESPONDING PARTY:     DEBTOR

19 SET NO.:              ONE

20         Pursuant to Rule 33 of the Federal Rules of Civil Procedure, made applicable pursuant to

21 Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure, debtor International Longshore

22 and Warehouse Union (the "Debtor"), by and through its undersigned counsel, hereby responds (the

23 "Response") to the *First Set of Interrogatories to International Longshore and Warehouse Union*

24 (the "Interrogatories") of ICTSI Oregon, Inc. ("ICTSI") as follows:

25

26

27

28

**PRELIMINARY STATEMENT**

This Response is made solely for the purpose of this Contested Matter.[1] The Response is made subject to all objections as to competence, relevance, materiality, propriety, admissibility, privilege, privacy, proprietary information, trade secrets, and the like, and any and all other objections on grounds that would require the exclusion of any portion of the Response herein if such Response was offered in court. All such objections and grounds are reserved and may be interposed at any time, including at the time of trial.

No incidental or implied admissions are intended in this Response. The Response should not be taken as an admission that the Debtor accepts or admits the existence of any facts or any documents assumed by the Interrogatories or that the Response constitutes admissible evidence. The Response is not intended to be, and shall not be construed as, a waiver by the Debtor of any or all objections to the Interrogatory or to any facts or documents assumed by or referenced in such Interrogatory.

**GENERAL OBJECTIONS**

The Debtor's general objections to the Interrogatories (the "General Objections") are set forth below. To avoid the necessity of restating in full each objection, these General Objections, as well as the limitations and restrictions noted in the Preliminary Statement above, are incorporated by reference into each of the Debtor's responses to the Interrogatories as if fully set forth therein.

The assertion of additional specific objections to the Interrogatories shall not be construed as waiving any general objection. Furthermore, neither the General Objections nor the assertion of additional specific objections to any Interrogatory shall waive the Debtor's right to challenge the relevance, materiality, and admissibility of the information provided or to object to the use of such information in any subsequent proceeding or hearing in this Contested Matter.

1.      The Debtor objects to each instruction, definition, and Interrogatory to the extent that it purports to impose any requirements on the Debtor beyond or inconsistent with the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, the Federal Rules of

---

[1] "Contested Matter" means the confirmation of the *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 18] (the "Plan") and the related *Order Setting Schedule in Connection With Plan Confirmation Process and Related Deadlines* [Docket No. 59].

Bankruptcy Procedures, the Local Bankruptcy Rules of the Northern District of California, or any applicable rules, statutes, or common law. The Debtor is responding to the Interrogatories based on information maintained in the ordinary course of business and to the extent required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, the Federal Rules of Bankruptcy, the Local Bankruptcy Rules of the Northern District of California, and any other applicable rules, statutes, or common law.

2. The Debtor objects to the Interrogatories to the extent they seek material protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest doctrine or any other applicable privilege, doctrine, or exemption. The inadvertent production of any privileged information shall not be deemed to be a waiver of any applicable privilege with respect to such information or any other information, or the subject matter thereof.

3. The Debtor objects to the Interrogatories to the extent they seek material that is neither relevant to the subject matter of this Contested Matter nor reasonably calculated to lead to the discovery of admissible evidence for this contested matter. By responding to the Interrogatories, the Debtor does not concede that any such information or materials are admissible in evidence or relevant to issues in this contested matter. The Debtor reserves any and all objections to the use or admission of any information, materials, or documents contained, identified, or produced in response to the Interrogatories.

4. The Debtor does not, by responding to the Interrogatories, accept or agree with any descriptions or assumptions contained therein.

5. The Debtor objects to the Interrogatories to the extent they seek information that is already in ICTSI's possession, custody, or control or that is obtainable from another source that is more convenient or less burdensome or expensive. Responding to such Interrogatories would be oppressive, unduly burdensome, and unnecessarily expensive.

6. The Debtor objects to the Interrogatories to the extent they seek information that the Debtor already produced or provided to ICTSI in connection with the matter captioned *ICTSI Oregon, Inc. v. Longshore and Warehouse Union, Case No. 3:12-cv-1058-SI*, filed in the United States District Court for the District of Oregon.

**7.**     The Debtor objects to the Interrogatories to the extent that they seek information that is not in the Debtor's actual possession, custody, or control.

**8.**     The Debtor objects to the Interrogatories to the extent that they seek to obtain documents or information that could be used in any other proceeding against the Debtor in the event that the automatic stay is lifted.

**9.**     The Debtor is responding to the Interrogatories as the Debtor reasonably interprets and understands the language of the requests. If ICTSI subsequently asserts an interpretation of the Interrogatories that differs from the Debtor's reasonable understanding, the Debtor reserves its right to supplement the Response and/or objections herein.

**10.**     The Debtor's response to the Interrogatories shall not be construed in any way as an admission that any definition provided by ICTSI or any assertion made is either factually correct or legally binding upon the Debtor, or a waiver of any of the Debtor's objections, including but not limited to objections regarding privilege, confidentiality, and discoverability.

**11.**     The Debtor objects to Instruction No. 4 on the grounds that the phrase "all relevant files of appropriate entities and persons" is vague and ambiguous as the "appropriate entities and persons" have not been identified.

**12.**     The Debtor objects to the definition of the term "ILWU" in Definition 5 as overly broad and unduly burdensome and on the grounds that it assumes facts not in evidence because it seeks to require the Debtor to search files maintained by "ILWU International, ILWU National Headquarters, the Coast Longshore Division, the Hawaii Division, the Inland Boatman's Union of the Pacific-Marine Division, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, and any other organization under the common control of any part of the ILWU and the officers, employees, and agents thereof" even though (1) such entities and persons are not parties to this Contested Matter, (2) such entities are not under the common control of the Debtor, and (3) the information relating to such entities is not information that can be verified by the Debtor.  Any Interrogatory seeking information regarding the "ILWU" shall be construed as regarding only the Debtor.

13.     The Debtor objects to the Interrogatories to the extent that they seek information from the time period prior to January 1, 2019 as overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to the other General Objections and Specific Responses, the Debtor will provide information in response to the Interrogatories for the period between January 1, 2019 and September 30, 2023 (the "<u>Petition Date</u>").

14.     The Debtor objects to the disclosure of information falling within any of its General Objections, or the specific Responses and specific objections set forth below.  In the event any documents falling within one or more of these objections is disclosed in these Responses, or otherwise produced, the disclosure is inadvertent and shall not constitute a waiver of the objections.  This is in addition to, and not instead of, the Debtor's right to claw back inadvertently produced documents in accordance with Federal Rule of Evidence 502 and Civil Rule 26.

15.     The Debtor incorporates by reference every general objection set forth above into each specific response set forth below.  A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request.  Moreover, the Debtor does not waive its right to amend its responses.

**RESPONSES**

**INTERROGATORY NO. 1:**

Identify the name, address, and phone number of any accountant, including their firm name used by the ILWU since 2010.

**RESPONSE:**

Subject to and without waiving the General Objections, in response to this Interrogatory, the Debtor states that it has used the following accountants since 2010:

1.  Haile Girma & Co.
    Attention: Haile Girma
    4900 Shattuck Avenue, Suite 2272
    Oakland, CA 94609
    Telephone: (510) 420-0289

2. The Henry Levy Group
   Attention: Anthony Barr
   1726 Solano Avenue
   Berkeley, CA 94707
   Telephone: (510) 652-1000

3. S.E. Owens & Company
   312 Clay Street, Suite 300
   Oakland, CA 94607
   Telephone: (510) 423-4300

**INTERROGATORY NO 2:**

Identify the officers, directors, committeemen, Executive Board members, and any other senior management or leadership of the ILWU, including separately identifying any such person for each division or part of the ILWU that have different officers, directors, committeemen, or other senior management or leadership, since January 1, 2012.

**RESPONSE:**

The Debtor objects to this Interrogatory on the grounds that is overly broad and burdensome and assumes facts not in evidence with respect to the information it seeks regarding "each division or part of the ILWU" as the Debtor does not have legal or corporate divisions or parts and on the grounds that the terms "senior management or leadership" is vague and ambiguous. For the avoidance of doubt, the Debtor states that it does not have any "affiliates," as that term is defined in section 101(2) of the Bankruptcy Code.

Subject to and without waiving the foregoing objection and the General Objections, in response to this Interrogatory, the Debtor identifies the following for the period January 1, 2019 through the Petition Date:

| January 2019 to October 20, 2021 | |
| --- | --- |
| **Name** | **Title** |
| William Adams | President |
| Robert Olvera, Jr. | Vice President, Mainland |
| Wesley Furtado (Jan. 2019 to March 2020) | Vice President, Hawaii |
| Edwin Ferris | Secretary-Treasurer |
| Rob Ashton | Executive Board Member |
| Emmanuel Baltazar (Jan. 2019 to Nov. 2019) | Executive Board Member |
| Ray Benavente | Executive Board Member and Trustee |
| Chris Castaing | Executive Board Member |

DOCS_NY:48884
6
Gamblin Dec., Exhibit 4
Page 6 of 9

| January 2019 to October 20, 2021 | |
|---|---|
| **Name** | **Title** |
| Dustin Dawson | Executive Board Member |
| Donna Domingo | Executive Board Member |
| Myka Dubay (Aug. 2019 to Sept. 2021) | Executive Board Member |
| Trinidad Esquivel (Jan. 2019 to June 2019) | Executive Board Member |
| John L. Fageaux, Jr. | Executive Board Member |
| Joe Gasperov | Executive Board Member |
| David Gonzales | Executive Board Member |
| Luisa Gratz | Executive Board Member |
| Dona Hamabata (Jan. 2019 – Nov. 2019) | Executive Board Member and Trustee |
| Dax Koho | Executive Board Member |
| Melvin Mackay | Executive Board Member and Trustee |
| Kevin Martz (Aug. 2019 to Sept. 2021) | Executive Board Member |
| Dean McGrath | Executive Board Member |
| Dan McKisson | Executive Board Member and Trustee |
| Rhonda Morris | Executive Board Member and Trustee |
| Troy Olson | Executive Board Member |
| Samuel Ramirez | Executive Board Member |
| Marina Secchitano | Executive Board Member |
| Denise Sherman (Dec. 2020 to Oct. 2021) | Executive Board Member |
| John Simpliciano (Dec. 2019 to Sept. 2021) | Executive Board Member |
| Ryan Takas (Jan. 2019 to June 2019) | Executive Board Member and Trustee |
| Chuck Wendt | Executive Board Member |
| Adam Wetzell | Executive Board Member |

| October 20, 2021 to Present: | |
|---|---|
| **Name** | **Title** |
| William Adams | President |
| Robert Olvera, Jr. | Vice President, Mainland |
| Paul Sam Kreutz | Vice President, Hawaii |
| Edwin Ferris | Secretary-Treasurer |
| Rob Ashton | Executive Board Member |
| Ray Benavente | Executive Board Member and Trustee |
| Ricardo De la Torre, Sr. | Executive Board Member |
| Sierra Delgado | Executive Board Member |
| Radford DeMotta | Executive Board Member |
| Myka Dubay | Executive Board Member |
| John L Fageaux, Jr. | Executive Board Member |
| Sean Farley | Executive Board Member |
| Matt Findley | Executive Board Member |
| Jason Ford | Executive Board Member |
| Luisa Gratz | Executive Board Member |
| Jesse Groom | Executive Board Member |

| October 20, 2021 to Present: | |
|---|---|
| **Name** | **Title** |
| Dax Koho | Executive Board Member |
| Melvin Mackay | Executive Board Member and Trustee |
| Kevin Martz | Executive Board Member |
| Dean McGrath | Executive Board Member |
| Dan McKisson | Executive Board Member and Trustee |
| Jose A Nuñez | Executive Board Member |
| Donna Lee Kehau Oyamot-Maeha | Executive Board Member and Trustee |
| Michael A Podue | Executive Board Member |
| Lourdes R Rivera | Executive Board Member |
| Jay Ubelhart | Executive Board Member |
| Christian West | Executive Board Member |

**INTERROGATORY NO 3:**

Identify the "five area offices" described or referred to in paragraph 1 of the Debtor's 2021 Form 990, which is attached to its Petition for Bankruptcy.

**RESPONSE:** Subject to and without waiving the foregoing General Objections, in response to this Interrogatory, the Debtor identifies the following "five area offices:"

1. ILWU Headquarters – San Francisco, California

2. ILWU Hawaii Office – Aiea, Hawaii

3. ILWU Washington Office – Seattle, Washington

4. ILWU Oregon Office – Portland, Oregon

5. ILWU Southern California Office – Lancaster, California

**INTERROGATORY NO. 4:**

Identify all organizations or committees with authority to act on behalf of the Debtor as described or referred to in Part VI, line 8(b) of Debtor's 2021 Form 990, which is attached to its Petition for Bankruptcy.

**RESPONSE:** The Debtor objects to this Interrogatory on the grounds that it is vague and ambiguous in that the term "organization" does not appear in Part VI, line 8(b) of the Debtor's 2021 Form 990, which is attached to its Petition for Bankruptcy.

Subject to and without waiving the foregoing Objection and the General Objections, in response to this Interrogatory, the Debtor identifies its National Organizing Committee.

**INTERROGATORY NO. 5:**

Identify the officers, directors, and any other senior management or leadership of the ILWU Political Action Fund since January 1, 2012, including their position title, dates the position was held, description of the duties of the position, and any other positions held by the person with the ILWU or any ILWU affiliated entity during those dates.

**RESPONSE:** The Debtor objects to this Interrogatory on the grounds that it is burdensome in that it seeks information in the possession of the ILWU Political Action Fund rather than the Debtor and on the grounds that any response to the information this Interrogatory seeks cannot be verified by the Debtor.

**INTERROGATORY NO. 6:**

Identify the officers, directors, and any other senior management or leadership of the ILWU Pacific Longshoremen's Memorial Association since January 1, 2012, including their position title, dates the position was held, description of the duties of the position, and any other positions held by the person with any ILWU affiliated entity during those dates.

**RESPONSE:** The Debtor objects to this Interrogatory on the grounds that it is burdensome in that it seeks information in the possession of the Pacific Longshoremen's Memorial Association rather than the Debtor and on the grounds that any response to the information this Interrogatory seeks cannot be verified by the Debtor.

Dated: November 1, 2023            PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jason Rosell*
Debra I. Grassgreen
Jason H. Rosell

*Counsel to the Debtor*

DOCS_NY:48881

**Exhibit 5**

**From:** Jason Rosell <jrosell@pszjlaw.com>
**Sent:** Thursday, November 2, 2023 8:10 PM
**To:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Cc:** Beth Levine <blevine@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Cia H. Mackle <cmackle@pszjlaw.com>; Matt Benz <mbenz@sheppardmullin.com>; Ori Katz <OKatz@sheppardmullin.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Miriam Manning <mmanning@pszjlaw.com>
**Subject:** Re: ILWU - Reponses to ICTSI First Set of Discovery Requests

Jennifer – please find a link to the Debtor's initial production of documents here:

https://app.everlaw.com/50915/dl/iBdkcXFdN7TUZ__uQydhd32zK4uyXd4DuM6TuXVRdOdL

Please note that this production is being provided on an Attorney's Eyes Only basis until the entry of the protective order (which was lodged today).

Please also let us know if you have any issues accessing the production.

Jason Rosell
Pachulski Stang Ziehl & Jones LLP
Phone: 917.747.9986 | Email: jrosell@pszjlaw.com

**From:** Jason Rosell <jrosell@pszjlaw.com>
**Date:** Thursday, November 2, 2023 at 5:07 PM
**To:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Cc:** Beth Levine <blevine@pszjlaw.com>, James W. Walker <jwalker@pszjlaw.com>, Cia H. Mackle <cmackle@pszjlaw.com>, Matt Benz <mbenz@sheppardmullin.com>, Ori Katz <okatz@sheppardmullin.com>, Debra Grassgreen <dgrassgreen@pszjlaw.com>, Miriam Manning <mmanning@pszjlaw.com>, Jason Rosell <jrosell@pszjlaw.com>
**Subject:** RE: ILWU - Reponses to ICTSI First Set of Discovery Requests

Jennifer – in advance of our meet and confer tomorrow, we propose the following email search terms:

| Request Number | Proposed Search Terms |
| --- | --- |
| 5 | amend* w/15 (constitution or bylaw) |
| 10 | audit* w/15 (quarter* or books or financial) |
| 11 | Convention w/25 "financial report" |
| 13 | budget w/15 convention |
| 15 | budget w/15 convention |

Jason Rosell
Pachulski Stang Ziehl & Jones LLP
Phone: 917.747.9986 | Email: jrosell@pszjlaw.com

**From:** Jason Rosell
**Sent:** Wednesday, November 1, 2023 5:29 PM
**To:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Cc:** Beth Levine <blevine@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Cia H. Mackle <cmackle@pszjlaw.com>; Matt Benz <mbenz@sheppardmullin.com>; Ori Katz <okatz@sheppardmullin.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Miriam Manning <mmanning@pszjlaw.com>; Jason Rosell (jrosell@pszjlaw.com) <jrosell@pszjlaw.com>
**Subject:** ILWU - Reponses to ICTSI First Set of Discovery Requests

Jennifer:

Please find attached the following documents:

1. *Debtor's Responses and Objections to ICTSI Oregon, Inc.'s First Set of Requests for Production to International Longshore and Warehouse Union*; and

2. *Debtor's Responses and Objections to ICTSI Oregon, Inc.'s First Set of Interrogatories to International Longshore and Warehouse Union*

Please let us know if you are available to meet and confer on Friday at 1:30PM PT to discuss these responses and proposed custodians and search terms. We anticipate providing you with an initial production of documents tomorrow, along with proposed email search terms.

We believe the Titled Officers, identified below, are the appropriate custodians for email searches.

1. William Adams
2. Robert Olvera, Jr.
3. Paul Sam Kreutz
4. Edwin Ferris
5. Wesley Furtado (deceased)

We look forward to hearing back from you on a time to meet and confer.

Thank you.

Jason Rosell
Pachulski Stang Ziehl & Jones LLP
Phone: 917.747.9986 | Email: jrosell@pszjlaw.com
<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

Gamblin Dec., Exhibit 5
Page 3 of 3

**Exhibit 6**

| From: | Amanda Gamblin |
|---|---|
| Sent: | Saturday, November 4, 2023 11:20 AM |
| To: | Jason Rosell; James W. Walker; Cia H. Mackle; Debra Grassgreen; Beth Levine; Miriam Manning |
| Cc: | Ori Katz; Michael T. Garone (Other); Jeffrey S. Eden (Other); Andrew Lee (Other); Matt Benz; Jennifer Nassiri |
| Bcc: | Clio Manage (00006-International Container Terminal Services, Inc. |
| Subject: | RE: ILWU Bankruptcy - Conferral Follow Up |

| Categories: | Filed to Clio |

No problem, Jason. Below is a table of the documents that are designated under the SPO. Can you please explain your designations? Also, we requested that confidentiality designations be provided in the document metadata, which it wasn't. Please provide confidentiality designations in the metadata with future productions.

Specifically, why are resolutions designated? For example, why is it confidential that the ILWU publicly supports doing away with the filibuster in congress or that it has a statement of policy to end systemic racism and misogyny? I have the same question for all resolutions that are designated as confidential. In addition, why are financial documents confidential? Aren't these reported to the DOL and available to all members? Why are the statements of policy confidential (documents with file names that start with "CP")? Why are amendments to the Constitution confidential, but the Constitution is not? I also am struggling to understand any of the AEO designations. A Confidential designation prevents any of these documents from being used outside of the bankruptcy case, so why are they limited to attorneys' eyes only?

