```
1    PACHULSKI STANG ZIEHL & JONES LLP
     Debra I. Grassgreen (CA Bar No. 169978)
2    Jason H. Rosell (CA Bar No. 269126)
     One Sansome Street, Suite 3430
3    San Francisco, California 94104
     Telephone:  (415) 263-7000
4    Facsimile:  (415) 263-7010
     Email:      dgrassgreen@pszjlaw.com
5                jrosell@pszjlaw.com
6
7    Counsel to the Debtor
```

8 UNITED STATES BANKRUPTCY COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL LONGSHORE<br>AND WAREHOUSE UNION,<br><br>Debtor. | Case No. 23-30662-HLB<br><br>Chapter 11<br><br>**MOTION TO DISMISS CHAPTER 11 CASE AND FOR RELATED RELIEF**<br><br><u>Hearing</u>:<br><br>Date:   February 22, 2024<br>Time:   10:00 a.m.  (Pacific Time)<br>Place:  Zoom / Telephonic<br>Judge:  Hon. Hannah L. Blumenstiel |

The International Longshore and Warehouse Union ("<u>ILWU</u>" or the "<u>Debtor</u>"), as debtor and debtor in possession in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>"), files this motion (the "<u>Motion</u>") to dismiss the Chapter 11 Case pursuant to sections 305(a) and 1112(b) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

The Motion is based upon the following memorandum of points and authorities, the declaration of William Adams (the "<u>Adams Declaration</u>") filed concurrently herewith, and any other evidence properly before the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Debtor has successfully resolved its decade-long litigation with ICTSI Oregon, Inc. ("ICTSI") on the terms set forth in that certain *Settlement Agreement* dated January 31, 2024 (the "Settlement Agreement").[1] As a result of the settlement, the Debtor no longer requires the protections provided by the Bankruptcy Code and respectfully submits that dismissal is appropriate and in the best interests of the Debtor and its creditors.

As a result of the Settlement Agreement, neither the Debtor nor its creditors will benefit from confirmation of the Debtor's first amended *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 60] (the "Plan"). ICTSI was the only creditor entitled to vote on the Plan and the only creditor whose rights were being impaired under the Plan. As such, requiring the Debtor to continue prosecuting the Plan will not provide any benefit to creditors and will simply result in increased professional fees in connection with confirmation of the Plan. There are also no adversary proceedings in this Chapter 11 Case, either pending or contemplated, that would be adversely impacted by a dismissal.

In addition, there are no administrative expenses that must be paid through the Plan. The Debtor proposes that the Court retain jurisdiction for the purpose of ruling on any fee application filed by the Subchapter V Trustee. The remaining administrative expenses, including the fees and expenses of the professionals the Debtor retained pursuant to section 327 of the Bankruptcy Code, will be paid by the Debtor following dismissal in the ordinary course of business without further order of the Court.

Dismissal is an efficient resolution of this Chapter 11 Case and is an integral component of the Settlement Agreement as it allows for the settlement payment to be made to ICTSI on an expedited basis. Dismissal will provide a quick and cost-efficient exit and prevent further diminution of estate assets, which is critical to the implementation of the Settlement Agreement. If the Chapter 11 Case

---

[1] The Settlement Agreement is subject to the Court's consideration and approval pursuant to the Debtor's *Motion for the Entry of an Order Authorizing and Approving the Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 146].

remains pending, the Debtor will continue to incur additional administrative expenses for no meaningful purpose.

## II. FACTUAL BACKGROUND[2]

### A. Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are sections 305(a) and 1112(b) of the Bankruptcy Code.

### B. The Debtor

The Debtor was formed in 1937 and is organized under the laws of the State of California as a labor organization within the meaning of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5) (the "LMRA").[3] The primary function of the Debtor is to organize and represent workers. It does so by facilitating the organization of local unions and affiliates and assists them with the negotiation and administration of collective bargaining agreements. The Debtor's members are employed in a variety of industries, including longshore, warehousing and distribution, maritime, agriculture, tourism, retail, and various service industries. The local and affiliate unions are separate legal autonomous entities and are not debtors (or otherwise involved) in this Chapter 11 Case.