Generally, I cannot understand why any of the documents listed below are confidential. I welcome your explanation. Thanks, Jason.

| Doc ID Beg | File Name | 2T Confidentiality |
|---|---|---|
| INTL_BK_DEBTOR_000001 | Columbia River Sub District Council.pdf | |
| INTL_BK_DEBTOR_000002 | Inlandboatmen's Union Charter.pdf | |
| INTL_BK_DEBTOR_000003 | Sub District Council of Southern California.pdf | |
| INTL_BK_DEBTOR_000004 | CP-01 International Elections CLEAN.docx | Confidential |
| INTL_BK_DEBTOR_000008 | CP-01 International Elections.docx | Confidential |
| INTL_BK_DEBTOR_000013 | CP-02 Titled Officers and Staff Pension Plan.docx | Confidential |
| INTL_BK_DEBTOR_000015 | CP-03 Officers Salary.docx | Confidential |
| INTL_BK_DEBTOR_000016 | CP-05 JURISDICTION OF FEDERATED AUXILIARY CHARTERS.docx | Confidential |
| INTL_BK_DEBTOR_000018 | CP-10 Alaska Organizing.docx | Confidential |
| INTL_BK_DEBTOR_000019 | CP-12 AMENDMENT TO ARTICLE XI, SECTION 3 OF THE CONSTITUTION.docx | Confidential |
| INTL_BK_DEBTOR_000021 | R-01 The Filibuster.docx | Confidential |
| INTL_BK_DEBTOR_000022 | R-02 In Support of For the People Act of 2021 H.R. 1.docx | Confidential |
| INTL_BK_DEBTOR_000024 | R-04 Asian Americans and Pacific Islanderes.docx | Confidential |
| INTL_BK_DEBTOR_000025 | R-05 ILWU Local 30 Contract Negotiations.docx | Confidential |
| INTL_BK_DEBTOR_000026 | R-06 SUPPORT FOR ORGANIZING THE UNORGANIZED.docx | Confidential |
| INTL_BK_DEBTOR_000028 | R-07 OPPOSING RIGHT-TO-WORK.docx | Confidential |
| INTL_BK_DEBTOR_000030 | R-08 Support of Protecting the Right to Organize Act.docx | Confidential |
| INTL_BK_DEBTOR_000032 | R-09 SUPPORT OF THE JONES ACT.docx | Confidential |
| INTL_BK_DEBTOR_000034 | R-10 Strengthening Union Membership in the Public Sector.docx | Confidential |
| INTL_BK_DEBTOR_000035 | R-11 Federal Transit Administration (FTA) funding proposed Amendments.docx | Confidential |
| INTL_BK_DEBTOR_000036 | R-12 the Next Generation's Job Security.docx | Confidential |
| INTL_BK_DEBTOR_000038 | R-13 COMMEMORATE THE 75TH ANNIVERSARY OF 0THE 1946 GREAT SUGAR STRIKE.docx | Confidential |
| INTL_BK_DEBTOR_000041 | R-14 COMMEMORATE THE 1951 PINEAPPLE STRIKE ON LANAI.docx | Confidential |
| INTL_BK_DEBTOR_000043 | R-15 COMMEMORATE THE 1970 HOTEL STRIKE.docx | Confidential |
| INTL_BK_DEBTOR_000047 | R-16 Pass the PRO Act.docx | Confidential |
| INTL_BK_DEBTOR_000049 | R-18 Support Local 26 Members Employed by Rite Aid in upcoming Negotiations.docx | Confidential |
| INTL_BK_DEBTOR_000051 | R-19 Black Lives Matter.docx | Confidential |
| INTL_BK_DEBTOR_000053 | R-20 The Struggle to Defend Black Lives.docx | Confidential |
| INTL_BK_DEBTOR_000055 | R-21 EVERY MEMBER CAN HELP CHILDREN AND UNITE THE ILWU.docx | Confidential |
| INTL_BK_DEBTOR_000057 | R-22 In Support Of an ILWU Annual Women%u2019s Conference.docx | Confidential |
| INTL_BK_DEBTOR_000058 | R-23 SUPPORT FOR IBU WESTOIL MARINE INC WORKERS.docx | Confidential |
| INTL_BK_DEBTOR_000060 | R-25 Reinforce Organizing effort for Oakland Global-Prologis Warehouses.docx | Highly Confidential - Attorneys Eyes Only |
| INTL_BK_DEBTOR_000062 | R-27 Send Syringes to Cuba and End the Embargo.docx | Confidential |
| INTL_BK_DEBTOR_000064 | R-28 JUNETEENTH 2021.docx | Confidential |
| INTL_BK_DEBTOR_000069 | R-29 Remembering Wesley Wes Furtado.docx | Confidential |
| INTL_BK_DEBTOR_000071 | R-30 The Struggle To Defend Black Lives.docx | Confidential |
| INTL_BK_DEBTOR_000072 | R-31 Support of NUMSA's International Campaign to Free Mumia Abu-Jamal.docx | Confidential |
| INTL_BK_DEBTOR_000073 | R-32 ILWU LOCAL 5S DEEP APPRECIATION FOR OUR ILWU FAMILY.docx | Confidential |
| INTL_BK_DEBTOR_000075 | R-33 THE IMPORTANCE OF A HEALTHY POLITICAL ACTION PROGRAM.docx | Confidential |
| INTL_BK_DEBTOR_000076 | R-34 Local 6 Workers at Stratas Foods.docx | Confidential |
| INTL_BK_DEBTOR_000077 | R-35 IN SUPPORT OF REGION 37 INLANDBOATMEN'S UNION OF THE PACIFIC.docx | Confidential |
| INTL_BK_DEBTOR_000079 | R-37 ILWU Education - Essential for Rank-and-File Unionism.docx | Confidential |
| INTL_BK_DEBTOR_000082 | R-38 COMMEMORATE THE 5TH ANNIVERSARY OF WES FURTADO.docx | Confidential |
| INTL_BK_DEBTOR_000084 | R-39 Resolution Remembering Wesley Wes Furtado.docx | Confidential |
| INTL_BK_DEBTOR_000086 | 2018-2020 Financial Report Complete.pdf | Confidential |
| INTL_BK_DEBTOR_000112 | June 14 2021 Convention Minutes.pdf | Confidential |
| INTL_BK_DEBTOR_000119 | June 15 2021 Convention Minutes.pdf | Confidential |
| INTL_BK_DEBTOR_000121 | June 16 2021 Convention Minutes- Evening.pdf | Confidential |
| INTL_BK_DEBTOR_000126 | June 16 2021 Convention Minutes- morning.pdf | Confidential |
| INTL_BK_DEBTOR_000128 | June 17 2021 Convention Minutes- Full Day.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL_BK_DEBTOR_000151 | June 18 2021 Convention Minutes- Morning.pdf | Confidential |
| INTL_BK_DEBTOR_000174 | CP-01 International Elections.pdf | Confidential |
| INTL_BK_DEBTOR_000179 | CP-02 Titled Officers and Staff Pension Plan.pdf | Confidential |

| | | |
|---|---|---|
| INTL_BK_DEBTOR_000181 | CP-03 Officers Salary.pdf | Confidential |
| INTL_BK_DEBTOR_000182 | CP-05 JURISDICTION OF FEDERATED AUXILIARY CHARTERS.pdf | Confidential |
| INTL_BK_DEBTOR_000184 | CP-10 Alaska Organizing.pdf | Confidential |
| INTL_BK_DEBTOR_000185 | CP-12 AMENDMENT TO ARTICLE XI, SECTION 3 OF THE CONSTITUTION.pdf | Confidential |
| INTL_BK_DEBTOR_000187 | R-01 The Filibuster.pdf | Confidential |
| INTL_BK_DEBTOR_000188 | R-02 In Support of For the People Act of 2021 H.R. 1.pdf | Confidential |
| INTL_BK_DEBTOR_000190 | R-04 Asian Americans and Pacific Islanderes.pdf | Confidential |
| INTL_BK_DEBTOR_000191 | R-05 ILWU Local 30 Contract Negotiations.pdf | Confidential |
| INTL_BK_DEBTOR_000192 | R-06 SUPPORT FOR ORGANIZING THE UNORGANIZED.pdf | Confidential |
| INTL_BK_DEBTOR_000194 | R-07 OPPOSING RIGHT-TO-WORK.pdf | Confidential |
| INTL_BK_DEBTOR_000196 | R-08 Support of Protecting the Right to Organize Act.pdf | Confidential |
| INTL_BK_DEBTOR_000198 | R-09 SUPPORT OF THE JONES ACT.pdf | Confidential |
| INTL_BK_DEBTOR_000200 | R-10 Strengthening Union Membership in the Public Sector.pdf | Confidential |
| INTL_BK_DEBTOR_000201 | R-11 Federal Transit Administration (FTA) funding proposed Amendments.pdf | Confidential |
| INTL_BK_DEBTOR_000202 | R-12 the Next Generation's Job Security.pdf | Confidential |
| INTL_BK_DEBTOR_000204 | R-13 COMMEMORATE THE 75TH ANNIVERSARY OF 0THE 1946 GREAT SUGAR STRIKE.pdf | Confidential |
| INTL_BK_DEBTOR_000207 | R-14 COMMEMORATE THE 1951 PINEAPPLE STRIKE ON LANAI.pdf | Confidential |
| INTL_BK_DEBTOR_000209 | R-15 COMMEMORATE THE 1970 HOTEL STRIKE.pdf | Confidential |
| INTL_BK_DEBTOR_000213 | R-16 Pass the PRO Act.pdf | Confidential |
| INTL_BK_DEBTOR_000215 | R-18 Support Local 26 Members Employed by Rite Aid in upcoming Negotiations.pdf | Confidential |
| INTL_BK_DEBTOR_000217 | R-19 Black Lives Matter.pdf | Confidential |
| INTL_BK_DEBTOR_000219 | R-20 The Struggle to Defend Black Lives.pdf | Confidential |
| INTL_BK_DEBTOR_000221 | R-21 EVERY MEMBER CAN HELP CHILDREN AND UNITE THE ILWU.pdf | Confidential |
| INTL_BK_DEBTOR_000223 | R-22 In Support Of an ILWU Annual Women%u2019s Conference.pdf | Confidential |
| INTL_BK_DEBTOR_000224 | R-23 SUPPORT FOR IBU WESTOIL MARINE INC WORKERS.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL_BK_DEBTOR_000226 | R-25 Reinforce Organizing effort for Oakland Global-Prologis Warehouses.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL_BK_DEBTOR_000228 | R-27 Send Syringes to Cuba and End the Embargo.pdf | Confidential |
| INTL_BK_DEBTOR_000230 | R-28 JUNETEENTH 2021.pdf | Confidential |
| INTL_BK_DEBTOR_000235 | R-29 Remembering Wesley Wes Furtado.pdf | Confidential |
| INTL_BK_DEBTOR_000237 | R-30 The Struggle To Defend Black Lives.pdf | Confidential |
| INTL_BK_DEBTOR_000238 | R-31 Support of NUMSA's International Campaign to Free Mumia Abu-Jamal.pdf | Confidential |
| INTL_BK_DEBTOR_000239 | R-32 ILWU LOCAL 5S DEEP APPRECIATION FOR OUR ILWU FAMILY.pdf | Confidential |
| INTL_BK_DEBTOR_000241 | R-33 THE IMPORTANCE OF A HEALTHY POLITICAL ACTION PROGRAM.pdf | Confidential |
| INTL_BK_DEBTOR_000242 | R-34 Local 6 Workers at Stratas Foods.pdf | Confidential |
| INTL_BK_DEBTOR_000243 | R-35 IN SUPPORT OF REGION 37 INLANDBOATMEN'S UNION OF THE PACIFIC.pdf | Confidential |
| INTL_BK_DEBTOR_000245 | R-37 ILWU Education - Essential for Rank-and-File Unionism.pdf | Confidential |
| INTL_BK_DEBTOR_000248 | R-38 COMMEMORATE THE 5TH ANNIVERSARY OF WES FURTADO.pdf | Confidential |
| INTL_BK_DEBTOR_000250 | R-39 Resolution Remembering Wesley Wes Furtado.pdf | Confidential |
| INTL_BK_DEBTOR_000252 | 2018 Constitution.pdf | |
| INTL_BK_DEBTOR_000348 | 2021 ILWU Constitution.pdf | |
| INTL_BK_DEBTOR_000444 | How-The-Union-Works.pdf | |
| INTL_BK_DEBTOR_000450 | ILWU Directory Poster.pdf | |
| INTL_BK_DEBTOR_000451 | NOC Minutes- August 19 2019.docx | Confidential |
| INTL_BK_DEBTOR_000452 | 2019 1st Quarter Audited Financial Report.pdf | Confidential |
| INTL_BK_DEBTOR_000481 | ILWU 2021 Q1 final rpt.pdf | Confidential |
| INTL_BK_DEBTOR_000509 | ILWU 2021 Q2 final rpt.pdf | Confidential |
| INTL_BK_DEBTOR_000538 | ILWU 2021 Q3 final rpt.pdf | Confidential |
| INTL_BK_DEBTOR_000567 | ILWU Q1 2022 Financial Statements.pdf | Confidential |
| INTL_BK_DEBTOR_000597 | ILWU Q1 2023 Final Audit Report.pdf | Confidential |
| INTL_BK_DEBTOR_000625 | ILWU Q2 2019 final report.pdf | Confidential |
| INTL_BK_DEBTOR_000655 | ILWU Q3 2022 final report.pdf | Confidential |
| INTL_BK_DEBTOR_000684 | Q1 2020 Financial Statement.pdf | Confidential |
| INTL_BK_DEBTOR_000712 | Q2 2020 Financial Statement.pdf | Confidential |
| INTL_BK_DEBTOR_000741 | Q2 2022 Financial Statement.pdf | Confidential |
| INTL_BK_DEBTOR_000771 | Q3 2019 final report.pdf | Confidential |
| INTL_BK_DEBTOR_000801 | Q3 2020 Financial Statement.pdf | Confidential |
| INTL_BK_DEBTOR_000830 | ILWU Financial Statement 2019.pdf | Confidential |
| INTL_BK_DEBTOR_000860 | ILWU Financial Statement 2020 Revised.pdf | Confidential |
| INTL_BK_DEBTOR_000889 | ILWU Financial Statement 2021.pdf | Confidential |
| INTL_BK_DEBTOR_000920 | ILWU Financial Statement 2022.pdf | Confidential |
| INTL_BK_DEBTOR_000949 | CP-01 International Elections.pdf | Confidential |
| INTL_BK_DEBTOR_000954 | CP-10 Alaska Organizing.pdf | Confidential |
| INTL_BK_DEBTOR_000955 | CP-12 AMENDMENT TO ARTICLE XI, SECTION 3 OF THE CONSTITUTION.pdf | Confidential |
| INTL_BK_DEBTOR_000957 | CP-2 Titled Officers and Staff Pension Plan.pdf | Confidential |
| INTL_BK_DEBTOR_000959 | CP-3 Officers Salary.pdf | Confidential |
| INTL_BK_DEBTOR_000960 | CP-4 Convention Locations.pdf | Confidential |
| INTL_BK_DEBTOR_000961 | CP-5 JURISDICTION OF FEDERATED AUXILIARY CHARTERS.pdf | Confidential |
| INTL_BK_DEBTOR_000963 | CP-6 Duties and Responsibilities of the Hawaii Vice President.pdf | Confidential |
| INTL_BK_DEBTOR_000964 | R-01 The Filibuster.pdf | Confidential |
| INTL_BK_DEBTOR_000965 | R-02 In Support of For the People Act of 2021 H.R. 1.pdf | Confidential |
| INTL_BK_DEBTOR_000967 | R-04 Asian Americans and Pacific Islanderes.pdf | Confidential |
| INTL_BK_DEBTOR_000968 | R-05 ILWU Local 30 Contract Negotiations.pdf | Confidential |
| INTL_BK_DEBTOR_000969 | R-06 SUPPORT FOR ORGANIZING THE UNORGANIZED.pdf | Confidential |
| INTL_BK_DEBTOR_000971 | R-07 OPPOSING RIGHT-TO-WORK.pdf | Confidential |
| INTL_BK_DEBTOR_000973 | R-08 Support of Protecting the Right to Organize Act.pdf | Confidential |

| | | |
|---|---|---|
| INTL BK_DEBTOR_000975 | R-09 SUPPORT OF THE JONES ACT - Amended.pdf | Confidential |
| INTL BK_DEBTOR_000977 | R-10 Strengthening Union Membership in the Public Sector.pdf | Confidential |
| INTL BK_DEBTOR_000978 | R-11 Federal Transit Administration (FTA) funding proposed Amendments.pdf | Confidential |
| INTL BK_DEBTOR_000979 | R-12 the Next Generation's Job Security.pdf | Confidential |
| INTL BK_DEBTOR_000981 | R-13 COMMEMORATE THE 75TH ANNIVERSARY OF 0THE 1946 GREAT SUGAR STRIKE.pdf | Confidential |
| INTL BK_DEBTOR_000984 | R-14 COMMEMORATE THE 1951 PINEAPPLE STRIKE ON LANAI.pdf | Confidential |
| INTL BK_DEBTOR_000986 | R-15 COMMEMORATE THE 1970 HOTEL STRIKE.pdf | Confidential |
| INTL BK_DEBTOR_000990 | R-16 Pass the PRO Act.pdf | Confidential |
| INTL BK_DEBTOR_000992 | R-18 Support Local 26 Members Employed by Rite Aid in upcoming Negotiations.pdf | Confidential |
| INTL BK_DEBTOR_000994 | R-19 Black Lives Matter.pdf | Confidential |
| INTL BK_DEBTOR_000996 | R-20 The Struggle to Defend Black Lives.pdf | Confidential |
| INTL BK_DEBTOR_000998 | R-21 EVERY MEMBER CAN HELP CHILDREN AND UNITE THE ILWU-1.pdf | Confidential |
| INTL BK_DEBTOR_001000 | R-22 In Support Of an ILWU Annual Women%u2019s Conference.pdf | Confidential |
| INTL BK_DEBTOR_001001 | R-23 SUPPORT FOR IBU WESTOIL MARINE INC WORKERS.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL BK_DEBTOR_001003 | R-25 Reinforce Organizing effort for Oakland Global-Prologis Warehouses.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL BK_DEBTOR_001005 | R-27 Send Syringes to Cuba and End the Embargo.pdf | Confidential |
| INTL BK_DEBTOR_001007 | R-28 JUNETEENTH 2021.pdf | Confidential |
| INTL BK_DEBTOR_001012 | R-30 The Struggle To Defend Black Lives.pdf | Confidential |
| INTL BK_DEBTOR_001013 | R-31 Support of NUMSA's International Campaign to Free Mumia Abu-Jamal.pdf | Confidential |
| INTL BK_DEBTOR_001014 | R-32 ILWU LOCAL 5S DEEP APPRECIATION FOR OUR ILWU FAMILY.pdf | Confidential |
| INTL BK_DEBTOR_001016 | R-33 THE IMPORTANCE OF A HEALTHY POLITICAL ACTION PROGRAM.pdf | Confidential |
| INTL BK_DEBTOR_001017 | R-34 Local 6 Workers at Stratas Foods.pdf | Confidential |
| INTL BK_DEBTOR_001018 | R-35 IN SUPPORT OF REGION 37 INLANDBOATMEN'S UNION OF THE PACIFIC - Copy.pdf | Confidential |
| INTL BK_DEBTOR_001020 | R-35 IN SUPPORT OF REGION 37 INLANDBOATMEN'S UNION OF THE PACIFIC.pdf | Confidential |
| INTL BK_DEBTOR_001022 | R-37 ILWU Education - Essential for Rank-and-File Unionism.pdf | Confidential |
| INTL BK_DEBTOR_001025 | R-38 COMMEMORATE THE 5TH ANNIVERSARY OF WES FURTADO.pdf | Confidential |
| INTL BK_DEBTOR_001027 | Resolution Remembering Wesley Wes Furtado.pdf | Confidential |
| INTL BK_DEBTOR_001029 | CP-01 International Elections.pdf | Confidential |
| INTL BK_DEBTOR_001033 | CP-1 International Elections trackled Changes.pdf | Confidential |
| INTL BK_DEBTOR_001037 | CP-1 International Elections.pdf | Confidential |
| INTL BK_DEBTOR_001041 | CP-10 Alaska Organizing.pdf | Confidential |
| INTL BK_DEBTOR_001042 | CP-11 FUTURE IN PERSON CONVENTION PRESERVATION.pdf | Confidential |
| INTL BK_DEBTOR_001044 | CP-12 AMENDMENT TO ARTICLE XI, SECTION 3 OF THE CONSTITUTION.pdf | Confidential |
| INTL BK_DEBTOR_001046 | CP-13 GIVE LOCAL 100 A SEAT ON THE INTERNATIONAL EXECUTIVE BOARD.pdf | Confidential |
| INTL BK_DEBTOR_001047 | CP-5 JURISDICTION OF FEDERATED AUXILIARY CHARTERS.pdf | Confidential |
| INTL BK_DEBTOR_001049 | CP-6 Duties and Responsibilities of the Hawaii Vice President.pdf | Confidential |
| INTL BK_DEBTOR_001050 | CP-7 Give Local 75 a Seat on the International Executive Board.pdf | Confidential |
| INTL BK_DEBTOR_001051 | CP-8 ILWU Education - Essential for Rank-and-File Unionism - amended.pdf | Confidential |
| INTL BK_DEBTOR_001054 | CP-8 ILWU Education - Essential for Rank-and-File Unionism.pdf | Confidential |
| INTL BK_DEBTOR_001057 | CP-9 Provide Local 26 a Seat on the International Executive Board.pdf | Confidential |
| INTL BK_DEBTOR_001058 | R-1 The Filibuster.pdf | Confidential |
| INTL BK_DEBTOR_001059 | R-10 Strengthening Union Membership in the Public Sector.pdf | Confidential |
| INTL BK_DEBTOR_001060 | R-11 Federal Transit Administration (FTA) funding proposed Amendments.pdf | Confidential |
| INTL BK_DEBTOR_001061 | R-11 Federal Transit Administration (FTA) funding.pdf | Confidential |
| INTL BK_DEBTOR_001062 | R-12 the Next Generations Job Security.pdf | Confidential |
| INTL BK_DEBTOR_001064 | R-13 COMMEMORATE THE 75TH ANNIVERSARY OF 0THE 1946 GREAT SUGAR STRIKE.pdf | Confidential |
| INTL BK_DEBTOR_001067 | R-14 COMMEMORATE THE 1951 PINEAPPLE STRIKE ON LANAI.pdf | Confidential |
| INTL BK_DEBTOR_001069 | R-15 COMMEMORATE THE 1970 HOTEL STRIKE.pdf | Confidential |
| INTL BK_DEBTOR_001073 | R-16 Pass the PRO Act.pdf | Confidential |
| INTL BK_DEBTOR_001075 | R-17 FOR THE FORMATION OF AN ILWU NORTH AMERICAN GRAIN HANDLING COMMITTEE.pdf | Confidential |
| INTL BK_DEBTOR_001077 | R-18 Support Local 26 Members Employed by Rite Aid in upcoming Negotiations.pdf | Confidential |
| INTL BK_DEBTOR_001079 | R-19 Black Lives Matter.pdf | Confidential |
| INTL BK_DEBTOR_001081 | R-2 In Support of For the People Act of 2021 H.R. 1.pdf | Confidential |
| INTL BK_DEBTOR_001083 | R-20 The Struggle to Defend Black Lives.pdf | Confidential |
| INTL BK_DEBTOR_001085 | R-21 EVERY MEMBER CAN HELP CHILDREN AND UNITE THE ILWU.pdf | Confidential |
| INTL BK_DEBTOR_001087 | R-22 In Support Of an ILWU Annual Women's Conference.pdf | Confidential |
| INTL BK_DEBTOR_001088 | R-23 SUPPORT FOR IBU WESTOIL MARINE INC WORKERS - amendment.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL BK_DEBTOR_001090 | R-23 SUPPORT FOR IBU WESTOIL MARINE INC WORKERS.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL BK_DEBTOR_001092 | R-24 DEMAND FOR CHANGE IN DOL-OWCP WITH REGARDS TO LHWCA.pdf | Confidential |
| INTL BK_DEBTOR_001094 | R-25 Reinforce Organizing effort for Oakland Global-Prologis Warehouses.pdf | Highly Confidential - Attorneys Eyes Only |
| INTL BK_DEBTOR_001096 | R-26 Gearmen Fueling.pdf | Confidential |
| INTL BK_DEBTOR_001097 | R-27 Send Syringes to Cuba and End the Embargo.pdf | Confidential |
| INTL BK_DEBTOR_001099 | R-28 JUNETEENTH 2021 - amended.pdf | Confidential |
| INTL BK_DEBTOR_001104 | R-28 JUNETEENTH 2021.pdf | Confidential |
| INTL BK_DEBTOR_001108 | R-29 Long Term Care Now.pdf | Confidential |
| INTL BK_DEBTOR_001110 | R-3 Protecting the Right to Organize.pdf | Confidential |
| INTL BK_DEBTOR_001111 | R-30 The Struggle To Defend Black Lives amended.pdf | Confidential |
| INTL BK_DEBTOR_001113 | R-30 The Struggle To Defend Black Lives.pdf | Confidential |
| INTL BK_DEBTOR_001114 | R-31 Support of NUMSA's International Campaign to Free Mumia Abu-Jamal -amended.pdf | Confidential |
| INTL BK_DEBTOR_001115 | R-31 Support of NUMSA's International Campaign to Free Mumia Abu-Jamal.pdf | Confidential |
| INTL BK_DEBTOR_001116 | R-32 ILWU LOCAL 5S DEEP APPRECIATION FOR OUR ILWU FAMILY.pdf | Confidential |
| INTL BK_DEBTOR_001118 | R-33 THE IMPORTANCE OF A HEALTHY POLITICAL ACTION PROGRAM.pdf | Confidential |
| INTL BK_DEBTOR_001119 | R-34 Local 6 Workers at Stratas Foods.pdf | Confidential |
| INTL BK_DEBTOR_001121 | R-35 IN SUPPORT OF REGION 37 INLANDBOATMEN'S UNION OF THE PACIFIC.pdf | Confidential |
| | | |