### C. Events Leading to the Bankruptcy[4]

Historically, the Debtor was a financially sound and stable organization, primarily funded by per capita payments from local unions and affiliates. However, for the past decade the Debtor has been

---

[2] ILWU understands that ICTSI supports approval of the Motion, but disagrees with several of the facts, statements, and conclusions contained in this Motion and in the Adams Declaration filed in support of this Motion. Rather than describing those disagreements, the parties agree that, if the Settlement Agreement is not approved and the parties must return to litigation, nothing stated by the Debtor in the Motion shall prejudice ICTSI in any way.

[3] The Debtor is exempt from federal income tax under section 501(c)(5) of the Internal Revenue Code.

[4] The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of William E. Adams in Support of First Day Motions* [Docket No. 9] (the "First Day Declaration"), which is incorporated herein by reference.

engaged in contentious litigation with ICTSI.[5] The ICTSI Litigation commenced in June 2012 when the ILWU and Pacific Maritime Association filed a complaint against ICTSI alleging that ICTSI was not in compliance with the collective bargaining agreement covering ILWU longshore workers on the west coast. ICTSI thereafter asserted counterclaims against ILWU and International Longshore and Warehouse Union Local 8 (Portland, Oregon) ("Local 8"), alleging unlawful labor practices. In November 2019, a jury trial verdict was reached against the Debtor and Local 8, finding the Debtor and Local 8 had caused damages to ICTSI of approximately $94 million.

On March 5, 2020, the Oregon Court found the maximum damages supported by the weight of the evidence admitted by the Oregon Court during the two-week trial was $19,061,248, and ordered ICTSI to decide by March 19, 2020, whether it would accept that reduced amount of damages, or retry the amount of damages. After ICTSI rejected the reduced damages amount, a new trial on damages was scheduled to begin late February 2024, but has since been stayed by the commencement of the chapter 11 cases of the Debtor and Local 8 (pending in Oregon). The Debtor estimated that it would need to incur more than $8.5 million in additional legal fees and related expenses through the conclusion of the new damages trial and any related appeals.

### D. The Chapter 11 Case

On September 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court Northern District of California (the "Bankruptcy Court") to immediately address the ICTSI Litigation and emerge as a stronger labor organization. Since the Petition Date, the Debtor has remained in possession of its property and has continued to operate and manage itself as debtor in possession pursuant to section 1184 of the Bankruptcy Code.

Three days after filing the Chapter 11 Case, the Debtor filed its *Schedules of Assets and Liabilities* [Docket No. 32] and *Statements of Financial Affairs* [Docket No. 34] (collectively, the "Schedules").[6] The Schedules disclose that as of the Petition Date, the Debtor had approximately $9.5

---

[5] The district court proceeding pending in the United States District Court for the District of Oregon (the "Oregon Court") under the caption *ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (the "ICTSI Litigation").

[6] The Debtor filed *Amended Schedules A/B* [Docket No. 82] on November 9, 2023.

million of cash-on-hand—the Debtor's only material asset, generated by monthly *per capita* payments by local unions.

E. **The Subchapter V Plan**

On November 2, 2023, the Debtor filed the Plan. Under the proposed Plan, all creditors with allowed administrative and priority claims against the Debtor will be paid on the effective date of the Plan or otherwise in the ordinary course of business. Creditors with general unsecured claims are divided into two classes. Holders of Class 3A Claims (ICTSI Litigation) will receive the GUC Fund (approximately $6.1 million) on the effective date of the Plan in full and final satisfaction of such claims. Holders of Class 3B Claims (Non-ICTSI Litigation General Unsecured Claims) will have their claims reinstated on the effective date of the Plan and will be paid in full in the ordinary course of business from the Debtor's working capital reserve (approximately $1.28 million). Class 3B Claims are not subject to the discharge. Subject to the Court's calendar and availability, a hearing to consider confirmation of the Plan is scheduled for the week of March 25, 2024.