| INTL BK_DEBTOR_001123 | R-36 RESOLUTION IN SUPPORT OF BLACK LIVES MATTER AND GENDER EQUALITY IN THE ILWU.pdf | Confidential |
|---|---|---|
| INTL BK_DEBTOR_001125 | R-37 ILWU Education - Essential for Rank-and-File Unionism.pdf | Confidential |
| INTL BK_DEBTOR_001128 | R-38 COMMEMORATE THE 5TH ANNIVERSARY OF WES FURTADO.pdf | Confidential |
| INTL BK_DEBTOR_001130 | R-4 Asian Americans and Pacific Islanderes.pdf | Confidential |
| INTL BK_DEBTOR_001131 | R-5 ILWU Local 30 Contract Negotiations.pdf | Confidential |
| INTL BK_DEBTOR_001132 | R-6 SUPPORT FOR ORGANIZING THE UNORGANIZED.pdf | Confidential |
| INTL BK_DEBTOR_001134 | R-7 OPPOSING RIGHT-TO-WORK.pdf | Confidential |
| INTL BK_DEBTOR_001136 | R-8 Support of Protecting the Right to Organize Act.pdf | Confidential |
| INTL BK_DEBTOR_001138 | R-9 SUPPORT OF THE JONES ACT - Amended.pdf | Confidential |
| INTL BK_DEBTOR_001140 | R-9 SUPPORT OF THE JONES ACT.pdf | Confidential |
| INTL BK_DEBTOR_001142 | CA Tax Return.pdf | Confidential |
| INTL BK_DEBTOR_001154 | US Tax Return.pdf | Confidential |
| INTL BK_DEBTOR_001196 | 2020 ILWU CA Tax Return Form 199.pdf | Confidential |
| INTL BK_DEBTOR_001208 | 2020 ILWU US Tax Return Form 990.pdf | Confidential |
| INTL BK_DEBTOR_001250 | 000-202 (LM2) 12_31_2019 0.pdf | |
| INTL BK_DEBTOR_001301 | 000-202 (LM2) 12_31_2019 1.pdf | |
| INTL BK_DEBTOR_001352 | 000-202 (LM2) 12_31_2020.pdf | |
| INTL BK_DEBTOR_001395 | 000-202 (LM2) 12_31_2021.pdf | |
| INTL BK_DEBTOR_001443 | 000-202 (LM2) 12_31_2022.pdf | |
| INTL BK_DEBTOR_001492 | DOL-Union-Rpt-History-000-202 ILWU.csv | |
| INTL BK_DEBTOR_001493 | Reporting History.pdf | |
| INTL BK_DEBTOR_001495 | Services Agreement.pdf | Confidential |

AMANDA T GAMBLIN, ATTORNEY AT LAW
amanda@gamblin-law.com
503.329.1858

**From:** Jason Rosell <jrosell@pszjlaw.com>
**Sent:** Friday, November 3, 2023 6:34 PM
**To:** Amanda Gamblin <Amanda@Gamblin-Law.com>; James W. Walker <jwalker@pszjlaw.com>; Cia H. Mackle <cmackle@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Beth Levine <blevine@pszjlaw.com>; Miriam Manning <mmanning@pszjlaw.com>
**Cc:** Ori Katz <okatz@sheppardmullin.com>; Michael T. Garone (Other) <mgarone@schwabe.com>; Jeffrey S. Eden (Other) <jeden@schwabe.com>; Andrew Lee (Other) <ajlee@schwabe.com>; Matt Benz <mbenz@sheppardmullin.com>; Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Subject:** RE: ILWU Bankruptcy - Conferral Follow Up

We did not designate every document as confidential so please actually review every document and ask specific questions as to why specific documents were marked confidential.

Jason Rosell
Pachulski Stang Ziehl & Jones LLP
Phone: 917.747.9986 | Email: jrosell@pszjlaw.com

**From:** Amanda Gamblin [mailto:Amanda@Gamblin-Law.com]
**Sent:** Friday, November 3, 2023 6:29 PM
**To:** Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Cia H. Mackle <cmackle@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Beth Levine <blevine@pszjlaw.com>; Miriam Manning <mmanning@pszjlaw.com>
**Cc:** Ori Katz <okatz@sheppardmullin.com>; Michael T. Garone (Other) <mgarone@schwabe.com>; Jeffrey S. Eden (Other) <jeden@schwabe.com>; Andrew Lee (Other) <ajlee@schwabe.com>; Matt Benz <mbenz@sheppardmullin.com>; Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Subject:** RE: ILWU Bankruptcy - Conferral Follow Up

Jason,

I look forward to your client's response. As you know, we have a tight discovery schedule, so your quick response is appreciated.

Also, we've now had a chance to review your document production. We note that every document is designated as Confidential. Can you explain the basis of your blanket designation?

Thanks. And again, have a good weekend.

Amanda

AMANDA T GAMBLIN, ATTORNEY AT LAW
amanda@gamblin-law.com
503.329.1858

**From:** Jason Rosell <jrosell@pszjlaw.com>
**Sent:** Friday, November 3, 2023 6:12 PM
**To:** Amanda Gamblin <Amanda@Gamblin-Law.com>; James W. Walker <jwalker@pszjlaw.com>; Cia H. Mackle <cmackle@pszjlaw.com>; Debra Grassgreen <dgrassgreen@pszjlaw.com>; Beth Levine <blevine@pszjlaw.com>; Miriam Manning <mmanning@pszjlaw.com>
**Cc:** Ori Katz <okatz@sheppardmullin.com>; Michael T. Garone (Other) <mgarone@schwabe.com>; Jeffrey S. Eden (Other) <jeden@schwabe.com>; Andrew Lee (Other) <ajlee@schwabe.com>; Matt Benz <mbenz@sheppardmullin.com>; Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Subject:** RE: ILWU Bankruptcy - Conferral Follow Up

Amanda – your understanding is wrong. We will respond in full after we have had an opportunity to discuss with our client.

Jason Rosell
Pachulski Stang Ziehl & Jones LLP
Phone: 917.747.9986 | Email: jrosell@pszjlaw.com

Jason,

Thanks for the call today. As promised, I'm providing my notes from our conferral. Let me know if there is anything missing, or if you disagree with anything as I've understood it.

I believe you agreed to follow up on the following:

- General objection No. 6 [Relating to Debtor's objection to produce information already produced in the District Court litigation]. The SPO in the ICTSI damages litigation prohibits the parties from using any documents or information marked under its terms outside of that litigation. Because Debtor will not reproduce any documents already produced in the damages litigation, we ask that you agree that documents produced subject to the SPO in the damages litigation may be used in the bankruptcy proceeding as well as the damages proceeding. ICTSI, of course, would agree to the same for documents it designated in the damages litigation.
- General objection No. 12. ICTSI understands that ILWU will not search the servers of agents, representatives, accountants, and attorneys. However, our position is that ILWU must request responsive documents from these parties because under the "legal-right test" those documents and information are in the control of ILWU. Please confirm ILWU will request responsive documents from agents, representatives, accountants, and attorneys.
- RFP 21. If we remove the words "various divisions of," "including but not limited to" and "or any other divisions, departments, or part of the ILWU" does that resolve ILWU's objection such that you will produce documents?
- RFP 22, 23, 29, 30, 34. ILWU objected to producing communications on the basis that it does not control any of the divisions (our word) or separate entities (ILWU's word) with which the ILWU may have communicated. We questioned whether you would search for emails that reside on the ILWU's servers from or to those other divisions/entities. Using as an example, an email from the electric company that would be in my email box and that I would have to produce if responsive to a subpoena. You were going to get back to us with respect to whether you would search for such communications.
- Similarly, you "assume" that any communications between the ILWU and the related divisions (our word) or separate entities (ILWU's word) would be only with the listed custodians. I asked you to confirm that none of these entities had correspondence on the requested topics with anyone other than William Adams, Robert Olvera, Jr., Paul Sam Kreutz, Edwin Ferris, or Wesley Furtado (deceased).
- RFP 24. If we revised it to read "Documents, including but not limited to communications, relating to the business or financial relationship between the ILWU and any other organization on which any ILWU officer was simultaneously an officer of that other organization" would that resolve ILWU's objections?
- RFP 32 asks for "bonding contracts." In Local 8's bankruptcy filing, it claims to have bonding contracts with ILWU. We do not know what these are, and it seems your client does not either. But you agreed to ask your client again with the additional information of where we found the term.
- RFP 35. You agreed to ask if there are any job descriptions dated before January 1, 2019. If they don't exist, we can use a different discovery tool. If they do exist, you will decide whether you will produce them and let us know.
- Search Terms for RFP 5, 10, 11 (and 12 ?), 13, 14 (?), and 15. We proposed several ways you might search for responsive documents. Using RFP 5 as an example, you could ask your client the last time the Constitution was amended and ask them to provide you emails about it. You could simultaneously search for emails to which the governing document is attached (or two which any amendments/redlines are attached) and then search for related emails. You could provide those documents to us from which we could provide search terms and additional custodians. But we cannot provide search terms in a vacuum. Your client is the one with the background, knowledge, understanding, and responsibility to apply a thoughtful approach to finding responsive documents. I understood that your intention is to only search the terms you identified in your table and only for the custodians you identified (William Adams, Robert Olvera, Jr., Paul Sam Kreutz, Edwin Ferris, or Wesley Furtado (deceased)). I also understood that you would consider our approach or to expanding your approach to ensure that ILWU fulfills its obligation to identify and produce responsive documents.

I would like to confirm the following. If my understanding is wrong, please let me know.

- General Objection 14. The ILWU does not know what we mean by, and has never heard of the following terms or anything like the following terms:
  - The Coast Longshore Division,
  - The Hawaii division (aka Locals 142, 100, 160, or the Hawaii Longshore Division),
  - ILWU International
  - ILWU National Headquarters
  - The Inland Boatman's Union (or Inland Boatman's Union of the Pacific or IBU or Marine Division, or Marine Division of the ILWU)
  - The mining division
  - The Panama Canal division
  - The Office Clerical division (or Office Clerical Unit)
  - The ILWU District Councils
- When the ILWU refuses to produce documents based on "any other applicable privilege or exemption" it is referring to attorney work product, attorney-client privilege, and common interest privilege (or non-waiver) and no other privilege or exemption.
- The only portion of the meeting minutes that you redacted is unrelated to the issues in this bankruptcy and was related to an attorney's advice.
- Where ILWU objects to our use of the term "All documents" the ILWU is making a diligent effort to identify and produce responsive documents but is not certifying that it has produced "all" documents related to the topic.

Thank you, Jason. We look forward to hearing from you soon so that we can ask the Court to resolve any remaining discovery disputes in a timely manner.

Have a good weekend,

Amanda

AMANDA T GAMBLIN, ATTORNEY AT LAW
amanda@gamblin-law.com
503.329.1858

*This message contains **confidential and/or privileged information** and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this email. You **cannot use or forward** any attachments in the email. Please **notify the sender immediately** by email if you have received this email by mistake and delete this email from your system. Thank you for your cooperation.*

**Exhibit 7**



Jason H. Rosell

415.217.5118
jrosell@pszjlaw.com

November 8, 2023

**LOS ANGELES**

10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES, CALIFORNIA 90067-4003
310.277.6910

**NEW YORK**

780 THIRD AVENUE, 34TH FL.
NEW YORK, NEW YORK 10017-2024
212.561.7700

**WILMINGTON**

919 NORTH MARKET STREET, 17TH FLOOR
P.O. BOX 8705
WILMINGTON, DELAWARE 19899-8705
302.652.4100

**HOUSTON**

440 LOUISIANA STREET, STE. 900
HOUSTON, TEXAS 77002-1062
713.691.9385

**SAN FRANCISCO**

ONE SANSOME STREET, 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

<u>**Via Email (amanda@gamblin-law.com)**</u>

Amanda Gamblin Attorney at Law LLC
Attention: Amanda Gamblin
404 SE Francis Street
Portland, Oregon 97202

     Re:    **In re International Longshore and Warehouse**
                  <u>**Union, Case No. 23-30662**</u>

Ms. Gamblin:

     I write in response to the questions posed in your emails of November 3 and November 4 regarding the discovery responses (the "<u>Responses</u>") of the International Longshore and Warehouse Union (the "<u>ILWU</u>" or the "<u>Debtor</u>") and our meet and confer discussions regarding the Responses. This letter should not be construed as a waiver of any general or specific objection made in the Responses.

I.    <u>**NOVEMBER 3 EMAIL**</u>

     <u>**General Objection No. 6**</u>: The Debtor will produce all responsive documents in its possession, custody, and control, regardless of whether they were previously produced in the District Court litigation.

     <u>**General Objection No. 12**</u>: The Debtor is continuing to analyze this issue.

     <u>**RFP No. 21**</u>: ICTSI's proposed amendment of RFP No. 21 does not resolve the Debtor's objection. Even with the amendment, RFP No. 21 is overly broad and burdensome as it seeks *all* documents and communications (emphasis added) and on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the term "business and financial relationship" is both overly broad and burdensome and vague and ambiguous.

4889-0158-4527.2 42339.002



**RFP Nos. 22, 23, 29, 30, and 34**:  The Debtor has searched the emails of the custodians identified using the search terms identified in my email of November 2, 2023.  The Debtor is not in a position to confirm that none of the entities listed in those requests had correspondence with anyone other than the listed custodians as that would require an inappropriately burdensome search of virtually all of the Debtor's electronically stored information.

**RFP No. 24**:  ICTSI's proposed amendment of RFP No. 24 does not resolve the Debtor's objection.  Even with the amendment, RFP No. 24 is overly broad and burdensome as it seeks *all* documents and communications (emphasis added) and on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, the term "business and financial relationship" is both overly broad and burdensome and vague and ambiguous.

**RFP No. 32**:  The bonding contract referenced on page 48 of Local 8's petition refers to Coast Longshore Division – not the ILWU.  The Debtor's response to RFP No. 32 remains the same.

**RFP No. 35**:  As of now, the Debtor has not found any job descriptions dated prior to January 1, 2019.  The Debtor would agree to responding to a supplemental interrogatory concerning the information sought in RFP No. 35.

**Search Terms**:  The Debtor will search the identified custodians using the previously identified search terms which constitute a "thoughtful approach to finding responsive documents."  We believe that your suggestion regarding search terms for RFP No. 5 will be covered by our proposed search term: "amend w/15 (constitution or bylaw)."

**Additional Issues Raised in November 3 Email**

**General Objection No. 14**:  Your understanding is incorrect.

**Privileges**:  The Debtor will not produce documents based upon any applicable privilege, including without limitation, attorney-client privilege, attorney work product, common interest privilege, and any other applicably privilege or exemption.


**Redactions**:  Confirmed. The portion of the produced meeting minutes that were redacted is unrelated to issues in the Debtor's bankruptcy case and was related to advice of counsel.

**"All Documents"**:  You are correct that where ILWU objects to ICTSI's use of the term "all documents," it is making a diligent effort to identify and produce responsive documents but is not certifying that it has produced "all" documents related to the request.

## II.     NOVEMBER 4 EMAIL

The following responds to your queries regarding confidentiality designations:

**Resolutions, Financial Documents, and Constitutional Amendments**:  Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure (the "Federal Rules") provides for the protection of "trade secret or other confidential research, development, or commercial information."  The ILWU's resolutions are internal documents that are not disseminated outside of the ILWU and/or the International Executive Board.  Accordingly, they are entitled to protection under this provision of the Federal Rules.  The financial documents that were designated as confidential, which include among other things, tax returns and audited financial statements, are not reported to the Department of Labor and are not publicly available.  As a result, they too are entitled to protection under Federal Rule 26(c)(1)(g).

With respect to the amendments contained in the production, once amendments are adopted, they are incorporated into the Constitution and become publicly available.  However, the amendments contained in the document production are proposed draft amendments that are subject to review and deliberation.  They are not publicly available and are also therefore properly designated as confidential.

**AEO Documents**:  The documents designated as "highly confidential" contain materials reflecting the ILWU's strategic plans and determinations and are akin to "trade secrets."  It is not appropriate that this information be shared other than with the professionals who represent parties in the Debtor's bankruptcy case.



Sincerely,

*Jason Rosell*
_____
Jason H. Rosell

cc:     Debra Grassgreen, Esq.
         James W. Walker, Esq.
         Beth E. Levine, Esq.
         Ori Katz, Esq.
         Jennifer Nassiri, Esq.
         Matt Benz, Esq.
         Michael T. Garone, Esq.
         Jeffrey S. Eden, Esq.
         Andrew Lee, Esq.

Case: 23-30662    Doc# 137    Filed: 01/02/24    Entered: 01/02/24 17:53:42    Page 68 of 148

**Exhibit 8**

| | |
|---|---|
| **From:** | Jennifer Nassiri |
| **Sent:** | Wednesday, December 6, 2023 1:35 PM |
| **To:** | Jason Rosell |
| **Cc:** | akornfeld@pszjlaw.com; Debra Grassgreen; okatz@sheppardmullin.com; Matt Benz; Amanda Gamblin; Eden, Jeffrey S.; Garone, Michael; Lee, Andrew J. |
| **Subject:** | ILWU-CLD responses to document requests |
| **Attachments:** | ILWU - ICTSI Subpoena to CLD (compiled).pdf |

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Jason,
Sorry we could not connect by phone earlier. Thought I would send the email to move things along.

As you know, ICTSI asked the Court to order ILWU to produce documents of or related to CLD. In your letter to the Court dated November 28, 2023 you stated that "ICTSI will thus receive the documents it seeks from the CLD, after the CLD's attorney has reviewed them for privilege and made determinations regarding confidentiality. As a practical matter, ICTSI's discovery requests to the CLD should address this issue as it will put the documents that ICTSI seeks in ICTSI's hands directly from the appropriate source. However, counsel for the Debtor will work cooperatively with counsel for the CLD and ICTSI to facilitate the flow of information to ICTSI."

On December 4, 2023, the Court ordered that "ILWU shall produce all responsive, non-privileged material within its possession or under its control in categories 1-5 above", which includes "material related to CLD" and "material pertaining to CLD stored on ILWU's servers or email system or in ILWU's offices."

ICTSI received CLD's RFP responses on December 5, 2023. CLD claims the ILWU is the appropriate entity to produce documents responsive to **RFP Nos. 1, 9, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 26, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 42, 43, 44, 45, 46, 48, 50, 51, and 52.** Because CLD takes the position that responsive documents are in ILWU's possession or control, please confirm that, consistent with the Court's order, ILWU has or will produce documents responsive to each of these requests.

For your convenience we have attached ICTSI's RFP to CLD. Happy to set up a call to discuss with the Schwabe team and your litigators if you think necessary.

Best,
Jen

**Jennifer L. Nassiri** | Partner
+1 424-288-5316 | direct

| | |
|---|---|
| **From:** | Jennifer Nassiri |
| **Sent:** | Wednesday, December 6, 2023 1:35 PM |
| **To:** | Jason Rosell |
| **Cc:** | akornfeld@pszjlaw.com; Debra Grassgreen; okatz@sheppardmullin.com; Matt Benz; Amanda Gamblin; Eden, Jeffrey S.; Garone, Michael; Lee, Andrew J. |
| **Subject:** | ILWU-CLD responses to document requests |
| **Attachments:** | ILWU - ICTSI Subpoena to CLD (compiled).pdf |

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Jason,
Sorry we could not connect by phone earlier. Thought I would send the email to move things along.

As you know, ICTSI asked the Court to order ILWU to produce documents of or related to CLD. In your letter to the Court dated November 28, 2023 you stated that "ICTSI will thus receive the documents it seeks from the CLD, after the CLD's attorney has reviewed them for privilege and made determinations regarding confidentiality. As a practical matter, ICTSI's discovery requests to the CLD should address this issue as it will put the documents that ICTSI seeks in ICTSI's hands directly from the appropriate source. However, counsel for the Debtor will work cooperatively with counsel for the CLD and ICTSI to facilitate the flow of information to ICTSI."

On December 4, 2023, the Court ordered that "ILWU shall produce all responsive, non-privileged material within its possession or under its control in categories 1-5 above", which includes "material related to CLD" and "material pertaining to CLD stored on ILWU's servers or email system or in ILWU's offices."

ICTSI received CLD's RFP responses on December 5, 2023. CLD claims the ILWU is the appropriate entity to produce documents responsive to **RFP Nos. 1, 9, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 26, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 42, 43, 44, 45, 46, 48, 50, 51, and 52.** Because CLD takes the position that responsive documents are in ILWU's possession or control, please confirm that, consistent with the Court's order, ILWU has or will produce documents responsive to each of these requests.