F. **Assets of the Estate**

As set forth in the Plan's liquidation analysis, the liquidation value of the Debtor's assets is approximately $6.5 million. Besides its cash-on-hand, the Debtor is not aware of any other material estate assets. As such, the Debtor does not expect that the value of its estate will materially increase beyond its current value by any method.

G. **Claims Against the Estate**

Non-ICTSI Proofs of Claim. Five claims were filed by the general bar date of December 11, 2023.[7] All of the timely filed claims were either unliquidated or contingent unsecured claims. The rights of these parties will be reinstated on dismissal of this case.

ICTSI Proof of Claim. On December 8, 2023, ICTSI filed Proof of Claim No. 6 on the Claims Register asserting a general unsecured claim against the Debtor in the amount of $209,172,004 based on its asserted unliquidated damages and pre-judgment interest related to the claims asserted in the

---

[7] The IRS filed a proof of claim based on an estimate of the Debtor's FUTA taxes for 2021. Zurich American Insurance Company filed a contingent, unliquidated claim based on the Debtor's insurance obligations. The Pension Benefit Guaranty Corporation filed three proofs of claims regarding the Pension Plan for Officers & Professional Staff of the International Longshore & Warehouse Union of which the Debtor is a contributing sponsor. Under the Plan, these claims would be unimpaired. Upon dismissal, the rights of these parties will be reinstated.

ICTSI Litigation. As discussed below, all claims of ICTSI are being resolved upon dismissal of the Chapter 11 Case and in connection with the Settlement Agreement.

H.      **Proposed Settlement Agreement**

Following several weeks of mediation overseen by Judge Neil Bason, on February 1, 2024, the Debtor filed its *Motion for the Entry of an Order Authorizing and Approving the Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 146] (the "Settlement Motion"). In the Settlement Motion, the Debtor requests that the Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, enter an order approving the Settlement Agreement by and among the Debtor, ILWU Coast Longshore Division ("CLD"), and Pacific Longshoremen's Memorial Association, Inc. ("PLMA" and together with ILWU and CLD, the "Non-Profit Entities"), on the one hand, and ICTSI, on the other hand. The Settlement Motion is set for hearing on the same date as this Motion, and if the Settlement Agreement is approved, the following will take place upon, or shortly after, the effective date of the Settlement Agreement[8]:

1. Upon the effective date of the Settlement Agreement, the Non-Profit Entities shall collectively pay $20.5 million (the "Settlement Payment") to ICTSI. *See Settlement Agreement* §§ 1.6 and 2.1.

2. Upon the effective date of the Settlement Agreement, ICTSI shall provide ILWU with an executed Request for Dismissal to dismiss the ICTSI Litigation with prejudice with respect to ILWU. *See id.* at § 2.2.

3. Upon the effective date of the Settlement Agreement, the mutual releases set forth in the Settlement Agreement will become effective. *See id.* at §§ 3.1–3.3.

4. The Parties shall be bound by the mutual non-disparagement provision set forth in the Settlement Agreement. *See id.* at § 6.1.

In addition, in order to preserve estate resources and facilitate the funding of the Settlement Payment, the Settlement Agreement requires the dismissal of this Chapter 11 Case contemporaneous with the approval of the Settlement Agreement. *See id.* at §§ 2.1 and 5.3.

---

[8]   To the extent the summary in this Motion is inconsistent with the Settlement Agreement, the Settlement Agreement controls.