For your convenience we have attached ICTSI's RFP to CLD. Happy to set up a call to discuss with the Schwabe team and your litigators if you think necessary.

Best,
Jen

**Jennifer L. Nassiri** | Partner
+1 424-288-5316 | direct

+1 310-418-9536 | cell
JNassiri@sheppardmullin.com | Bio

## **Sheppard**Mullin

1901 Avenue of the Stars, Suite 1600
Los Angeles,  CA 90067-6017
+1 310-228-3700 | main
www.sheppardmullin.com | LinkedIn | Twitter

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**Exhibit 9**



PACHULSKI
STANG
ZIEHL &
JONES

December 11, 2023

Beth E. Levine
212.561.7720
blevine@pszjlaw.com

LOS ANGELES

10100 SANTA MONICA BLVD. 13TH FL.

LOS ANGELES, CALIFORNIA 90067-4003

310.277.6910


NEW YORK

780 THIRD AVENUE, 34TH FL.

NEW YORK, NEW YORK 10017-2024

212.561.7700


WILMINGTON

919 NORTH MARKET STREET, 17TH FLOOR,

P.O. BOX 8705

WILMINGTON, DELAWARE 19899-8705

302.652.4100


HOUSTON

440 LOUISIANA STREET, STE. 900

HOUSTON, TEXAS 77002-1062

713.691.9385


SAN FRANCISCO

ONE SANSOME STREET, 34TH FL. STE. 3430

SAN FRANCISCO, CALIFORNIA 94104

415.263.7000

**Via Email (JNassiri@sheppardmullin.com)**

Jennifer Nassiri
Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067

Re:   **In re International Longshore and Warehouse
      Union, Case No. 23-30662**

Dear Jennifer:

I write in response to your email of December 6 regarding the responses (the "CLD Responses") of the California Longshore Division (the "CLD") to ICTSI Oregon, Inc.'s requests for production. Based upon a review of the CLD Responses, the requests for production served by ICTSI Oregon, Inc. ("ICTSI") on the International Longshore and Warehouse Union (the "Debtor"), and the Debtor's responses to ICTSI's requests for production (the "Debtor Responses"), and upon our conversation with counsel for the CLD regarding the CLD Responses, the Debtor responds as follows:

For RFP Nos.[1] 1, 11, 12, 13, 14, 15, 17, 23, 31, 32, and 43, as indicated in the CLD Responses, responsive documents will be provided. For each of these requests, CLD responded that it "will produce non-privileged responsive documents . . . upon entry of a protective order covering third parties." CLD's counsel confirmed to us that they will produce documents responsive to those requests, and the Debtor is working cooperatively with counsel for the CLD to facilitate the flow of information to ICTSI.

The CLD Responses indicated that the CLD does not have documents in its possession, custody, or control responsive to RFP Nos. 9, 16, 21, 22, 26, 28, 44, 45, 46, and 48, and that the CLD would

---

[1] The "RFP No." refers to the requests listed in the November 21st subpoena to produce documents served upon the CLD.

SF 4865-6620-0982.4 42339.002

WWW.PSZJLAW.COM



not produce documents responsive to RFP Nos. 18, 29, 33, 34, 35, 36, 37, 38, 39, 42, 50, 51, and 52 because those requests seek information that is more appropriately obtained from the Debtor and is duplicative of the requests propounded to the Debtor by ICTSI.

With respect to RFP Nos. 9, 16, 18, 22, 26, 29, 33, 34, 35, 37, 38, 39, 42, 44, 45, 46, 48, 50, 51, and 52, and subject to any objections the Debtor asserted with respect to these requests, the Debtor has or will produce documents responsive to each of these requests as stated in the Debtor's Responses to analogous requests for production served upon it.

RFP Nos. 21, 28, and 36 correspond to Request for Production Nos. 31, 40, and 48 served upon the Debtor, respectively. The Debtor maintains its objections to these requests.

Very truly yours,

Beth E. Levine

cc:    Debra Grassgreen, Esq.
Jason H. Rosell, Esq.
James W. Walker, Esq.
Alan Kornfeld, Esq.
Ori Katz, Esq.
Matt Benz, Esq.
Amanda Gamblin, Esq.
Michael T. Garone, Esq.
Jeffrey S. Eden, Esq.
Andrew Lee, Esq.

**Exhibit 10**

| | |
|---|---|
| **From:** | Jennifer Nassiri |
| **Sent:** | Wednesday, December 13, 2023 12:57 PM |
| **To:** | Jason Rosell |
| **Cc:** | Debra Grassgreen; Alan Kornfeld; Cia H. Mackle; Beth Levine; James W. Walker; Garone, Michael; Amanda Gamblin; Lee, Andrew J.; Eden, Jeffrey S.; Chapman, Julie M.; okatz@sheppardmullin.com; Matt Benz |
| **Subject:** | ILWU/ICTSI-Discovery Issues |

Jason,

      As I mentioned yesterday, we wanted to follow up on a few matters set forth below in connection with our ongoing discovery efforts:

**Attachments to E-mails:** We wanted to confirm that, as your team is reviewing and producing e-mails, they confirm that attachments referenced in those emails are also produced.  Having to identify missing attachments on our end and asking you for production creates unnecessary delay.

**Privilege Log:**  When can we expect to see a privilege log of all withheld documents?

**Responses to RFPs:**

- RFP 31:  is ILWU withholding anything on any basis?
- RFP 32 :  is ILWU withholding anything on any basis?
- RFP 40 :  Is ILWU withholding anything on any basis?
- RFPS 41 to 47: I don't see that we have received anything on these yet but perhaps they came in with the belated bunch that were forwarded on Monday.  Is ILWU withholding anything on any basis?
- RFP 48 (Payment for ICTSI litigation expenses): Is ILWU withholding anything? On what basis?  What did ILWU do to search for these documents?  (CLD says it won't produce until we confer with ILWU)
- CLD RFP 36 which we believe corresponds to ILWU RFP 48 (documents and communications regarding litigation expenses): ILWU says CLD has these documents, CLD says ILWU has these documents.  Who will be producing them?

**Late production:**  We just wanted to raise our deep concern that more than 1200 of pages were not produced timely which we only noticed because of a gap in bates labels.  Cia did send them to us Monday but they were technically due a month ago and this delay may create more issues with our already truncated timeline.

**Additional Custodians/Search Terms:**  Certain of the produced e-mails reference **Russ Bargmann**. While we understand he retired last year, we would like you to run the designated searches through his emails as a custodian.  In addition, we want to make sure you are running searches using "**ICTSI**" as a search term across all ILWU document and e-mail systems.

**Historical Information on Formation of CLD:**  ILWU has produced some historical information predating 2016, for example, lease agreements, but then also objected to producing documents dated before September 30, 2016 regarding the formation of CLD.  Can you please confirm that ILWU will produce all historical information in its possession and control about CLD's formation and relationship to ILWU?

**Undisclosed Recipients:** We have come across several e-mails now which do not identify any to, cc, or bcc and instead state "Undisclosed recipients".  Please explain how/why that is and confirm

Gamblin Dec., Exhibit 10
Page 1 of 2

that the ILWU production identifies those who are copied, including BCCs.

**Attorney and Other Engagement Letters:**  We thank Cia for her follow up this morning on the attorney engagements.  We also would like additional retention agreements for certain expert witnesses and consultants retained for both the first and second trial as follows:  First Trial:  (1) Douglas Kidder, managing partner of OSKR, LLC; (2) William Finlay; (3) Daniel Smith, principal in Tioga Group; Second Trial: (1) Daniel Smith, principal in Tioga Group; (2) Geraldine Knatz; (3) Brad Julian, with Capstan Consulting.  Also, if ILWU or its law firms in the ICTSI Litigation retained other experts or consultants, such as non-testifying experts or jury consultants, we request copies of their engagement letters as well.

**Production E-mails:**  Please make sure to copy the Schwabe team including Julie Chapman on all discovery related emails, importantly, those emails where documents are being produced.  They are copied above.

We are happy to set up a call to walk through these notes if necessary.  We look forward to hearing from you.

Best,

Jen

**Jennifer L. Nassiri** | Partner
+1 424-288-5316 | direct
+1 310-418-9536 | cell
JNassiri@sheppardmullin.com | Bio

## **Sheppard**Mullin

1901 Avenue of the Stars, Suite 1600
Los Angeles,  CA 90067-6017
+1 310-228-3700 | main
www.sheppardmullin.com | LinkedIn | Twitter

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**Exhibit 11**



PACHULSKI
STANG
ZIEHL &
JONES

December 19, 2023

Beth E. Levine
212.561.7720
blevine@pszjlaw.com

**LOS ANGELES**

10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES, CALIFORNIA 90067-4003
310.277.6910

**NEW YORK**

780 THIRD AVENUE, 34TH FL.
NEW YORK, NEW YORK 10017-2024
212.561.7700

**WILMINGTON**

919 NORTH MARKET STREET, 17TH FLOOR,
P.O. BOX 8705
WILMINGTON, DELAWARE 19899-8705
302.652.4100

**HOUSTON**

440 LOUISIANA STREET, STE. 900
HOUSTON, TEXAS 77002-1062
713.691.9385

**SAN FRANCISCO**

ONE SANSOME STREET, 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

Via Email (JNassiri@sheppardmullin.com)

Jennifer Nassiri
Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067

Re:    **In re International Longshore and Warehouse Union, Case No. 23-30662**

Dear Jennifer:

I write in response to your email of December 13 regarding various discovery issues. The following are the answers to the questions that you posed.

**Responses to RFPs:**

- **RFP No. 31**: The Debtor has no documents from the period between September 30, 2016 and September 30, 2023 (the "Relevant Period") that are responsive to this Request in its possession, custody or control.

- **RFP No. 32**: The Debtor has no documents from the Relevant Period that are responsive to this Request in its possession, custody, or control.

- **RFP No. 40**: The Debtor objected to this Request on the bases, among others, that it mischaracterized the Adams Statement and assumed facts not in evidence with respect to that statement. On those bases, it did not conduct a search for responsive documents.

- **RFP No. 41**: The Debtor has no documents from the Relevant Period that are responsive to this Request in its possession, custody, or control.

SF 4894-1103-0935.2 42339.002


- **RFP No. 42:** The Debtor has produced the responsive non-privileged documents from the Relevant Period that are in its possession, custody, or control.

- **RFP Nos. 43-47:** The Debtor has no documents from the Relevant Period that are responsive to these Requests in its possession, custody, or control.

- **RFP No. 44:** The Debtor has no documents from the Relevant Period that are responsive to this Request in its possession, custody, or control.

- **RFP No. 48[1]:** The Debtor is withholding two documents responsive to this request on the basis of privilege. The emails of the Debtor's in-house counsel were searched for communications with counsel for CLD and those documents were then searched for documents responsive to this Request.

**Late Production:**

We do not see a reason for "deep concern" with respect to the documents bearing bates numbers 001497-2265 which we produced last week when you noted there was a gap in production numbers. On November 9, 2023, we had those documents ready for production to ICTSI, but we inadvertently failed to provide links to them to you. On November 10, 2023, we produced to you documents bearing bates numbers 002266-4948 via three links to those documents. Based upon our records, it appears that at least two and perhaps all three of those links were never downloaded by representatives of ICTSI prior to Monday, December 11.

On December 11, Matt Benz requested from us refreshed links for the documents previously transmitted on November 10, 2023. We provided the links at 3:17 p.m. on December 11, 2023, and ICTSI's representatives downloaded the material from the links at 3:26 and 3:27 p.m. At 4:16 p.m. on December 11, your firm emailed us regarding the gap in production numbers, and our firm provided those documents at 4:32 p.m.

---

[1] As you noted, this Request corresponds to RFP No. 36 directed to CLD.

Gamblin Dec., Exhibit 11
Page 2 of 4



Had the links sent on November 10, 2023 been downloaded that day or thereafter, you would have immediately noted the gap in numbers, and we would, of course, have resolved the issue as soon as having been made aware of it.

**Additional Custodians/Search Terms**:

The Debtor does not agree to adding Mr. Bargmann as a custodian. In early November, we indicated that searches of electronic files of the Debtor's executives would be conducted, those searches have been run, and responsive documents have been produced. You have not explained why these custodians are insufficient or why Mr. Bargmann's electronic files are necessary.

The Debtor has not used "ICTSI" as a search term across its electronic files.

**Historical Information on Formation of CLD**:

The Debtor will not be producing documents from prior to the commencement of the Relevant Period.

**Attorney and Other Engagement Letters**:

We are endeavoring to locate the engagement letters for the expert witnesses and consultants mentioned by name in your email and will produce them.

The Debtor will not produce engagement letters for non-testifying experts or consultants as that information is protected by the work-product doctrine.

**Undisclosed Recipients**:

In approximately fifteen emails, the recipients are indicted as "undisclosed recipients" because the specific custodian was bcc'ed. We are searching for and will produce emails indicating the "undisclosed recipients."

**Privilege Log**:

The Debtor will provide a privilege log upon completion of document production.

SF 4894-1103-0935.2 42339.002



PACHULSKI
STANG
ZIEHL &
JONES

International Longshore and Warehouse Union
December 19, 2023
Page 4

**Production E-Mails**:

As you requested, we will copy the Schwabe team on production and discovery-related emails.

Very truly yours,

*Beth E. Levine*

Beth E. Levine

cc:     Debra Grassgreen, Esq.
        Jason H. Rosell, Esq.
        James W. Walker, Esq.
        Alan Kornfeld, Esq.
        Ori Katz, Esq.
        Matt Benz, Esq.
        Amanda Gamblin, Esq.
        Michael T. Garone, Esq.
        Jeffrey S. Eden, Esq.
        Andrew Lee, Esq.

**Exhibit 12**

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Century City, California 90067
310.228.3700 main
310.228.3701 fax
www.sheppardmullin.com

Jennifer Nassiri
424.288.5316 direct
JNassiri@sheppardmullin.com

December 21, 2023

**VIA E-MAIL (jrosell@pszjlaw.com, blevine@pszjlaw.com)**

Jason Rosell & Beth Levine
Pachulski Stang Ziehl & Jones LLP
One Sansome Street, Suite 3430
San Francisco, California 94104

Re:     *In re International Longshore & Warehouse Union*, **Case No. 23-30662 (HLB)**

Dear Jason & Beth:

Thank you for your letters dated December 11, 2023 and December 19, 2023. We have the following items that remain outstanding, although it may not be an exhaustive list. We are still reviewing ILWU's production for completeness. Please let us know if you are available to confer Thursday December 21st after 10:30 am or Friday December 22nd before 10 am.

With respect to your letter dated December 11, 2023, I note that you define "CLD" to be the "California Longshore Division." I assume this is a typo, but wanted to be sure that you are talking about the ILWU Coast Longshore Division. If there is a California Longshore Division and Debtor is limiting its production to that division, please explain.

As you know, ICTSI sought the Court's assistance in compelling ILWU to produce documents responsive to ILWU RFPs 2, 3, 5, 6, 7, 9, 15, 16, 17, 18, 21, 22, 23, 24, 26, 28, 29, 30, 31, 32, and 33. The Court identified five broad categories into which these requests fall. Those categories are:

1.      Material relating to ILWU's Coast Longshore Division ("CLD") or other third-party obligations to pay ILWU's attorneys' fees and costs;

2.      Material pertaining to CLD stored on ILWU's servers or email systems or in ILWU's office;

3.      Material in the possession or under the control of ILWU's alleged "agents, representatives, accountants, and attorneys", whom ICTSI does not identify;

4.      Material relating to the business and financial relationships between ILWU and its political action fund ("PAF") and its title-holding company, Pacific Longshoremen's Memorial Association ("PLMA"); and

5.      Material relevant to other litigation in which ILWU is involved.

1

Gamblin Dec., Exhibit 12
Page 1 of 6

1.     **Material relating to ILWU's Coast Longshore Division ("CLD") or other third-party obligations to pay ILWU's attorneys' fees and costs.**

ILWU has refused to produce documents in response to ILWU RFPs 16 and 18, which fall into the first category.  Please confirm that ILWU has or will produce responsive documents.

With respect to ILWU RFPs 43 and 44, ILWU has concluded that no responsive documents exist.  Please disclose the search terms you used to find responsive documents.

With respect to ILWU RFPs 45 and 46 (which correspond to CLD RFPs 33 and 34), ILWU agreed to search for documents on behalf of CLD, which refused, and concluded no responsive documents belonging to either ILWU or CLD exist.  Please disclose the search terms you used to find responsive documents.

In response to ILWU RFP 48, ILWU refuses to produce documents belonging to either ILWU or CLD, claiming it is withholding two documents based on privilege.  We look forward to receiving your privilege log.  In the meantime, please provide the search terms you used to find responsive documents.

In response to ILWU RFPs 49 and 50 (which correspond to CLD RFPs 37 and 38), ILWU agreed to produce documents on its own behalf and on behalf of CLD. Please confirm responsive documents have been produced and disclose ILWU's search terms.

In response to request number 56, ILWU agreed to produce responsive documents. Please confirm responsive documents have been produced and disclose ILWU's search terms.

2.     **Material pertaining to CLD stored on ILWU's servers or email systems or in ILWU's office.**

With respect to documents falling into the second category that the Court has ordered ILWU to produce, in your December 11, 2023 letter ILWU agreed to produce documents in response to CLD RFPs 9, 16, 18, 22, 26, 29, 33, 34, 35, 37, 38, 39, 42, 45, 46, 48, 50, 51, and 52 subject to ILWU's objections to the corresponding requests to ILWU.

Based on the ILWU's objection to the corresponding ILWU RFP's, I understand that ILWU will produce documents responsive to CLD RFPs 26, 37, 38, 39, 42, 46, 48, 50, 51, and 52, which correspond to ILWU RFPs 37, 49, 50, 51, 55, 59, 61, 64, 65, and 66.  We appreciate the ILWU's cooperation.  Please provide ILWU's search terms used to identify responsive documents.

In response to CLD RFPs 29 and 35, which correspond to ILWU RFPs 41 and 47, I understand that ILWU has searched and found no responsive documents for either ILWU or CLD. Please provide ILWU's search terms used to identify responsive documents.

CLD RFPs 33 and 34 also fall into this category as well as the first category and are addressed above.  With respect to CLD RFP 45 (ILWU RFP 58) ILWU agrees to produce documents for CLD in its December 11th letter, subject to the ILWU's objections to the corresponding request. ILWU's response to the corresponding request is that no documents exist.

2

Please confirm that ILWU searched for CLD documents and identify the search terms used to identify documents for ILWU and CLD.

According to ILWU's December 11, 2023 letter, it will not produce documents responsive to ILWU RFP 31 (CLD RFP 21), which requests documents and communications between or among ILWU and any person or entity, including CLD, regarding indemnity and the ICTSI Litigation. However, this request clearly falls within the scope of the first and second categories of documents that the Court ordered ILWU to produce. Please explain the basis for withholding documents.

ILWU has also refused to produce documents responsive to ILWU RFP 40 (CLD RFP 28) requesting documents and communications related to consultations and sharing of information between officers of the Debtor and CLD officers as described in Exhibit A to the RFP. ILWU basesits objection on "assumes facts not in evidence" and that the request mischaracterizes Exhibit A because it does not reference officers of Debtor and CLD sharing information between each other, but rather discusses Debtor and CLD sharing information with other union officers and delegates. Regardless of how ILWU interprets Exhibit A, please provide documents and communications by or between officers of ILWU, officers of CLD and any other union's officers and delegates as described in Exhibit A.

Finally, as ordered by the Court, please produce any other documents "pertaining to CLD" including financial statements, payments to or from CLD, CLD payroll documents, debts, gifts, financial transactions, or property transactions with CLD, CLD meeting minutes, and any other documents that reflect the business or financial relationship between ILWU and CLD.

**3.      Material in the possession or under the control of ILWU's alleged "agents, representatives, accountants, and attorneys."**

With respect to the Court's third category, please confirm that ILWU has requested responsive documents from all financial advisors, attorneys, accountants, agents and representatives. And because ICTSI has no way of knowing the identity of all these parties, please provide a list of those from whom ILWU requested documents.

**4.      Material relating to the business and financial relationships between ILWU and its political action fund ("PAF") and its title-holding company, Pacific Longshoremen's Memorial Association ("PLMA").**

With respect to the Court's fourth broad category of documents, ILWU refused to produce documents in response to CLD RFP 16 and corresponding ILWU RFP 22 requesting documents related to the PAF. Likewise, ILWU refused to produce documents in response to CLD RFP 17 and corresponding ILWU RFP 23 requesting documents related to the PLMA. In response to both, ILWU referred ICTSI to its audits. Please confirm that ILWU has or will produce documents responsive to CLD RFP 16 and 17 and ILWU RFP 22 and 23 consistent with the Court's order. More broadly, and also consistent with the Court's order please confirm that ILWU has searched for documents related to the PAF including PAF financial statements, emails to or from PAF, payments to or from PAF, PAF payroll documents, debts, gifts, financial transactions, or property transactions with PAF, PAF meeting minutes, and any other documents that reflect the

business or finances of PAF.  Similarly, please confirm that ILWU has searched for and produced documents related to the PLMA including leases, PLMA financial statements, emails to or from PLMA, payments to or from PLMA, PLMA payroll documents, debts, gifts, financial transactions, or property transactions with PLMA, PLMA meeting minutes, and any other documents that reflect the business or finances of PLMA.

**5.      Material relevant to other litigation in which ILWU is involved.**

Our understanding is that ILWU has no documents responsive to ILWU RFPs 44 or 47 or CLD RFP 35.  Please provide the search terms you used to find responsive documents.  In addition, please search for anymaterial relevant to other litigation in which ILWU is involved, including who pays for such litigation, engagement letters for such litigation, agreements between ILWU and CLD related to such litigation, which entity has paid for any settlement, judgment, fine, assessment, penalty, or similar payment related to any such litigation.  And please provide the search terms you use to locate responsive documents.