## III. PROPOSED DISMISSAL PROCEDURES

The Debtor requests that the dismissal order provide that orders entered in the case shall remain in full force and effect despite the dismissal, subject to the exceptions discussed below. The Debtor proposes that the Court retain jurisdiction for the purpose of ruling on the Subchapter V Trustee's final fee application (the "Subchapter V Trustee Fee Claim"). Further, the Debtor proposes that notwithstanding any order to the contrary, the Debtor's professionals retained pursuant to section 327 of the Bankruptcy Code in this Chapter 11 Case, including Pachulski Stang Ziehl & Jones LLP and Paladin Management Group, LLC, be excused from filing applications to be compensated in accordance with section 330 and 331 of the Bankruptcy Code. If authorized, the Debtor will pay such professionals in the ordinary course of business following the dismissal without further order of the Court.

## IV. LEGAL ARGUMENT

### I. The Court May Dismiss The Bankruptcy Case Without Cause

Section 305(a)(1) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may dismiss a case under this title . . . at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). No "cause" is required for the dismissal of a case under section 305(a) of the Bankruptcy Code. One must only show that both creditors and the debtor will benefit from and be better served by a dismissal. *See Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624–26 (B.A.P. 9th Cir. 1995). As described below, dismissal is clearly in the best interest of the Debtor and its creditors in this Chapter 11 Case.

### J. Alternatively, the Court May Dismiss the Bankruptcy Case for Cause

Section 1112(b) of the Bankruptcy Code allows a court to dismiss a case for cause. This section provides in relevant part that:

> [T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

Bankruptcy courts have broad discretion to determine whether cause exists, and once it is found, the court must then dismiss the case, convert the case to chapter 7, or appoint a trustee or examiner. *See, e.g.*, *In re Products Int'l Co.*, 395 B.R. 101, 107 (Bankr. D. Ariz. 2008); *In re YBA Nineteen, LLC*, 505 B.R. 289, 302 (S.D. Cal. 2014); *In re Bronson*, No. AZ-12-1320, 2013 Bankr. LEXIS 4652, at *22–23 (B.A.P. 9th Cir. May 29, 2013).

Section 1112(b)(4) of the Bankruptcy Code sets forth a list of examples of "cause." However, this list is not exhaustive, and "the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) (quoting H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977)), *aff'd,* 264 F.3d 803 (9th Cir. 2001). Courts have found cause to exist for dismissal when the primary purpose of the bankruptcy case has been achieved. *See, e.g.*, *In re MELP, Ltd.*, 143 B.R. 890, 893 (Bankr. E.D. Mo. 1992) ("In this case, MELP came into bankruptcy court seeking the protection of the automatic stay to enable it to reorder its affairs and make peace with its creditors. This purpose has been successfully achieved."), *rev'd on other grounds*, 179 B.R. 636 (E.D. Mo. 1995).

Here, the primary purpose of the bankruptcy has been achieved. From the beginning of this Chapter 11 Case, the Debtor announced its intent to address the litigation with ICTSI and the associated liability. *See* First Day Declaration ¶ 29. If the Settlement Agreement is approved, the claim of ICTSI will have been resolved, the Debtor's liabilities will have been fixed, and the Debtor will have no causes of action to prosecute. Accordingly, the Debtor has nothing to gain by remaining in chapter 11 any longer.

Moreover, any avenue other than dismissal would involve a significant incurrence of resources that would harm the Debtor and offer its creditors no benefit. Requiring the Debtor to continue to prosecute the Plan, with the attendant administrative tasks that would be associated with seeking approval of the Plan, would generate unnecessary expenses to the detriment of the Debtor's estate. In addition, waiting for confirmation of a Plan would only delay payment to ICTSI. If the Chapter 11 Case is dismissed, the rights of creditors and holders of administrative claims are much more quickly reinstated than if these parties must wait for confirmation of the Plan.