**6.      Additional custodians and search terms.**

In your letter dated December 19, 2023, ILWU refused to run searches for the custodian Mr. Russ Bargmann because ICTSI had not explained why it is necessary.  As you know, ILWU only completed the majority of its document production on December 14th. ICTSI was unable to identify additional custodians until it reviewed documents and could see who was talking to each other about relevant topics.  Before reviewing documents ICTSI had never heard of Russ Bargmann, therefore, it was impossible to identify him as a custodian.  In reviewing documents, it became clear that Mr. Bargmann was instrumental in researching and supplying information and analysis to the ILWU officers.  However, the ILWU only ran searches of the officers' emails.  When Mr. Bargmann emailed the ILWU officers his research and analyses, along with relevant attachments, the officers would respond with things like "thank you, Russ," which is the only reason the email was identified by ILWU's searches.  Because Mr. Bargmann's email and attachments are one level down in the email ILWU produced, his attachments were not included in many of the officers' emails we received.   The same issue exists with Rebecca Contreras and Alexandra Jurczak.

After our review of the documents ILWU largely produced last week, and upon your invitation in your November 28, 2023 letter to the Court, we have identified the following additional custodians and search terms:

1.      *Additional Custodians*
    a.  Russ Bargmann
    b.  Lindsay Nichols
    c.  Rebecca Contreras
    d.  Leal Sundet
    e.  Alexandra Jurczak
    f.  Robin Walker
    g.  Wesley Furtado
    h.  The individuals identified in ILWU's Response to Interrogatory No. 2

4

      i.   Any staff who have corresponded with the officers listed in Interrogatory No. 2 about the topics identified RFP 16, 17, 18, 22, 24, 25, 26, 31, 32, and 33.

2.   *Additional Searches*
   a. ICTSI - Search all email and document systems not by custodian.
   b. (Oregon or Local 8 or Terminal 6 or T6 or T-6 or Portland) and (Court or judge or Simon).
   c. Emails from or to Haile Girma & Co or anyone affiliated with Haile Girma.
   d. Emails from or to The Henry Levy Group or anyone affiliated with it.
   e. Emails from or to S.E. Ownes & Company or anyone affiliated with it.
   f. (Attorney* or expert) and (fee* or cost*) and (CLD or Longshore).
   g. (damage! or settle! Or judgment! or (attorney* w/7 fee or cost*) or liability or liable) and CLD or Longshore.
   h. (indemni* or litigat* or lawsuit) and longshore* and (manage, supervise, direct, control, update, report).
   i. CLD or Longshore and (income or liability or finance* or profit and loss or balance sheet or revenue or dues or pro rata).
   j. PAF or Political Action Fund.
   k. PLMA or Pacific Longshoremen's Maritime Association.

Once you run these searches through all custodians, and all other searches through these custodians, please provide us with a sample of the results of each search. We will further refine search terms, if necessary. In addition, ICTSI maintains the position that limiting searches to certain custodians is unnecessary when ILWU has only one email server on which all emails reside. In fact, it is an antiquated encumbrance that only serves to undermine the thoroughness of ILWU's production. We invite you, therefore, to search the email server in its entirety for all search terms.

**7.    ILWU's late production.**

In your December 19, 2023 letter, you attempt to blame ICTSI for ILWU's failure to produce documents bearing bates number 001497-2265. Your facts and assumptions are incorrect. ILWU admittedly intended, but failed, to produce documents bates numbered 001497-2265 on November 9, 2023. On November 10, 2023, it produced documents which ICTSI immediately downloaded. ICTSI saw the gap in bates numbers, which was not particularly noteworthy. Parties often have gaps in bates numbering, for example, when they cull privileged or other documents after bates numbering has occurred. It was not until ILWU produced subsequent batches of documents that it became clear that ILWU had no other gaps in bates numbers. To ensure ICTSI was not at fault, Mr. Benz requested that ILWU refresh its prior links. Confirming its suspicion that ILWU may have missed a production, Mr. Benz immediately brought the issue to ILWU's attention. Because of ILWU's late production, for which ICTSI is not to blame, ICTSI has been delayed in offering custodians and search terms and otherwise reviewing ILWU's production for completeness, which is ongoing.

8.      **Miscellaneous.**

Finally, with respect to ILWU RFP 3 (requesting documents submitted to governmental authorities for obtaining tax or business identification numbers), were these withheld due to ILWU's artificial time limitation, or do they not exist?  If they were produced, please identify them by bates number.

Please let us know the soonest you are available to confer on the outstanding items.


Respectfully,


/s/ *Jennifer Nassiri*

Jennifer Nassiri
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


cc:      Ori Katz, Esq.
          Debra Grassgreen, Esq.

**Exhibit 13**

| | |
|---|---|
| **From:** | Amanda Gamblin |
| **Sent:** | Wednesday, December 27, 2023 3:02 PM |
| **To:** | 'Beth Levine'; Jennifer Nassiri |
| **Cc:** | 'Debra Grassgreen'; 'Jason Rosell'; 'James W. Walker'; 'Alan Kornfeld'; okatz@sheppardmullin.com; Matt Benz; Garone, Michael; Eden, Jeffrey S.; Lee, Andrew J.; Chapman, Julie M.; 'Brooke E. Wilson' |
| **Subject:** | RE: In re International Longshore and Warehouse Union, Case No. 23-30662 |

---

Hi Beth,

Thanks again for the call this afternoon to confer of various motions. Here are my notes, let me know if I've missed anything.

1. You plan to get us a response to our December 21, 2023 letter today or tomorrow. Thank you. As you know, our deadline to file a motion to compel is in two days. We need your response to the letter and your responses to the open issues below no later than noon tomorrow for us to be able to prepare the motion.
2. With respect to our motions for reconsideration, ILWU objects but agrees the parties have adequately conferred.
3. You will discuss with your client whether it will produce the Quickbooks data, or at least its general ledger. As we discussed, we do not have access to ILWU's auditor as he has refused to accept service or appear for a deposition. But even if he were available, creditors are entitled to evaluate ILWU's schedules and projections, which of course are predicated on past books. Quickbooks data would include accounts payable and accounts receivable with other related entities, detail regarding financial transactions with other related entities, and bank reconciliations in a native format. Without it, we cannot perform an evaluation of Debtor's audited financial statements, the financial relationships between the parties, or its projections.
4. With respect to RFP 3, you will confirm whether ILWU searched for pre-2016 organizational documents.
5. ILWU did not run Leal Sundet as a custodian because he left CLD in 2015. You would have produced emails with him if he was emailing with the custodians you limited your searches to and those emails were dated after September 30, 2016.
6. RFP 22 – you will produce PAF financial statements, and if there are any contracts, agreements or invoices, which would tend to show the business or financial relationship with PAF, you will talk to your client about producing those.
7. RFP 23 – With respect to PLMA you will look into whether there are any lease agreements other than the one produced which is pre-2016, or other agreements or invoices, which would tend to show the business or financial relationship with PLMA and talk to your client about producing those.
8. RFP 21 and others – Debtor will consider whether it will produce responsive documents related to the business and financial relationship between ILWU and other entities that remain operative into what ILWU defines as the Relevant Period. We used as an example,

documents that show the ILWU's grant of authority to CLD to act on its behalf that continue to operate as a grant of authority after September 20, 2016 even if dated before September 30, 2016.

9. RFP 40 – you asked that I clarify our request by using real words instead of referring to Exhibit A. Here's my attempt: Please provide documents and communications relating to the information that was "shared" by or between officers of ILWU, officers of CLD, and any other union's officers and delegates, as described on Exhibit A, p. 2, third full paragraph.

10. RFPs 16 – 18, 31, and 48. ILWU believes it has run searches that would encompass these requests and will send me the search terms.

11. Native documents. As promised, I've attached a list of the documents that we received in a pdf format but appear to be Excel spreadsheets that have been converted to PDF. We requested documents in native format. Please inquire whether this information exists in native format or explain why it is not available.

12. Debtor refuses to expand its search terms or expand the list of custodians as we requested in our December 21st letter.

13. Debtor has not provided a privilege log, is still working on it, but is unable to say when it will be provided. Even if we received it this afternoon, we would not have time to evaluate our objections and confer with Debtor before the December 29th deadline. We suggested that Debtor stipulate that ICTSI has 10-days from receipt of the privilege log to file a motion compel should it have any objections that cannot be resolved through conferral. You said you would get back to us.

Let me know if there is anything else.

Thanks,
Amanda

AMANDA T GAMBLIN, ATTORNEY AT LAW
amanda@gamblin-law.com
503.329.1858

**From:** Amanda Gamblin
**Sent:** Wednesday, December 27, 2023 8:58 AM
**To:** Beth Levine <blevine@pszjlaw.com>; Jennifer Nassiri <jnassiri@sheppardmullin.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; okatz@sheppardmullin.com; Matt Benz <mbenz@sheppardmullin.com>; Garone, Michael <mgarone@schwabe.com>; Eden, Jeffrey S. <jeden@schwabe.com>; Lee, Andrew J. <ajlee@schwabe.com>; Chapman, Julie M. <jchapman@schwabe.com>; Brooke E. Wilson <bwilson@pszjlaw.com>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Thank you. Does ILWU object to producing the Quickbooks data? If so, what is the basis for the objection?

Also, for your consideration before our conferral call this afternoon, we would like to confer on two motions for reconsideration.  The first requests that the Court reconsider the time limitation in its Order Regarding Discovery Dispute, Doc #97, with respect to documents relating to the formation of, or the grant of authority to, CLD or PLMA, or the diversion or transfer of assets to CLD or PLMA.  That includes RFPs 1, 2, 3, 4, 5, 25, 26, 27, 28, 29, 30, and 51.  If ILWU did not apply a date restriction to any of these requests and produced responsive documents, please let us know.  Also let us know whether ILWU objects to our motion.

The second motion requests that the Court reconsider its finding in the Second Order Regarding Discovery Dispute (Doc #105) that ICTSI acted in bad faith, engaged in misconduct, and abused the discovery procedures by failing to confer. Please let us know if ILWU objects.

Thanks, Beth.

AMANDA T GAMBLIN, ATTORNEY AT LAW
amanda@gamblin-law.com
503.329.1858

---

**From:** Beth Levine <blevine@pszjlaw.com>
**Sent:** Wednesday, December 27, 2023 8:47 AM
**To:** Amanda Gamblin <Amanda@Gamblin-Law.com>; Jennifer Nassiri <jnassiri@sheppardmullin.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; okatz@sheppardmullin.com; Matt Benz <mbenz@sheppardmullin.com>; Garone, Michael <mgarone@schwabe.com>; Eden, Jeffrey S. <jeden@schwabe.com>; Lee, Andrew J. <ajlee@schwabe.com>; Chapman, Julie M. <jchapman@schwabe.com>; Brooke E. Wilson <bwilson@pszjlaw.com>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Hi Amanda:

ILWU's Quickbooks have not been produced.

Regards,

Beth

**Beth Levine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7720

Tel: 212.561.7700 | Fax: 212.561.7777
blevine@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Amanda Gamblin <Amanda@Gamblin-Law.com>
**Sent:** Tuesday, December 26, 2023 10:04 PM
**To:** Jennifer Nassiri <jnassiri@sheppardmullin.com>; Beth Levine <blevine@pszjlaw.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; Ori Katz <okatz@sheppardmullin.com>; Matt Benz <mbenz@sheppardmullin.com>; Garone, Michael <mgarone@schwabe.com>; Eden, Jeffrey S. <jeden@schwabe.com>; Lee, Andrew J. <ajlee@schwabe.com>; Chapman, Julie M. <jchapman@schwabe.com>; Brooke E. Wilson <bwilson@pszjlaw.com>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Hi Beth,

It would also be helpful if you could tell us if you produced ILWU's Quickbooks in the huge document production on Friday late afternoon.  We have been unable to locate it, but we have no way of knowing what format it might be in.

Thanks,
Amanda

AMANDA T GAMBLIN, ATTORNEY AT LAW
amanda@gamblin-law.com
503.329.1858

---

**From:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Sent:** Tuesday, December 26, 2023 6:45 PM
**To:** Beth Levine <blevine@pszjlaw.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; okatz@sheppardmullin.com; Matt Benz <mbenz@sheppardmullin.com>; Amanda Gamblin

<[Amanda@Gamblin-Law.com](mailto:Amanda@Gamblin-Law.com)>; Garone, Michael <[mgarone@schwabe.com](mailto:mgarone@schwabe.com)>; Eden, Jeffrey S. <[jeden@schwabe.com](mailto:jeden@schwabe.com)>; Lee, Andrew J. <[ajlee@schwabe.com](mailto:ajlee@schwabe.com)>; Chapman, Julie M. <[jchapman@schwabe.com](mailto:jchapman@schwabe.com)>; Brooke E. Wilson <[bwilson@pszjlaw.com](mailto:bwilson@pszjlaw.com)>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Beth,
If possible, we would like to have a call with you tomorrow sometime between 12-130 pacific to discuss our letter.   It would be great if you could send us your written response before then but we should speak regardless given our deadline on the motion to  compel.  We really would like to be able to narrow the issues as soon as possible.

Best,
Jen

**Jennifer Nassiri** | Partner
**Sheppard**Mullin | Los Angeles
+1 424-288-5316 | ext. 15316
+1 310-418-9536 | cell

---

**From:** Beth Levine <[blevine@pszjlaw.com](mailto:blevine@pszjlaw.com)>
**Sent:** Tuesday, December 26, 2023 2:12 PM
**To:** Jennifer Nassiri <[JNassiri@sheppardmullin.com](mailto:JNassiri@sheppardmullin.com)>
**Cc:** Debra Grassgreen <[dgrassgreen@pszjlaw.com](mailto:dgrassgreen@pszjlaw.com)>; Jason Rosell <[jrosell@pszjlaw.com](mailto:jrosell@pszjlaw.com)>; James W. Walker <[jwalker@pszjlaw.com](mailto:jwalker@pszjlaw.com)>; Alan Kornfeld <[akornfeld@pszjlaw.com](mailto:akornfeld@pszjlaw.com)>; Ori Katz <[OKatz@sheppardmullin.com](mailto:OKatz@sheppardmullin.com)>; Matt Benz <[mbenz@sheppardmullin.com](mailto:mbenz@sheppardmullin.com)>; Amanda Gamblin <[amanda@gamblin-law.com](mailto:amanda@gamblin-law.com)>; Michael Garone <[mgarone@schwabe.com](mailto:mgarone@schwabe.com)>; Jeffrey S. Eden (Other) <[jeden@schwabe.com](mailto:jeden@schwabe.com)>; Andrew Lee (Other) <[ajlee@schwabe.com](mailto:ajlee@schwabe.com)>; Chapman, Julie M. <[JChapman@schwabe.com](mailto:JChapman@schwabe.com)>; Brooke E. Wilson <[bwilson@pszjlaw.com](mailto:bwilson@pszjlaw.com)>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Jen:

Thank you for your email which we are reviewing.

I hope you had a nice holiday weekend as well.

We are working on a response to your letter of December 21, and we will provide one as soon as we are able.

Regards,

Beth

**Beth Levine**
Pachulski Stang Ziehl & Jones LLP

Direct Dial: 212.561.7720
Tel: 212.561.7700 | Fax: 212.561.7777
blevine@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Sent:** Tuesday, December 26, 2023 4:34 PM
**To:** Beth Levine <blevine@pszjlaw.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; Ori Katz <okatz@sheppardmullin.com>; Matt Benz <mbenz@sheppardmullin.com>; Amanda Gamblin <amanda@gamblin-law.com>; Michael Garone <mgarone@schwabe.com>; Jeffrey S. Eden (Other) <jeden@schwabe.com>; Andrew Lee (Other) <ajlee@schwabe.com>; Chapman, Julie M. <JChapman@schwabe.com>; Brooke E. Wilson <bwilson@pszjlaw.com>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Beth,

Hope you enjoyed the holiday weekend.

Thank you for the below email of December 21, 2023 clarifying that Debtor intended your email of December 19, 2023 to convey a reformulation of Debtor's former RFPs Nos. 3 and 4. For the avoidance of doubt, pursuant to the Court' amended scheduling order (Dkt 116) to which Debtor has insisted on strict adherence, the last day for any party to serve discovery requests was December 1, 2023. Thus, Debtor is attempting to impose new discovery requests nearly three weeks after the Court's Deadline to Serve Discovery Requests. Debtor's attempted service of these Requests is therefor in violation of the Court's scheduling order.

In an effort to promote efficiency and transparency, ICTSI Oregon Inc. (ICTSI) offers the following response to the reformulated RFP 3 and 4. Please note that the following response from ICTSI is not intended to waive any objections to Debtor's former RFPs 3 and 4, nor waive any objections to Debtor's reformulation of those requests including the timeliness of those requests, nor does ICTSI accept any obligation to respond to those reformulated requests.

As ICTSI understands Debtor's new requests for production as stated in your December 19 email, Debtor now seeks all non-privileged documents and communications in ICTSI's

possession, custody, or control relating to the business or financial relationship between or among the ILWU and CLD during the Relevant Period and all non-privileged documents and communications in ICTSI's possession, custody, or control relating to the business or financial relationship between or among the ILWU and the PLMA during the Relevant Period.

In response to the reformulated discovery requests above, ICTSI incorporates by this reference all of its responses and objections to Debtor's RFPs 3 and 4 served December 15, 2023, including it General Objections. Without waiving any of its objections, ICTSI responds that it has no additional responsive non-privileged documents created during the Relevant Period other than those already in Debtor's possession, custody or control.

Please let us know if you have any questions or wish to confer by phone on this issue. In addition, when can we expect a response to our discovery letter dated December 21. As you know we have a motion to compel deadline approaching.

Best,
Jen

**Jennifer Nassiri** | Partner
**Sheppard Mullin** | Los Angeles
+1 424-288-5316 | ext. 15316
+1 310-418-9536 | cell

**From:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Sent:** Thursday, December 21, 2023 7:53 PM
**To:** Beth Levine <blevine@pszjlaw.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; Ori Katz <OKatz@sheppardmullin.com>; Matt Benz <mbenz@sheppardmullin.com>; Amanda Gamblin <amanda@gamblin-law.com>; Michael Garone <mgarone@schwabe.com>; Jeffrey S. Eden (Other) <jeden@schwabe.com>; Andrew Lee (Other) <ajlee@schwabe.com>; Chapman, Julie M. <JChapman@schwabe.com>; Brooke E. Wilson <bwilson@pszjlaw.com>
**Subject:** Re: In re International Longshore and Warehouse Union, Case No. 23-30662

Beth,
Given the holiday weekend, let us confer internally and get back to you Tuesday.

Best,
Jen

> On Dec 21, 2023, at 5:31 PM, Beth Levine <blevine@pszjlaw.com> wrote:

> Jennifer:

Upon receipt of ICTSI's Responses and Objections to the Debtors' RFPs, we attempted in good faith to modify Request Nos. 3 and 4, and as set forth in the email below, modified the Requests to comport with similar requests served on the Debtor by ICTSI.

Can you please confirm that it is ICTSI's position that it will not even entertain those requests. Or if ICTSI has objections to Request Nos. 3 and 4 as modified, please let us know what they are.

Regards,

Beth

**Beth Levine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7720
Tel: 212.561.7700 | Fax: 212.561.7777
blevine@pszjlaw.com
vCard | Bio | LinkedIn

<image001.jpg>

<image002.png>

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Sent:** Wednesday, December 20, 2023 3:20 PM
**To:** Beth Levine <blevine@pszjlaw.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; Ori Katz <okatz@sheppardmullin.com>; Matt Benz <mbenz@sheppardmullin.com>; Amanda Gamblin <amanda@gamblin-law.com>; Michael Garone <MGarone@schwabe.com>; Jeffrey S. Eden (Other) <JEden@SCHWABE.com>; Andrew Lee (Other) <AJLee@SCHWABE.com>; Chapman, Julie M. <JChapman@SCHWABE.com>; Brooke E. Wilson <bwilson@pszjlaw.com>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Beth:

Thank you for your email regarding ICTSI's responses to the Debtor's requests for the production of documents (the "Requests") and specifically with respect to ICTSI's responses to Request Nos. 3 and 4.

To be clear, those particular requests ask for all documents and communications *relating to ICTSI's understanding* of the relationship between Debtor on the one hand and CLD and PLMA on the other during the Relevant Period (emphasis added.)

The requests served by Debtor are different- and more problematic- than the requests in your email below. ICTSI responded to the requests as served and stands on its objections as stated in its responses.

In short, Debtor is already in possession of all responsive documents and communications received by ICTSI during the Relevant Period as such documents and communications were either generated by Debtor, produced in this action, or are available in the public domain. To the extent certain documents may have informed ICTSI's understanding of those relationships during the Relevant Period, those documents were provided to ICTSI by its legal counsel in conjunction with the advice of its counsel. The selection of those documents is attorney work product. ICTSI did not come in the possession, custody or control of responsive documents during the Relevant Period other than by these privileged means described herein. Thus, even if there were an obligation to produce documents in response to requests 3 and 4 as worded, there are no non-privileged documents to produce.

If you think a phone call would be helpful please let us know and we would be happy to set up a time discuss this further.

Best,
Jen

**Jennifer Nassiri** | Partner
**Sheppard**Mullin | Los Angeles
+1 424-288-5316 | ext. 15316
+1 310-418-9536 | cell

**From:** Beth Levine <blevine@pszjlaw.com>
**Sent:** Tuesday, December 19, 2023 2:55 PM
**To:** Jennifer Nassiri <JNassiri@sheppardmullin.com>
**Cc:** Debra Grassgreen <dgrassgreen@pszjlaw.com>; Jason Rosell <jrosell@pszjlaw.com>; James W. Walker <jwalker@pszjlaw.com>; Alan Kornfeld <akornfeld@pszjlaw.com>; Ori Katz <OKatz@sheppardmullin.com>; Matt Benz <mbenz@sheppardmullin.com>; Amanda Gamblin <amanda@gamblin-law.com>; Michael Garone <MGarone@schwabe.com>; Jeffrey S. Eden (Other) <JEden@SCHWABE.com>; Andrew Lee (Other) <AJLee@SCHWABE.com>; Chapman, Julie M. <JChapman@SCHWABE.com>; Brooke E. Wilson <bwilson@pszjlaw.com>
**Subject:** RE: In re International Longshore and Warehouse Union, Case No. 23-30662

Jennifer:

I write regarding ICTSI's responses to the Debtor's requests for the production of documents (the "Requests") and specifically with respect to ICTSI's responses to Request Nos. 3 and 4.