Courts have recognized dismissals, and in particular structured dismissals, to be appropriate and in the best interests of creditors in similar circumstances. *See, e.g., In re Buffet Partners, L.P.*, No. 14-30699, 2014 Bankr. LEXIS 3204, at *7-*8 (Bankr. N.D. Tex. July 28, 2014) (approving a dismissal where other options of conversion or plan confirmation "would add significant and unnecessary time and expense," noting that "there is not much in the way of assets left to be administered" and that the "the economic value of the Debtor in this case will be served by dismissing the case, rather than converting it"); *In re Old PXPRT, Inc., f/k/a PopExpert, Inc.*, No. 16-30390-HLB (Bankr. N.D. Cal., Order entered Dec. 13, 2016) (Blumenstiel, J.) (dismissing case following approval of settlement); *In re Donald Chidi Amamgbo*, No. 22-41051-CN (Bankr. N.D. Cal. Order entered May 12, 2023) (dismissal of a subchapter V case following approval of settlement); *In re William M. Lansdale*, 8:09-bk-22982-ES (Bankr. C.D. Cal., Order entered Mar. 4, 2010) (Smith, J.) (dismissing the case following settlement). This Court should follow suit and issue the proposed form of order dismissing the Chapter 11 Case, so that the economic value of the Debtor's estate can be preserved for the benefit of creditors to the maximum extent possible.

## V. CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) granting the Motion; (b) dismissing the Chapter 11 Case; and (c) granting the Debtor such other and further relief as may be appropriate under the circumstances.

Dated: February 2, 2024

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jason H. Rosell*
Debra I. Grassgreen
Jason H. Rosell

*Counsel to the Debtor*

# EXHIBIT A

**Proposed Order**

PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
jrosell@pszjlaw.com

*Counsel to the Debtor*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL LONGSHORE<br>AND WAREHOUSE UNION,<br><br>Debtor. | Case No. 23-30662-HLB<br><br>Chapter 11<br><br>**ORDER DISMISSING THIS CHAPTER 11 CASE PURSUANT TO SECTIONS 305(a) AND 1112(b) OF THE BANKRUPTCY CODE**<br><br><u>Hearing Date:</u><br><br>Date: February 22, 2024 at 10:00 a.m.<br>Place: Zoom / Telephonic<br>Judge: Hon. Hannah L. Blumenstiel |

The *Debtor's Motion for Entry of an Order Dismissing This Chapter 11 Case Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code* [Docket No. _ ] (the "<u>Motion</u>")[1] filed by the International Longshore and Warehouse Union (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "<u>Case</u>"), came before the Court for hearing on February 2, 2024 at 10:00 a.m. (Pacific Time). Appearances were as noted on the record. Based upon the Court's review of the Motion, the declarations and other pleadings filed in support of the Motion, the arguments of counsel at the hearing on the Motion, all pleadings and evidence of record in this Case; and the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion

---

[1] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

SF 4864-1175-3118.1 42339.002

and the hearing were sufficient and proper, and (d) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED**.

2. Pursuant to sections 305(a) and 1112(b) of the Bankruptcy Code, the Case is hereby dismissed.

3. Notwithstanding section 349 of the Bankruptcy Code, all orders of the Court entered in the Chapter 11 Case shall remain in full force and effect despite the dismissal of the Case; *provided*, *however*, notwithstanding any order to the contrary, Debtor's professionals retained pursuant to section 327 of the Bankruptcy Code in this Case, including Pachulski Stang Ziehl & Jones LLP and Paladin Management Group, LLC, are excused from filing applications to be compensated in accordance with section 330 and 331 of the Bankruptcy Code. For the avoidance of doubt, upon entry of this Order, the Debtor is authorized to pay such professionals in the ordinary course of business without further order of the Court.

4. Notwithstanding the dismissal of the Case, the Court shall retain jurisdiction for the purpose of ruling on the Subchapter V Trustee Fee Claim, which shall be filed on or before thirty (30) calendar days after the entry of this Order.

5. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

**\*\* END OF ORDER \*\***