We understand that ICTSI is objecting to these Requests on several grounds including vagueness, attorney-client privilege, and the attorney work product doctrine.

To be clear, in Request No. 3 the Debtor seeks all non-privileged documents and communications in ICTSI's possession, custody, or control relating to the business or financial relationship between or among the ILWU and CLD during the Relevant Period. Similarly, for Request No. 4, the Debtor seeks all non-privileged documents and communications in ICTSI's possession, custody, or control relating to the business or financial relationship between or among the ILWU and the PLMA during the Relevant Period.

These Requests are akin to ICTSI's requests for production nos. 21 and 23 and to ICTSI's interrogatories nos. 10 and 17 (set forth below). The Debtor produced documents responsive to and answered the below requests and interrogatories, and we request that ICTSI does the same.

**REQUEST FOR PRODUCTION NO. 21:** All documents, including but not limited to communications, related to the business or financial relationship between or among the various divisions of the ILWU including but not limited to, ILWU National Headquarters, the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, or any other division, department, or part of the ILWU.

**REQUEST FOR PRODUCTION NO. 23:** All documents, including but not limited to communications, related to the business or financial relationship between or among the ILWU and the Pacific Longshoremen's Memorial Association.

**INTERROGATORY NO. 10:** Describe ILWU's understanding about the following entities or organizations, the relationship between each entity or organization and the ILWU, and the name that ILWU would like parties in this matter to use when referring to each entity or organization to ensure a common understanding:

1. The Coast Longshore Division,
2. The Hawaii division (aka Locals 142, 100, 160, or the Hawaii Longshore Division),
3. ILWU International
4. ILWU National Headquarters
5. The Inland Boatman's Union (or Inland Boatman's Union of the Pacific or IBU or Marine Division, or Marine Division of the ILWU)
6. The mining division
7. The Panama Canal division

8. The Office Clerical Division (or Office Clerical Unit or OCU)
9. The ILWU District Councils

**INTERROGATORY NO. 17:** Describe ILWU's knowledge and understanding of the business or other activities of the PLMA.

Finally, please let us know when we can expect a privilege log.

Please let us know if you would like to set up a call to discuss the matter raised above.

Regards,

Beth


**Beth Levine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7720
Tel: 212.561.7700 | Fax: 212.561.7777
blevine@pszjlaw.com
vCard | Bio | LinkedIn

<image001.jpg>

<image002.png>

Los Angeles | New York | Wilmington, DE | Houston | San Francisco


<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**Exhibit 14**


PACHULSKI
STANG
ZIEHL &
JONES

December 28, 2023

Beth E. Levine
212.561.7720
blevine@pszjlaw.com

**LOS ANGELES**

10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES, CALIFORNIA 90067-4003
310.277.6910

**NEW YORK**

780 THIRD AVENUE, 34TH FL.
NEW YORK, NEW YORK 10017-2024
212.561.7700

**WILMINGTON**

919 NORTH MARKET STREET, 17TH FLOOR,
P.O. BOX 8705
WILMINGTON, DELAWARE 19899-8705
302.652.4100

**HOUSTON**

440 LOUISIANA STREET, STE. 900
HOUSTON, TEXAS 77002-1062
713.691.9385

**SAN FRANCISCO**

ONE SANSOME STREET, 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

<u>**Via Email (JNassiri@sheppardmullin.com)**</u>

Jennifer Nassiri
Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067

     Re:    **In re International Longshore and Warehouse Union, Case No. 23-30662**

Dear Jennifer:

     I write in response to your letter of December 21, 2023 and to follow up on some of the issues discussed in our December 27, 2023 meet and confer session.[1]

     As you are aware, to date, the Debtor has responded to four sets of requests for production served by ICTSI (containing 77 separate document requests), pursuant to which it has produced over 36,000 pages of documents. The Debtor has responded to three sets of interrogatories (containing 18 separate interrogatories) served by ICTSI, and it has confirmed the scheduling of four of its representatives and its 30(b)(6) designee, with depositions to begin on January 16, 2024 in the event that the mediation scheduled for January 5 and January 8, 2024 does not result in a resolution of the parties' disputes. To date, ICTSI has declined to produce any documents responsive to the Requests for Production propounded to it by the Debtor.

---

[1] Those issues are discussed in greater detail in the email accompanying this letter.

4864-5612-3033.3 42339.002


The following is the Debtor's specific responses to the inquiries posed in your December 21, 2023 letter.[2]

1.  **Material relating to ILWU's Coast Longshore Division ("CLD") or other third-party obligations to pay ILWU's attorneys fees and costs.**

RFP Nos. 16 and 18:  As discussed in our meet and confer, RFP Nos. 16 and 18 were covered by the searches that were run for Nos. 50 and 56 as set forth below.  We have produced the responsive non-privileged documents that appeared in those searches.[3]

RFP Nos. 43 and 44:  With respect to RFP No. 43, the emails of the Debtor's in-house counsel were searched for communications with counsel for CLD, and those documents were then searched for documents responsive to this RFP.  There were no search terms applied as each email capturing those communications was individually reviewed for responsiveness.

With respect to RFP No. 44, the following search terms were used: "Coast NEAR(10) (attorney OR counsel OR lawyer NEAR(5) fee OR expense)."

RFP Nos. 45 and 46:  With respect to both of these RFPs, the emails of the Debtor's in-house counsel were searched for communications with counsel for CLD, and those documents were then searched for documents responsive to the RFPs.  There were no search terms applied as each email capturing those communications was individually reviewed for responsiveness.

RFP No. 48:  With respect to this RFP, as noted in my letter of December 19, 2023, the emails of the Debtor's in-house counsel

---

[2] For convenience, we are using the same headings that were used in your letter.  Our doing so should not be construed as our agreement with the characterizations contained in those headings.

[3] ICTSI did not respond to the Debtor's prior invitations to discuss its search terms, instead waiting until the day before the close of fact discovery to inquire as to the terms the Debtor used.  Although in this letter the Debtor is providing the search terms that it used in searching for documents responsive to ICTSI's RFPs, this should not be construed as an agreement to conduct further searches at this late date. The Debtor reserves all rights in this regard.

4864-5612-3033.3 42339.002
Case: 23-30662    Doc# 137    Filed: 01/02/24    Entered: 01/02/24 17:53:42    Page 104 of 148



were searched for communications with counsel for CLD, and those documents were then searched for documents responsive to this RFP. There were no search terms applied as each email capturing those communications was individually reviewed for responsiveness.

RFP Nos. 49 and 50: With respect to RFP No. 49, the emails of the Debtor's in-house counsel were searched for communications with counsel for CLD, and those documents were then searched for documents responsive to this RFP. There were no search terms applied as each email capturing those communications were individually reviewed was individually reviewed for responsiveness.

With respect to RFP No. 50, the following search terms were used: ("fund" OR pay* OR "satisfy") NEAR(10) (("attorney" NEAR(5) "fee" OR "expense") OR "liability" OR "judgment" OR "debt" OR "obligation"). We have produced the responsive non-privileged documents that contain those search terms.

RFP No. 56: With respect to this RFP, the following search terms were used: "("fund" OR pay* OR "satisfy") NEAR(10) (("attorney" NEAR(5) "fee" OR "expense") OR "liability" OR "judgment" OR "debt" OR "obligation")." We have produced the responsive non-privileged documents that contain those search terms.

## 2. Material pertaining to CLD stored on ILWU's servers or email systems or in ILWU's office.

The following table shows the search terms for the ILWU RFPs listed in the second and third paragraphs of this section of your letter to the extent that search terms were used; some RFPs did not require search terms.

| ILWU RFP Number | Search Terms |
|---|---|
| 37 | ("tax" NEAR(10) (penalt* OR interest) OR ((FEC OR "Federal Election Commission") NEAR(10) ("ADR 1028" OR "late filing" OR penalt* OR interest OR "late fee")) OR ("Employment development department" OR edd) NEAR(10) ("late filing" OR penalt* OR interest OR "late fee")) |

4864-5612-3033.3 42339.002



| ILWU RFP Number | Search Terms |
|---|---|
| | and<br><br>"form 5500" NEAR(10) ("late filing" OR penalt* OR interest OR "late fee"). |
| 41 | (Update NEAR(10) (president NEAR(5) litigation OR ICTSI)) OR ((Coast NEAR(5) delegate) NEAR(5) (litigation OR ICTSI OR trial)). |
| 47 | No search terms. The emails of the Debtor's in-house counsel were searched for communications with counsel for CLD, and those documents were then searched for documents responsive to this RFP. There were no search terms applied as each email capturing those communications was individually reviewed. |
| 49 | *See* response above regarding this RFP. |
| 50 | ("fund" OR pay* OR "satisfy") NEAR(10) (("attorney" NEAR(5) "fee" OR "expense") OR "liability" OR "judgment" OR "debt" OR "obligation") |
| 51 | No search terms applied. The Debtor's books and records were searched for payments made between the parties mentioned in RFP No. 51, and responsive documents were produced. |
| 55 | No search terms applied. Pay stubs were produced. |
| 59 | "Coast" NEAR(15) ("respondent" OR "defendant" OR "plaintiff" OR "named party") AND (ray.ortiz@ilwu.org OR leal.sundet@ilwu.org OR |



| ILWU RFP Number | Search Terms |
|---|---|
| | cam.williams@ilwu.org OR frank.poncedeleon@ilwu.org |
| 61 | No search terms applied. The Debtor produced the Pension Plan. |
| 64 | There were no search terms. The Debtor produced the relevant invoices. |
| 65 | "Local 142" NEAR(10) ("lease" OR "atkinson" OR "office space"). |
| 66 | No search terms were applied. The Debtor searched minutes and board material of the IEB and responsive non-privileged documents were produced. There were no presentations to others. |

With respect to your inquiry regarding ILWU RFP No. 58, the emails of the Debtor's in-house counsel were searched for communications with counsel for CLD, and those documents were then searched for documents responsive to this RFP.

With respect to your inquiry regarding ILWU RFP No. 31, as set forth in the Debtor's objection, this RFP seeks information covered by the attorney-client privilege, the attorney work-product doctrine and the common interest doctrine. There are no responsive non-privileged documents.

With respect to your comment regarding ILWU RFP No. 40, the Debtor interposed its objection to this RFP on November 22, 2023. We do not think it is appropriate to discuss reformulated requests at this late date after the time to serve written discovery has run.[4] That said, we have reviewed the reformulated request contained in Amanda's email of December 27, and this request is covered by

---

[4] Indeed, this is the position that ICTSI took in your email of December 26.


the search terms run for RFP No. 41 which are set forth in the chart above.

We do not read the Court's *Second Order Regarding Discovery Dispute* [Docket No. 105] (the "<u>Second Discovery Order</u>") as requiring the Debtor to produce "financial statements, payments to or from CLD, CLD payroll documents, debts, gifts, financial transactions with CLD, CLD meeting minutes, and any other documents that reflect the business or financial relationship between ILWU and CLD" if those documents were not specifically requested in the four sets of document requests propounded to the Debtor by ICTSI.  As you have noted, the time for service of discovery requests passed on December 1, 2023.

3. **Material in the possession or under the control of ILWU's alleged "agents, representatives, accountants, and attorneys."**

The Debtor retained Paladin Management Group ("<u>Paladin</u>") as its financial advisor in its bankruptcy case.  We requested and reviewed Paladin's documents relating to this engagement and have produced the responsive documents.

As you are aware, the Debtor's auditor is Haile Girma & Co. ("<u>HGC</u>").  We understand that ICTSI has sought documents and testimony from HGC, and we are attempting to facilitate that production.  In addition, we have produced Rebecca Contreras's extensive communications with HGC regarding each quarterly audit during the relevant period.

We are in contact with the Henry Levy Group and S.E. Owens & Co. – each of these firms have provided accounting services to the Debtor – and we are working to ascertain whether they have any responsive non-privileged documents in their files.

In addition to our own firm which was retained by the Debtor as bankruptcy counsel, as you know, at various times, the Debtor was represented by various law firms in connection with underlying ICTSI litigation.  We are not aware of any non-privileged responsive documents in those firms' files that would not also be in the Debtor's files, and we do not believe that the burden that would result from searching such documents, the overwhelming majority of which are protected by the attorney-client privilege and the work-product and


common-interest doctrines, is appropriate or proportionate in light of the matters at issue in this contested matter.

4.  **Material relating to the business and financial relationships between ILWU and the ILWU Political Action Fund ("PAF") and the Pacific Longshoremen's Memorial Association ("PLMA")**

With respect to documents responsive to ILWU RFF No. 22 ("All documents, including but not limited to communications, related to the business or financial relationship between or among the ILWU and the ILWU Political Action Fund."), ICTSI's demand in your December 21 letter that the Debtor produce and search for "documents related to the PAF, including PAF financial statements, emails to or from PAF, payments to or from PAF, PAF payroll documents, gifts, financial transactions or property transactions with PAF, PAF meeting minutes, and any other documents that reflect the business or finances of PAF" goes far beyond the scope of RFP No. 22 and the Court's Second Discovery Order. As discussed in our meet and confer meeting on Wednesday, the Debtor will produce the PAF's financial statements.

With respect to ILWU RFP No. 23 ("All document, including but not limited to communications, related to the business or financial relationship between or among the ILWU and the Pacific Longshoremen's Memorial Association"), as a threshold matter, the Debtor has facilitated PLMA's responses to the subpoena served upon it by ICTSI. Again, the Debtor believes that ICTSI's demand that it produce "documents relating to the PLMA, including leases, PLMA financial statements, emails to or from PLMA, payments to or from PLMA, PLMA payroll documents, debts, gifts, financial transactions, or property transactions with the PLMA, PLMA, meeting minutes, and other documents that reflect the businesses or finances of PLMA" is beyond the scope of both ILWU RFP No. 23, and the Second Discovery Order. The Debtor has produced the agreements between itself and PLMA that are in its possession, custody, and control.

5.  **Material relevant to other litigation in which ILWU is involved.**

Please see above for the search terms uses for ILWU RFP Nos. 44 and 47. The Debtor will not agree to conduct additional searches

Case: 23-30662    Doc# 137    Filed: 01/02/24    Entered: 01/02/24 17:53:42    Page 109 of 148


for material that was not previously requested in ICTSI's four sets of requests for production. If there are specific previously propounded RFPs relating to other litigation in which ILWU is involved, please identify those RFPs and we will review the Debtor's responses to those specific requests.

**6.      Additional custodians and search terms.**

As you are aware, the Debtor shared both its search terms and proposed custodians shortly after it received ICTSI's first set of document requests, and ICTSI declined to engage on that topic. The Debtor conducted its searches of its executives' emails using the proposed search terms and has produced responsive documents on a rolling basis. While it is correct, that in our November 28 letter to the Court, we stated that "if ICTSI has a specific proposal . . . it should share its proposal with the Debtor and the Debtor will work with ICTSI to respond," this so-called invitation" was not intended to and should not constitute an agreement to reopen the Debtor's custodians and search terms on the day before fact discovery closed and after ICTSI's failure to engage on this topic until December 21. The Debtor will not agree to conduct the additional searches or search the additional custodians listed in your December 21 letter at this late date.

With respect to certain of the custodians mentioned in your letter, the following, although not an exhaustive list of issues should be noted:

- You have certainly been aware of Ms. Contreras's existence since at least November 1, 2023, the date in which you referenced her in RFP No. 35. Moreover, although ICTSI failed to previously raise Ms. Contreras as potential custodian, the Debtor has produced her extensive email correspondence with HGC concerning its quarterly audits of the Debtor.

- Leal Sundet was a CLD officer whose tenure at CLD ceased in 2015.

- Alexandra Jurczak was an executive assistant at the Debtor and is now the senior policy advisor at the Debtor.


- Wesley Furtado's emails were searched for the period during which he served as International Vice-President Hawaii of the Debtor, and responsive non-privileged documents were produced.

- You have been aware of the 30 plus individuals identified in the Debtor's Response to Interrogatory No. 2 since November 1, 2023, the date on which the Response was served, and of the additional individuals identified in the Debtor's Amended Response since it was served on December 6, 2023. Moreover, as we indicated to you during our meet and confer on November 2, 2023, while the Debtor's officers have ILWU emails addresses, its Executive Board Members do not. In any event, your suggestion that the Debtor now engage in searches of thirty or more additional custodians, is not only untimely, but also clearly in violation of the mandate of FRCP 26(b)(1) that discovery be proportionate to the needs of this case.

**7.     ILWU's "late" production.**

Your review of documents was in no way impacted or delayed by the missing production links. If the missing links had been included in Jason's email of November 10, 2023, you would not have downloaded those prior to December 11, 2023, just as you failed to download the documents in the links that *were* provided in that email, until the refresh request was made on December 11, 2023.

In any event, of the 71 documents contained in the production bearing bates numbers 001497-2256, 44 of them were provided in other production sets, as attachments to emails or otherwise.[5] These 27 "new" documents consist of convention rules, policy statements, IEB and convention minutes and financials, none of which identify previously unidentified individuals.

---

[5] Those documents if not exactly identically, were substantially identical and contained the same information. *See, e.g.*, DEBTOR_001612, which is identified by our document review system as a 94% match to DEBTOR_004810.

4864-5612-3033.3 42339.002



**Miscellaneous.**

With respect to RFP 3, the ILWU searched for pre-2016 documents responsive to that request. It was unable to locate any such documents which is not surprising given that they would have been provided to the relevant governmental agencies quite some time ago.

Finally as you noted, the definition of "CLD" in our December 11, 2023 correspondence was a typo. "CLD" should have been properly defined as the "ILWU Coast Longshore Division."

Very truly yours,

/s/ Beth E. Levine

Beth E. Levine

cc:     Debra Grassgreen, Esq.
        Jason H. Rosell, Esq.
        James W. Walker, Esq.
        Alan Kornfeld, Esq.
        Ori Katz, Esq.
        Matt Benz, Esq.
        Amanda Gamblin, Esq.
        Michael T. Garone, Esq.
        Jeffrey S. Eden, Esq.
        Andrew Lee, Esq.

**Exhibit 15**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
GIANNA SEGRETTI, Cal. Bar No. 323645
KORAY ERBASI, Cal. Bar No. 332877
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email         okatz@sheppardmullin.com
              gsegretti@sheppardmullin.com
              kerbasi@sheppardmullin.com

Attorneys for ICTSI Oregon, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION,<br><br>Debtor. | Case No.  23-30662 HLB<br><br>Chapter 11 Proceeding<br><br>**ICTSI OREGON, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION TO INTERNATIONAL LONGSHORE WAREHOUSE UNION**<br><br>[No Hearing Required]<br><br>The Hon. Hannah L. Blumenstiel |

ICTSI Oregon, Inc. ("ICTSI") submits to International Longshore and Warehouse Union (the "Debtor") the following first set of requests for production of documents pursuant to Federal Rule of Civil Procedure 34, as incorporated by Federal Rule of Bankruptcy Procedure 7034, and the Court's *Order Setting Schedule in Connection with Plan Confirmation Process and Related Deadlines* [Docket No. 59] (the "Scheduling Order"). Pursuant to the Scheduling Order, the deadline for the Debtor to begin rolling document production in response hereto is 14 days after service of these requests, and the deadline for the Debtor to substantially complete document production in response hereto is 21 days after service of these requests. The documents requested shall be produced at the offices of the above-referenced attorneys for ICTSI.

<u>**INSTRUCTIONS**</u>

1.      Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, is hereby incorporated by reference and applies to each of the Definitions, Instructions, and Requests for Production.

2.      Each paragraph and subparagraph hereof shall be construed independently and not by reference to any other paragraph or subparagraph for purposes of limitation.

3.      Debtor shall produce all documents and information, including ESI, within its possession, custody, or control.

4.      The phrase "possession, custody or control" extends to any documents in the possession, custody or control of the ILWU, or any of the ILWU's agents, representatives, accountants, or attorneys. A document or thing is deemed to be in the possession, custody or control of the ILWU if it is in ILWU's physical custody, or if it is in the physical custody of any other person or entity and the ILWU (a) owns such a document in whole or in part; (b) has a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) has an understanding, express or implied, that it may use, inspect, examine or copy such document on any terms; or (d) is, as a practical matter, able to use, inspect, examine or copy such documents.

5.      Electronically stored information ("ESI") refers to all information stored in an electronic format, including, without limitation, e-mail, financial data, SMS or MMS text messages, blogging entries, Facebook pages/entries, pages or entries on all social networking sites,

photographs, videotapes, tape recordings, voicemail, phone taps, and other information stored in electronic format.

6.      Unless otherwise indicated, all ESI should be produced in native and single-page TIFF format with metadata preserved in the load file. If native format is not available or if redactions are present, single page TIFF images with metadata preserved in the load file should be produced. The load file should be produced in a format capable of being imported into Relativity software.

7.      All hard copy documents for which native electronic files never existed, no longer exist, or are not reasonably accessible also should be produced in single-page TIFF format. This includes, but is not limited to, scanned images of those documents which contain unique information after they were printed out, such as paper documents containing handwriting, signatures, marginalia, drawing, annotations, highlighting and redactions. All scanned documents should be kept as they are in the regular course of business or in the alternative provide information identifying the custodian for each document.

8.      E-mails should be produced in native format and single-page TIFF. If native format is not available, e-mail should be produced in single-page TIFF format. Production of e- mails <u>must</u> include all metadata described below and any electronic attachments.

9.      Excel documents should be produced in native format with single-page TIFF placeholder slipsheets and all metadata preserved. Spreadsheets created with other software should be produced in a comma delimited format capable of being opened in Excel, if feasible.

10.     PowerPoint documents should be produced in native format will all metadata preserved, including speaker notes.

11.     All logs should be produced in native format with single-page placeholder slipsheets.

12.     Audio, video or other recorded information shall be provided separately on a DVD or other storage device capable of being played on Windows 10 in a .wav or .mpeg format.

13.     All documents should include an OCR text file. All files shall be labeled with a unique bates number. Parent/child attachment relationships shall be maintained.

14.     The metadata fields should include: Bates Beg, Bates End, Bates Beg Attach, Bates End Attach, File Name, File Type, File Extension, Path name, MD5 Hash or SHA Hash,

Confidentiality, Author, Custodian, Date Created, Date Modified, Date, Sent Date (for e-mail), E-mail Subject, E-mail To, E- mail From, E-mail CC, E-mail BCC, TextLink, and NativeLink. ICTSI reserves the right to request additional documents in native format if it is determined that the document is not readable or usable in a TIFF format.

15.     If a claim of privilege is asserted to the production of any document requested below, state as to each document the following information:

        (a)     Which privilege is claimed;

        (b)     A precise statement of the facts upon which such claim of privilege is based;

        (c)     The following information as to each purportedly privileged document:

            (i)     Its nature—e.g., letter, memorandum, photograph, tape, etc.;

            (ii)     The date it was prepared;

            (iii)     The date it bears;

            (iv)     The date it was sent;

            (v)     The date it was received;

            (vi)     The identity of the person sending it;

            (vii)     The identity of the person to whom it was sent;

            (viii)     The identity of the person preparing it;

            (ix)     A statement of the subject of the document(s); and

            (x)     A precise description of the place in which the document is kept, including the title or description of the file in which said document may be found and the exact location of such file.

16.     If you contend only a portion of the document is privileged, please provide a redacted document with a listing of the above information as to the redacted portion.

17.     In producing the documents requested herein, the Debtor shall indicate (to the extent reasonably practical) the specific Request or Requests in response to which each document or group of documents is being produced.   To the extent possible, documents shall be produced in their original binders or files, which are expressly included in the Request.  Production of all documents, the production of which is not objected to, shall be made on the date and at the time and place set

forth above, notwithstanding the assertion or pendency of any objection to the production of some or any of the other documents covered by the Requests made herein.

18.     The Debtor is advised that this request is continuing, and any documents found or located subsequent to the answering of this request shall be produced in accordance with this request.

19.     ICTSI reserves its rights to amend, supplement, and/or modify these requests pursuant to the Bankruptcy Code, Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules for the Northern District of California, and/or any other law applicable to the subject matter of these requests.

## DEFINITIONS

1.     The terms "document" or "documents" are used herein in the broadest possible sense and refer to any kind of printed, recorded, electronic, written, graphic, photographic or video or audio recorded matter or communications (including tape recordings), and emails and text messages, however printed, produced, reproduced, coded or stored, of any kind or description, whether or not sent or received, including originals, copies, reproductions, facsimiles, drafts, on both sides thereof, and all ESI, as used in Rule 34 of the Federal Rules of Civil Procedure.

2.     The term "communications" includes, without limiting its generality, each and every document that was given, sent, shown, described, or whose contents were described by one such person to one or more other such persons however transmitted, delivered, or described and whether or not retained by the recipient or recipients at the time of transmittal, delivery, or description.

3.     The terms "refer" or "relate" mean concerning, pertaining to, alluding to, responding to, relating to, referring to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, or evidencing.

4.     The term "Debtor" means the entity with the FEIN 94-0577594 that filed the *Voluntary Petition for Non-Individuals Filing for Bankruptcy* [Docket No. 1] in the above-captioned chapter 11 case.

5.     The term "ICTSI Litigation" means the case styled as *ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (D. Or. June 12, 2012),

and any related actions, appeals, or other proceedings.

6. The term "ILWU" is used herein in the broadest possible sense and includes the Debtor, the International Longshore & Warehouse Union, ILWU International, ILWU National Headquarters, the Coast Longshore Division ("CLD"), the Hawaii Division, the Inland Boatman's Union of the Pacific-Marine Division, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, and all other divisions and other labor organizations affiliated with the ILWU.

7. "ILWU Political Action Fund" is the ILWU Political Action Fund as described in the ILWU's How the Union Works, available at: https://www.ilwu.org/about/how-our-union-works/.

8. The "Pacific Longshoremen's Memorial Association" is the entity that owns the real property located at 1188 Franklin Street, San Francisco, California 94109, which is leased to the Debtor according to the Debtor's *Schedules of Assets and Liabilities* [Docket No. 32, at 30].

9. The "Pension Plan" means the Pension Plan for Officers & Professional Staff of International Longshore & Warehouse Union, as described in the Debtor's first amended Plan of Reorganization for Small Business Under Chapter 11 [Docket No. 60] filed on November 2, 2023.

10. The term "International Secretary-Treasurer" means the person referred to as the "Secretary-Treasurer" by Article VI, Section 1 of the 2018 ILWU Constitution or "International Secretary-Treasurer" by Article VI, Section 7 of the 2018 ILWU Constitution or in any prior or subsequent iterations of the ILWU Constitution.

11. The term "International Executive Board" means the entity referred to as the "International Executive Board" by Article VI, Section 7 of the 2018 ILWU Constitution or "Executive Board" by Article VI, Section 10 of the 2018 ILWU Constitution or in any prior or subsequent iterations of the ILWU Constitution.

12. The term "ICTSI Litigation" means all claims by all parties ever brought in ICTSI Oregon, *Inc. v. Intl. Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (D. Or. Jun. 13, 2012) and any administrative or contempt proceedings brought against the Debtor, ILWU, ILWU Local 8, or ILWU Local 40 by the NLRB between 2012 and 2015.

6

ICTSI 's Second Set of RFPs to Debtor

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 36:** Any and all insurance and indemnity policies purchased, held or obtained by ILWU from January 1, 2012 to the present, including but not limited to liability policies, directors' and officers' liability policies, performance bonds or any other contracts of insurance or indemnity with any third party.

**REQUEST FOR PRODUCTION NO. 37:** Any and all documents and communications from January 1, 2010 to the present regarding payment by the ILWU of any fines, sanctions, penalties or other amounts levied or charged by any federal, state or local governmental agency or entity, including but not limited to documents or communications that state or establish the identity of the ILWU divisions, district councils, subordinate entities, affiliated entities, or entities that use any version of the ILWU name or logo, against whom the fines, sanctions, penalties or other amounts were levied or charged or which paid them.

**REQUEST FOR PRODUCTION NO. 38:** Any and all documents and communications from January 1, 2010 to the present regarding any increases in union dues, fees, assessments, special assessments, or other required payments imposed by the ILWU on ILWU members, including but not limited to increases in per capita dues or fees, pro rata dues or fees, or any other dues, fees or assessments.

**REQUEST FOR PRODUCTION NO. 39:** Any and all documents and communications from January 1, 2010 to the present regarding any proposed but not implemented increases in union dues, fees, assessments, special assessments, or other required payments imposed by the ILWU on ILWU members, including but not limited to increases in per capita dues or fees, pro rata dues or fees, or any other dues, fees or assessments.

**REQUEST FOR PRODUCTION NO. 40:** Any and all documents and communications

related to consultations and sharing of information between officers of the Debtor and "ILWU Coast Longshore Division Coast Committee Officers" in or about November 2019 as described in a statement issued by ILWU International President Willie Adams, attached hereto as **Exhibit A**.

**REQUEST FOR PRODUCTION NO. 41:** Any and all documents and communications related to a meeting held on or about November 12, 2019 between "International Executive Board Trustees and Longshore Division local union presidents" to receive an update on the ICTSI Litigation as described in a statement issued by ILWU International President Willie Adams, attached hereto as **Exhibit A**.

**REQUEST FOR PRODUCTION NO. 42:** Any and all documents and communications related to a meeting held on or about November 13 and 14, 2019 by ILWU Coast Longshore Caucus delegates "gathered to discuss the outcome of the [ICTSI] trial and next steps" as described in a statement issued by ILWU International President Willie Adams, attached hereto as **Exhibit A**, including but not limited to documents and communications related to the calling or scheduling of the meeting or notes of the meeting.

**REQUEST FOR PRODUCTION NO. 43:** Any and all documents and communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding the Coast Longshore Division's payment of attorneys' fees and expenses in connection with the ICTSI Litigation as listed on Schedule E/F, Part 2, of the Debtors Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket No. 32], at pages 25-27.

**REQUEST FOR PRODUCTION 44:** Any and all documents and communications between officers of the ILWU and officers of the CLD regarding the Coast Longshore Division's payment of attorneys' fees and expenses in connection with any litigation, other than the ICTSI Litigation, involving the ILWU as listed on Schedule E/F, Part 2, of the Debtors Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket No. 32], at pages 25-27.

**REQUEST FOR PRODUCTION NO. 45:**  Any and all documents and communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding the Coast Longshore Division's payment of attorneys' fees, or cessation thereof, for the ICTSI Litigation.

**REQUEST FOR PRODUCTION NO. 46:**  Any and all documents and communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding transferring or reassigning liability for the ICTSI Litigation from the Coast Longshore Division to the ILWU on LM-2 forms, financial statements, tax returns or other similar documents regarding the reporting of financial information.

**REQUEST FOR PRODUCTION 47:**  Any and all documents and communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding transferring or reassigning liability in connection with any litigation, other than the ICTSI Litigation, involving the ILWU from the Coast Longshore Division to the ILWU on LM-2 forms, financial statements, tax returns or other similar documents regarding the reporting of financial information, that are dated from January 1, 2012 through the present.

**REQUEST FOR PRODUCTION NO. 48:**  Any and all documents and communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding the expected fees either entity might incur to continue the ICTSI Litigation.

**REQUEST FOR PRODUCTION NO. 49:**  Any and all documents and communications, including communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division, regarding whether ILWU or any ILWU affiliated division or entity would have sufficient assets to pay fees, costs, or liability in the ICTSI Litigation that are dated from January 1, 2012 through the present.

**REQUEST FOR PRODUCTION 50:** Any and all documents and communications, including communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division, regarding whether ILWU or any ILWU affiliated division or entity, or any entity that uses any version or part of the ILWU name or logo, would have sufficient assets to pay fees, costs, or liability in connection with any other litigation involving the ILWU that are dated from January 1, 2012 through the present.

**REQUEST FOR PRODUCTION NO. 51:** Any and all documents, including but not limited to communications from January 1, 2012 through the present, regarding any policies, procedures, or agreements, whether formal or informal, related to the recurrent transfer of funds to or from depository accounts controlled by the ILWU and depository accounts controlled by the ILWU National Headquarters, the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils or any organization that uses any version or part of the ILWU name or logo.

**REQUEST FOR PRODUCTION NO. 52:** Any and all documents and communications from January 1, 2012 through the present related to the ILWU funding or offering to fund the payment of any debts or other liabilities of the ILWU National Headquarters, the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, or any organization that uses any version or part of the ILWU name or logo.

**REQUEST FOR PRODUCTION NO. 53:** Any and all documents and communications from January 1, 2012 through the present related to the ILWU National Headquarters, the CLD, the Hawaii Division, the Inland Boatman's Union of the Pacific, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, or any organization that uses any version or part of the ILWU name or logo, funding or offering to fund the payment of any debts or

other liabilities of the ILWU.

**REQUEST FOR PRODUCTION NO. 54:**  Any and all documents and communications regarding ILWU's potential claims against any current or former law firms.

**REQUEST FOR PRODUCTION NO. 55:**  Paystubs or paychecks of ILWU officers from any and all sources from January 1, 2019 to the present.

**REQUEST FOR PRODUCTION NO. 56:**  Any and all documents and communications reflecting any entity or organization, including but not limited to the Coast Longshore Division, paying attorneys' fees, costs, expenses, settlements, or judgments for any litigation in which the named party was the International Longshore and Warehouse Union, ILWU, or similar name, since January 1, 2012.

**REQUEST FOR PRODUCTION NO. 57:**  Any and all documents and communications dated from January 1, 2012 related to any monetary recoveries in connection with any lawsuits, administrative proceedings, or other actions brought by the ILWU being transferred to any organization that uses any version or part of the ILWU name or logo, including but not limited to the Coast Longshore Division.

**REQUEST FOR PRODUCTION NO. 58:**  Any and all documents and communications between legal counsel for the ILWU and legal counsel for the Coast Longshore Division regarding any lawsuits, administrative proceedings, or other actions involving the Coast Longshore Division as a named party.

**REQUEST FOR PRODUCTION 59:**  Any and all documents and communications between officers of the ILWU and officers of the Coast Longshore Division regarding any lawsuits, administrative proceedings, or other actions involving the Coast Longshore Division as a named

party.

**REQUEST FOR PRODUCTION NO. 60:** Any and all documents reflecting the Debtor's payment of attorneys' fees, costs, expenses, settlements, or judgments for any litigation in which the named party was the International Longshore and Warehouse Union, ILWU, or similar name since January 1, 2012.

**REQUEST FOR PRODUCTION NO. 61:** The Debtor's Pension Plan, and any and all documents and communications related thereto dated from January 1, 2012 through the present.

**REQUEST FOR PRODUCTION NO. 62:** Any and all documents and communications between the Debtor and the Coast Longshore Division regarding the expansion of the Debtor's Pension Plan to include employees of Coast Longshore Division.

**REQUEST FOR PRODUCTION NO. 63:** Any and all documents the ILWU intends to rely on in connection with or support of confirmation of Debtor's first amended Plan of Reorganization for Small Business Under Chapter 11 [Docket No. 60] filed on November 2, 2023.

Dated: November 8, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By           _/s/ Ori Katz_
_____
ORI KATZ
GIANNA SEGRETTI
KORAY ERBASI

Attorneys for ICTSI Oregon, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2023, I served by electronic mail a true and accurate copy of the foregoing to all counsel of record.

/s/ *Ori Katz*
ORI KATZ

Gamblin Dec., Exhibit 15
Page 13 of 13
ICTSI 'S SECOND SET OF RFPs TO DEBTOR

**Exhibit 16**

1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2 |   Including Professional Corporations
   ORI KATZ, Cal. Bar No. 209561
3 | GIANNA SEGRETTI, Cal. Bar No. 323645
   KORAY ERBASI, Cal. Bar No. 332877
4 | Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
5 | Telephone:    415.434.9100
   Facsimile:     415.434.3947
6 | Email         okatz@sheppardmullin.com
                  gsegretti@sheppardmullin.com
7 |               kerbasi@sheppardmullin.com

8 | Attorneys for ICTSI Oregon, Inc.

9 |

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

12 |

| | |
|---|---|
| In re | Case No.  23-30662 HLB |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | Chapter 11 Proceeding |
| Debtor. | **ICTSI OREGON, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION TO INTERNATIONAL LONGSHORE WAREHOUSE UNION** |
| | [No Hearing Required] |
| | The Hon. Hannah L. Blumenstiel |

ICTSI Oregon, Inc. ("ICTSI") submits to International Longshore and Warehouse Union (the "Debtor") the following third set of requests for production of documents pursuant to Federal Rule of Civil Procedure 34, as incorporated by Federal Rule of Bankruptcy Procedure 7034, and the Court's *Order Setting Schedule in Connection with Plan Confirmation Process and Related Deadlines* [Docket No. 59] (the "Scheduling Order"). Pursuant to the Scheduling Order, the deadline for the Debtor to begin rolling document production in response hereto is 14 days after service of these requests, and the deadline for the Debtor to substantially complete document production in response hereto is 21 days after service of these requests. The documents requested shall be produced at the offices of the above-referenced attorneys for ICTSI.

**INSTRUCTIONS**

1.     Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, is hereby incorporated by reference and applies to each of the Definitions, Instructions, and Requests for Production.

2.     Each paragraph and subparagraph hereof shall be construed independently and not by reference to any other paragraph or subparagraph for purposes of limitation.

3.     Debtor shall produce all documents and information, including ESI, within its possession, custody, or control.

4.     The phrase "possession, custody or control" extends to any documents in the possession, custody or control of the ILWU, or any of the ILWU's agents, representatives, accountants, or attorneys.  A document or thing is deemed to be in the possession, custody or control of the ILWU if it is in ILWU's physical custody, or if it is in the physical custody of any other person or entity and the ILWU (a) owns such a document in whole or in part; (b) has a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) has an understanding, express or implied, that it may use, inspect, examine or copy such document on any terms; or (d) is, as a practical matter, able to use, inspect, examine or copy such documents.

5.     Electronically stored information ("ESI") refers to all information stored in an electronic format, including, without limitation, e-mail, financial data, SMS or MMS text messages, blogging entries, Facebook pages/entries, pages or entries on all social networking sites,

photographs, videotapes, tape recordings, voicemail, phone taps, and other information stored in electronic format.

6.      Unless otherwise indicated, all ESI should be produced in native and single-page TIFF format with metadata preserved in the load file. If native format is not available or if redactions are present, single page TIFF images with metadata preserved in the load file should be produced. The load file should be produced in a format capable of being imported into Relativity software.

7.      All hard copy documents for which native electronic files never existed, no longer exist, or are not reasonably accessible also should be produced in single-page TIFF format. This includes, but is not limited to, scanned images of those documents which contain unique information after they were printed out, such as paper documents containing handwriting, signatures, marginalia, drawing, annotations, highlighting and redactions. All scanned documents should be kept as they are in the regular course of business or in the alternative provide information identifying the custodian for each document.

8.      E-mails should be produced in native format and single-page TIFF. If native format is not available, e-mail should be produced in single-page TIFF format. Production of e- mails <u>must</u> include all metadata described below and any electronic attachments.

9.      Excel documents should be produced in native format with single-page TIFF placeholder slipsheets and all metadata preserved. Spreadsheets created with other software should be produced in a comma delimited format capable of being opened in Excel, if feasible.

10.     PowerPoint documents should be produced in native format will all metadata preserved, including speaker notes.

11.     All logs should be produced in native format with single-page placeholder slipsheets.

12.     Audio, video or other recorded information shall be provided separately on a DVD or other storage device capable of being played on Windows 10 in a .wav or .mpeg format.

13.     All documents should include an OCR text file. All files shall be labeled with a unique bates number. Parent/child attachment relationships shall be maintained.

14.     The metadata fields should include: Bates Beg, Bates End, Bates Beg Attach, Bates End Attach, File Name, File Type, File Extension, Path name, MD5 Hash or SHA Hash,

Confidentiality, Author, Custodian, Date Created, Date Modified, Date, Sent Date (for e-mail), E-mail Subject, E-mail To, E- mail From, E-mail CC, E-mail BCC, TextLink, and NativeLink. ICTSI reserves the right to request additional documents in native format if it is determined that the document is not readable or usable in a TIFF format.

15.     If a claim of privilege is asserted to the production of any document requested below, state as to each document the following information:

        (a)     Which privilege is claimed;

        (b)     A precise statement of the facts upon which such claim of privilege is based;

        (c)     The following information as to each purportedly privileged document:

                (i)     Its nature—e.g., letter, memorandum, photograph, tape, etc.;

                (ii)     The date it was prepared;

                (iii)     The date it bears;

                (iv)     The date it was sent;

                (v)     The date it was received;

                (vi)     The identity of the person sending it;

                (vii)     The identity of the person to whom it was sent;

                (viii)     The identity of the person preparing it;

                (ix)     A statement of the subject of the document(s); and

                (x)     A precise description of the place in which the document is kept, including the title or description of the file in which said document may be found and the exact location of such file.

16.     If you contend only a portion of the document is privileged, please provide a redacted document with a listing of the above information as to the redacted portion.

17.     In producing the documents requested herein, the Debtor shall indicate (to the extent reasonably practical) the specific Request or Requests in response to which each document or group of documents is being produced.  To the extent possible, documents shall be produced in their original binders or files, which are expressly included in the Request.  Production of all documents, the production of which is not objected to, shall be made on the date and at the time and place set

forth above, notwithstanding the assertion or pendency of any objection to the production of some or any of the other documents covered by the Requests made herein.

18.     The Debtor is advised that this request is continuing, and any documents found or located subsequent to the answering of this request shall be produced in accordance with this request.

19.     ICTSI reserves its rights to amend, supplement, and/or modify these requests pursuant to the Bankruptcy Code, Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules for the Northern District of California, and/or any other law applicable to the subject matter of these requests.

## **DEFINITIONS**

1.     The terms "document" or "documents" are used herein in the broadest possible sense and refer to any kind of printed, recorded, electronic, written, graphic, photographic or video or audio recorded matter or communications (including tape recordings), and emails and text messages, however printed, produced, reproduced, coded or stored, of any kind or description, whether or not sent or received, including originals, copies, reproductions, facsimiles, drafts, on both sides thereof, and all ESI, as used in Rule 34 of the Federal Rules of Civil Procedure.

2.     The term "communications" includes, without limiting its generality, each and every document that was given, sent, shown, described, or whose contents were described by one such person to one or more other such persons however transmitted, delivered, or described and whether or not retained by the recipient or recipients at the time of transmittal, delivery, or description.

3.     The terms "refer" or "relate" mean concerning, pertaining to, alluding to, responding to, relating to, referring to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, or evidencing.

4.     The term "Debtor" means the entity with the FEIN 94-0577594 that filed the *Voluntary Petition for Non-Individuals Filing for Bankruptcy* [Docket No. 1] in the above-captioned chapter 11 case.

5.     The term "ICTSI Litigation" means the case styled as *ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (D. Or. June 12, 2012),

and any related actions, appeals, or other proceedings.

6. The term "ILWU" is used herein in the broadest possible sense and includes the Debtor, the International Longshore & Warehouse Union, ILWU International, ILWU National Headquarters, the Coast Longshore Division ("CLD"), the Hawaii Division, the Inland Boatman's Union of the Pacific-Marine Division, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, and all other divisions and other labor organizations affiliated with the ILWU.

7. "ILWU Political Action Fund" is the ILWU Political Action Fund as described in the ILWU's How the Union Works, available at: https://www.ilwu.org/about/how-our-union-works/.

8. The "Pacific Longshoremen's Memorial Association" is the entity that owns the real property located at 1188 Franklin Street, San Francisco, California 94109, which is leased to the Debtor according to the Debtor's *Schedules of Assets and Liabilities* [Docket No. 32, at 30].

9. "Petition Date" means September 30, 2023.

10. "Plan" means the Debtor's first amended *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 60] filed on November 2, 2023.

11. The term "International Secretary-Treasurer" means the person referred to as the "Secretary-Treasurer" by Article VI, Section 1 of the 2018 ILWU Constitution or "International Secretary-Treasurer" by Article VI, Section 7 of the 2018 ILWU Constitution or in any prior or subsequent iterations of the ILWU Constitution.

12. The term "International Executive Board" means the entity referred to as the "International Executive Board" by Article VI, Section 7 of the 2018 ILWU Constitution or "Executive Board" by Article VI, Section 10 of the 2018 ILWU Constitution or in any prior or subsequent iterations of the ILWU Constitution.

13. The term "ICTSI Litigation" means all claims by all parties ever brought in ICTSI Oregon, *Inc. v. Intl. Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (D. Or. Jun. 13, 2012) and any administrative or contempt proceedings brought against the Debtor, ILWU, ILWU Local 8, or ILWU Local 40 by the NLRB between 2012 and 2015.

## **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 64:** Documents and communications related to any transfers from ILWU to CLD referenced in Schedule 3 of the Debtor's *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* [Docket No. 34].

**REQUEST FOR PRODUCTION NO. 65:** Documents and communications related to any agreements, including shared service and resource and bargaining agreements, between the ILWU and the CLD, any ILWU locals, divisions, or other affiliated entities from January 1, 2012 to the Petition Date.

**REQUEST FOR PRODUCTION NO. 66:** All presentations prepared for the ILWU International Executive Board ("IEB"), ILWU local unions, divisions, district councils, or other affiliated entities regarding restructuring alternatives, including but not limited to, liquidation, bankruptcy, and financing.

**REQUEST FOR PRODUCTION NO. 67:** Documents and communications related to any of the ILWU's audited or unaudited profit and loss statements, balance sheets, detailed cash flow reports, detailed budgets, detailed general ledgers, and similar financial documents, periodic trial balances, bank statements, general transaction ledgers, and periodic cash reconciliations.

**REQUEST FOR PRODUCTION NO. 68:** Any monthly or other periodic reports prepared by or for ILWU leadership for the purpose of analyzing financials dated from January 1, 2012 through the Petition Date.

**REQUEST FOR PRODUCTION NO. 69:** Documents and communications related to any debt incurred by the ILWU, including unsecured, inter-division/company credit agreements, amendments, pledges, guarantees, waivers, intercreditor or subordination agreements and/or fee

letters along with all amended versions from January 1, 2012 through the Petition Date.

**REQUEST FOR PRODUCTION NO 70:** Documents and communications related to the ILWU debts that the CLD paid after the Petition Date, including the nature and amount of the debt and the reason CLD paid the debt, as well as any agreement between the ILWU and CLD regarding such debt or payment thereof, including but not limited to Debtor's response to Question 15 in its *Monthly Operating Report for Small Business Under Chapter 11* for the month of October, 2023 [Docket No. 99].

**REQUEST FOR PRODUCTION NO. 71:** Documents and communications supporting or used in the preparation of the Liquidation Analysis attached as Exhibit A to the Plan.

**REQUEST FOR PRODUCTION NO. 72:** Documents and communications supporting or used in the preparation of the Feasibility Analysis / Projected Disposable Income attached as Exhibit B to the Plan.

**REQUEST FOR PRODUCTION NO. 73:** Documents and communications supporting or used in the preparation of the Assumed Contract List attached as Exhibit C to the Plan.

Dated: November 22, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     _____
/s/ *Ori Katz*

ORI KATZ
GIANNA SEGRETTI
KORAY ERBASI

Attorneys for ICTSI Oregon, Inc.

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 |      I hereby certify that on November 22, 2023, I served by electronic mail a true and accurate |
| 3 | copy of the foregoing to all counsel of record. |
| 4 | |
| 5 |     */s/ Ori Katz* |
| 6 |     ORI KATZ |

**Exhibit 17**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
GIANNA SEGRETTI, Cal. Bar No. 323645
KORAY ERBASI, Cal. Bar No. 332877
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email         okatz@sheppardmullin.com
              gsegretti@sheppardmullin.com
              kerbasi@sheppardmullin.com

Attorneys for ICTSI Oregon, Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No.  23-30662 HLB |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | Chapter 11 Proceeding |
| Debtor. | **ICTSI OREGON, INC.'S FOURTH SET OF REQUESTS FOR PRODUCTION TO INTERNATIONAL LONGSHORE WAREHOUSE UNION** |
| | [No Hearing Required] |
| | The Hon. Hannah L. Blumenstiel |

-1-
ICTSI 'S FOURTH SET OF RFPs TO DEBTOR

ICTSI Oregon, Inc. ("ICTSI") submits to International Longshore and Warehouse Union (the "Debtor") the following fourth set of requests for production of documents pursuant to Federal Rule of Civil Procedure 34, as incorporated by Federal Rule of Bankruptcy Procedure 7034, and the Court's *Order Setting Schedule in Connection with Plan Confirmation Process and Related Deadlines* [Docket No. 59] (the "Scheduling Order"). Pursuant to the Scheduling Order, the deadline for the Debtor to begin rolling document production in response hereto is 14 days after service of these requests, and the deadline for the Debtor to substantially complete document production in response hereto is 21 days after service of these requests. The documents requested shall be produced at the offices of the above-referenced attorneys for ICTSI.

## **INSTRUCTIONS**

1. Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, is hereby incorporated by reference and applies to each of the Definitions, Instructions, and Requests for Production.

2. Each paragraph and subparagraph hereof shall be construed independently and not by reference to any other paragraph or subparagraph for purposes of limitation.

3. Debtor shall produce all documents and information, including ESI, within its possession, custody, or control.

4. The phrase "possession, custody or control" extends to any documents in the possession, custody or control of the ILWU, or any of the ILWU's agents, representatives, accountants, or attorneys. A document or thing is deemed to be in the possession, custody or control of the ILWU if it is in ILWU's physical custody, or if it is in the physical custody of any other person or entity and the ILWU (a) owns such a document in whole or in part; (b) has a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) has an understanding, express or implied, that it may use, inspect, examine or copy such document on any terms; or (d) is, as a practical matter, able to use, inspect, examine or copy such documents.

5. Electronically stored information ("ESI") refers to all information stored in an electronic format, including, without limitation, e-mail, financial data, SMS or MMS text messages, blogging entries, Facebook pages/entries, pages or entries on all social networking sites,

photographs, videotapes, tape recordings, voicemail, phone taps, and other information stored in electronic format.

6.    Unless otherwise indicated, all ESI should be produced in native and single-page TIFF format with metadata preserved in the load file. If native format is not available or if redactions are present, single page TIFF images with metadata preserved in the load file should be produced. The load file should be produced in a format capable of being imported into Relativity software.

7.    All hard copy documents for which native electronic files never existed, no longer exist, or are not reasonably accessible also should be produced in single-page TIFF format. This includes, but is not limited to, scanned images of those documents which contain unique information after they were printed out, such as paper documents containing handwriting, signatures, marginalia, drawing, annotations, highlighting and redactions. All scanned documents should be kept as they are in the regular course of business or in the alternative provide information identifying the custodian for each document.

8.    E-mails should be produced in native format and single-page TIFF. If native format is not available, e-mail should be produced in single-page TIFF format. Production of e- mails <u>must</u> include all metadata described below and any electronic attachments.

9.    Excel documents should be produced in native format with single-page TIFF placeholder slipsheets and all metadata preserved. Spreadsheets created with other software should be produced in a comma delimited format capable of being opened in Excel, if feasible.

10.   PowerPoint documents should be produced in native format will all metadata preserved, including speaker notes.

11.   All logs should be produced in native format with single-page placeholder slipsheets.

12.   Audio, video or other recorded information shall be provided separately on a DVD or other storage device capable of being played on Windows 10 in a .wav or .mpeg format.

13.   All documents should include an OCR text file. All files shall be labeled with a unique bates number. Parent/child attachment relationships shall be maintained.

14.   The metadata fields should include: Bates Beg, Bates End, Bates Beg Attach, Bates End Attach, File Name, File Type, File Extension, Path name, MD5 Hash or SHA Hash,

Confidentiality, Author, Custodian, Date Created, Date Modified, Date, Sent Date (for e-mail), E-mail Subject, E-mail To, E- mail From, E-mail CC, E-mail BCC, TextLink, and NativeLink. ICTSI reserves the right to request additional documents in native format if it is determined that the document is not readable or usable in a TIFF format.

15.     If a claim of privilege is asserted to the production of any document requested below, state as to each document the following information:

        (a)     Which privilege is claimed;

        (b)     A precise statement of the facts upon which such claim of privilege is based;

        (c)     The following information as to each purportedly privileged document:

                (i)     Its nature—e.g., letter, memorandum, photograph, tape, etc.;

                (ii)     The date it was prepared;

                (iii)     The date it bears;

                (iv)     The date it was sent;

                (v)     The date it was received;

                (vi)     The identity of the person sending it;

                (vii)     The identity of the person to whom it was sent;

                (viii)     The identity of the person preparing it;

                (ix)     A statement of the subject of the document(s); and

                (x)     A precise description of the place in which the document is kept, including the title or description of the file in which said document may be found and the exact location of such file.

16.     If you contend only a portion of the document is privileged, please provide a redacted document with a listing of the above information as to the redacted portion.

17.     In producing the documents requested herein, the Debtor shall indicate (to the extent reasonably practical) the specific Request or Requests in response to which each document or group of documents is being produced.  To the extent possible, documents shall be produced in their original binders or files, which are expressly included in the Request.  Production of all documents, the production of which is not objected to, shall be made on the date and at the time and place set

1  forth above, notwithstanding the assertion or pendency of any objection to the production of some

2  or any of the other documents covered by the Requests made herein.

3      18.     The Debtor is advised that this request is continuing, and any documents found or

4  located subsequent to the answering of this request shall be produced in accordance with this

5  request.

6      19.     ICTSI reserves its rights to amend, supplement, and/or modify these requests

7  pursuant to the Bankruptcy Code, Federal Rules of Civil Procedure, Federal Rules of Bankruptcy

8  Procedure, Local Bankruptcy Rules for the Northern District of California, and/or any other law

9  applicable to the subject matter of these requests.

10                                    **DEFINITIONS**

11      1.      The terms "document" or "documents" are used herein in the broadest possible sense

12  and refer to any kind of printed, recorded, electronic, written, graphic, photographic or video or

13  audio recorded matter or communications (including tape recordings), and emails and text messages,

14  however printed, produced, reproduced, coded or stored, of any kind or description, whether or not

15  sent or received, including originals, copies, reproductions, facsimiles, drafts, on both sides thereof,

16  and all ESI, as used in Rule 34 of the Federal Rules of Civil Procedure.

17      2.      The term "communications" includes, without limiting its generality, each and every

18  document that was given, sent, shown, described, or whose contents were described by one such

19  person to one or more other such persons however transmitted, delivered, or described and whether

20  or not retained by the recipient or recipients at the time of transmittal, delivery, or description.

21      3.      The terms "refer" or "relate" mean concerning, pertaining to, alluding to, responding

22  to, relating to, referring to, connected with, commenting on, in respect of, about, regarding,

23  discussing, showing, describing, mentioning, reflecting, analyzing, constituting, or evidencing.

24      4.      The term "Debtor" means the entity with the FEIN 94-0577594 that filed the

25  *Voluntary Petition for Non-Individuals Filing for Bankruptcy* [Docket No. 1] in the above-captioned

26  chapter 11 case.

27      5.      The term "ICTSI Litigation" means the case styled as *ICTSI Oregon, Inc. v.*

28  *International Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (D. Or. June 12, 2012),

and any related actions, appeals, or other proceedings.

6. The term "ILWU" is used herein in the broadest possible sense and includes the Debtor, the International Longshore & Warehouse Union, ILWU International, ILWU National Headquarters, the Coast Longshore Division ("CLD"), the Hawaii Division, the Inland Boatman's Union of the Pacific-Marine Division, the Mining Division, the Panama Canal Division, the Office Clerical Division, ILWU district councils, and all other divisions and other labor organizations affiliated with the ILWU.

7. "ILWU Political Action Fund" is the ILWU Political Action Fund as described in the ILWU's How the Union Works, available at: https://www.ilwu.org/about/how-our-union-works/.

8. The "Pacific Longshoremen's Memorial Association" or "PLMA" is the entity that owns the real property located at 1188 Franklin Street, San Francisco, California 94109, which is leased to the Debtor according to the Debtor's *Schedules of Assets and Liabilities* [Docket No. 32, at 30].

9. "Petition Date" means September 30, 2023.

10. "Plan" means the Debtor's first amended *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 60] filed on November 2, 2023.

11. The term "International Secretary-Treasurer" means the person referred to as the "Secretary-Treasurer" by Article VI, Section 1 of the 2018 ILWU Constitution or "International Secretary-Treasurer" by Article VI, Section 7 of the 2018 ILWU Constitution or in any prior or subsequent iterations of the ILWU Constitution.

12. The term "ICTSI Litigation" means all claims by all parties ever brought in ICTSI Oregon, *Inc. v. Intl. Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (D. Or. Jun. 13, 2012) and any administrative or contempt proceedings brought against the Debtor, ILWU, ILWU Local 8, or ILWU Local 40 by the NLRB between 2012 and 2015.

**REQUEST FOR PRODUCTION NO. 74:**  All documents relating to whether ILWU has reported or failed to report on its LM-2 filings with the U.S. Department of Labor ("USDOL") assets for which title is held by PLMA, including, but not limited to, documents relating to any communications between ILWU and USDOL about whether PLMA was a subsidiary of ILWU for purposes of annual reporting or relating to ILWU's reporting of PLMA's finances in conjunction with filing LM-2s, as Debtor did in its LM-2s for at least its 2000 and 2001 filings (Dep't of Labor File No. 000-202).

**REQUEST FOR PRODUCTION NO. 75:**  All documents relating to any audits proposed or conducted of ILWU by the USDOL or any affiliate thereof, including, but not limited to, the compliance audit for which the International Compliance Audit Program (I-CAP) conducted an exit interview on December 7, 2005, which audit addressed, *inter alia*, a loan payable by ILWU to the PLMA and deficiencies in ILWU's documentation of its lease of office space as well as documents relating to any actions taken by ILWU in response to any findings in an audit by the USDOL or any affiliate thereof.

**REQUEST FOR PRODUCTION NO. 76:**  All promissory notes, term sheets, minutes or other documents relating to PLMA loaning funds to ILWU or ILWU loaning funds to PLMA, including but not limited to the loan transaction or transactions between PLMA and Debtor referenced on Debtor's LM-2 forms in 2004, 2005, and 2006 (Dep't of Labor File No. 000-202).

**REQUEST FOR PRODUCTION NO. 77:**  All documents relating to ILWU Local 142 acquiring title in or around 1950 to the building at 150 Golden Gate Ave., San Francisco, that housed ILWU's international headquarters, as referenced in Exhibit A, or Local 142 later transferring title to that building to ILWU or any other party.

1   Dated: December 1, 2023

2                             SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                        By                  */s/ Ori Katz*

5                                 ORI KATZ

6                             GIANNA SEGRETTI
                            KORAY ERBASI

7                       Attorneys for ICTSI Oregon, Inc.

## CERTIFICATE OF SERVICE

     I hereby certify that on December 1, 2023, I served by electronic mail a true and accurate copy of the foregoing to all counsel of record.

_/s/ Ori Katz_

ORI KATZ

# ILWU Witness Grilled On Building Transfer

Juneau Spruce Corp. attorneys, seeking to locate assets of the ILWU to satisfy a $1,000,000 Taft-Hartley judgment, closely questioned former Local 142 Secretary-Treasurer Saburo Fujisaki yesterday.

Mr. Fujisaki was grilled for two hours about the role he played in the 1950 transfer of the international's building at 150 Golden Gate Ave., San Francisco, to Local 142.

• • •

IT WAS APPARENT from the questioning that Juneau Spruce's counsel, Frank D. Gibson Jr., was seeking to show that the several-storied building was deeded over to Local 142 to prevent the International's creditors from attaching it.

Juneau Spruce won a $760,000 judgment from the International and its Local 16 in Juneau, Alaska, in 1949 because of an illegal secondary boycott. The U. S. Supreme Court upheld the judgment in 1952 but Juneau has been unable to collect it. The ILWU says it can't pay because it is broke.

• • •

MR. FUJISAKI, who was Local 142's secretary-treasurer during the 1950 building deal, admitted that the union never received any money from its tenants during the time he was its office. (The International headquarters of the ILWU remained in the building.)

Mr. Gibson and ILWU Attorney George R. Andersen got into a brief spat over the intensive grilling given Mr. Fujisaki. Mr. Andersen contended that the questioning "was not in good faith" after Mr. Gibson refused to accept a stipulation offered by the union attorney "to save time."

• • •

MR. FUJISAKI said Local 142 and the International reached an agreement in 1950 that the Hawaii group would pay $25,000 for the San Francisco building. He said it was also agreed that if the International returned the $25,000, it could have the building back.

(Previous witnesses, including Local 142 President Antonio Rania, have testified that the building is worth several hundred thousand dollars.)

• • •

THERE was not a single spectator in court throughout the day. The case, which is now in its third month, is in a so-called discovery phase, Juneau Spruce attempting to "discover" assets which can be attached to satisfy its $1,000,000 judgment.

Witnesses who have appeared under subpena thus far include Local 142 President Rania, Local 142 Secretary-Treasurer Newton Miyagi, former Local 136 President Joseph Kealalio and Mr. Fujisaki.

Regional Director Jack Wayne Hall also is under subpena, as are these other union officers: Herman Ing, Justo De La Cruz, Koichi Imori, Andrew Salz, George Martin, Ernest Arena, Primitivo Queja and Bert Nakano.

The hearing is in recess until 10 a.m. Monday. There will be no morning session Tuesday and Wednesday.



Capt. Kiyoshi Tobita        Capt. Kyuemon Sakuraba
K. Shimogaki

## 2 Japanese Destroyers Will Shift to Honolulu

Two Japanese destroyers—the Asakaze and the Hatakaze, are to move from Pearl Harbor to Honolulu harbor this morning, then release their officers and men for two days of sightseeing and entertainment.

kaze at Pearl yesterday morning where both ships were accorded full honors.

Japanese Consul General Masahide Kanayama and members of his staff greeted the ships during official welcoming ceremonies

# Testimony In Dairy Suit Nearing Close

Both sides neared completion of testimony in the Hygienic Dairy lease suit yesterday, with a windup expected Monday morning in Circuit Judge Calvin C. McGregor's court.

Hygienic Dairy's attorney, J. Garner Anthony, rested his case at 11:05 a.m. Friday after calling as the last rebuttal witness George W. Knowles, vice-president and manager for the dairy.

• • •

MR. KNOWLES, who repeatedly said he was "just a farmer" and not familiar with paper work, clashed several times with Defense Attorney John P. Russell during cross-examination. At one phase of the morning session, Mr. Knowles—angered when Mr. Russell questioned his answer—roared back:

"Are you accusing me of making a false statement?"

Mr. Knowles was particularly ired when the defense attorney quizzed him about Hygienic Dairy selling part of its dairy herd and milk production to another dairy.

"ISN'T IT true that you've been selling your can (milk can) quota?" Mr. Russell asked. (Hygienic has a certain can quota of milk to provide for Dairymen's Assn., to which it belongs.)

"No, it isn't true," said Mr. Knowles. He later explained that Hygienic did release 40 cows and 20 cans from its quota, but denied selling any more than that.

Mr. Anthony broke into advise Judge McGregor:

"Apparently he thinks because

## Statehood Commission To Ask $150,000 for Budget

## No Money From Tenants

# ILWU Witness Grilled On Building Transfer

Juneau Spruce Corp. attorneys, seeking to locate assets of the ILWU to satisfy a $1,000,000 Taft-Hartley judgment, closely questioned former Local 142 Secretary-Treasurer S a b u r o Fujisaki yesterday.

Mr. Fujisaki was grilled for two hours about the role he played in the 1950 transfer of the international's building at 150 Golden Gate Ave., San Francisco, to Local 142.

**IT WAS APPARENT** from the questioning that Juneau Spruce's counsel, Frank D. Gibson Jr., was seeking to show that the several-storied building was deeded over to Local 142 to prevent the International's creditors from attaching it.

Juneau Spruce won a $760,000 judgment from the International and its Local 16 in Juneau, Alaska, in 1949 because of an illegal secondary boycott. The U. S. Supreme Court upheld the judgment in 1952 but Juneau has been unable to collect it. The ILWU says it can't pay because it is broke.

**MR. FUJISAKI,** who was Local 142's secretary-treasurer during the 1950 building deal, admitted that the union never received any money from its tenants during the time he was in office. (The International headquarters of the ILWU remained in the building.)

Mr. Gibson and ILWU Attorney George R. Andersen got into a brief spat over the intensive grilling given Mr. Fujisaki. Mr. Andersen contended that the

questioning "was not in good faith" after Mr. Gibson refused to accept a stipulation offered by the union attorney "to save time."

**MR. FUJISAKI** said Local 142 and the International reached an agreement in 1950 that the Hawaii group would pay $25,000 for the San Francisco building. He said it was also agreed that if the International returned the $25,000, it could have the building back.

(Previous witnesses, including Local 142 President Antonio Rania, have testified that the building is worth several hundred dollars.)

**THERE** was not a single spectator in court throughout the day. The case, which is now in its third month, is in a so-called discovery phase, Juneau Spruce attempting to "discover" assets which can be attached to satisfy its $1,000,000 judgment.

Witnesses who have appeared under subpena thus far include Local 142 President Rania, Local 142 Secretary-Treasurer Newton Miyagi, former Local 136 President Joseph Kealalio and Mr. Fujisaki.

Regional Director Jack Wayne Hall also is under subpena, as are these other union officers: Herman Ing, Justo De La Cruz, Koichi Imori, Andrew Salz, George Martin, Ernest Arena, Primitivo Queja and Bert Nakano.

The hearing is in recess until 10 a.m. Monday. There will be no morning session Tuesday and Wednesday.

# Statehood Commission To