PACHULSKI STANG ZIEHL & JONES LLP
Debra I. Grassgreen (CA Bar No. 169978)
Jason H. Rosell (CA Bar No. 269126)
One Sansome Street, Suite 3430
San Francisco, California 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: dgrassgreen@pszjlaw.com
jrosell@pszjlaw.com

Counsel to the Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION,<br><br>Debtor. | Case No. 23-30662-HLB<br><br>Chapter 11<br><br>**DECLARATION OF WILLIAM E. ADAMS IN SUPPORT OF DEBTOR'S MOTION TO DISMISS CHAPTER 11 CASE AND FOR RELATED RELIEF** |

I, William E. Adams, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the President of the above-captioned debtor and debtor in possession (the "<u>Debtor</u>" or "<u>ILWU</u>") and the designated responsible individual pursuant to Local Rule 4002-1. As President, I am the executive officer of the ILWU and responsible for the day-to-day operations, business, and financial affairs of the ILWU. I am familiar with the ILWU's operations and books and records, which are maintained in the ordinary course of business by the Secretary-Treasurer.

2. Except as otherwise indicated, all facts set forth in this declaration are based on (a) my personal knowledge; (b) information learned from my review of relevant documents; (c) information supplied to me by other members of the Debtor's management team and its advisors; or (d) my opinion based on my experience, knowledge, and information concerning the Debtor's operations and financial condition.

3. I am over the age of 18 and am authorized to submit this declaration on behalf of the Debtor. If called upon, I could and would testify competently to the facts set forth herein.

4. I submit this declaration in support of the *Debtor's Motion to Dismiss Chapter 11 Case and for Related Relief* (the "Motion"),[1] filed concurrently with this declaration.

**A.     The Debtor**

5. The Debtor was formed in 1937 and is organized under the laws of the State of California as a labor organization within the meaning of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5). The Debtor is exempt from federal income tax under section 501(c)(5) of the Internal Revenue Code.

6. The primary function of the Debtor is to organize and represent workers. It does so by facilitating the organization of local unions and affiliates and assists them with the negotiation and administration of collective bargaining agreements. The Debtor's members are employed in a variety of industries, including longshore, warehousing and distribution, maritime, agriculture, tourism, retail, and various service industries. The local and affiliate unions are separate legal autonomous entities and are not debtors (or otherwise involved) in this Chapter 11 Case.

**B.     Events Leading to the Bankruptcy**

7. Historically, the Debtor was a financially sound and stable organization, primarily funded by *per capita* payments from local unions and affiliates. However, for the past decade the Debtor has been engaged in contentious litigation with ICTSI.

8. In June 2012, the ILWU and Pacific Maritime Association filed a complaint against ICTSI alleging that ICTSI was not in compliance with the collective bargaining agreement covering ILWU longshore workers on the west coast. ICTSI thereafter asserted counterclaims against ILWU and International Longshore and Warehouse Union Local 8 (Portland, Oregon) ("Local 8") seeking damages for alleged unlawful labor practices. This action is still pending in the United States District Court for the District of Oregon (the "Oregon Court") under the caption *ICTSI Oregon, Inc. v. International Longshore and Warehouse Union*, Case No. 3:12-cv-1058-SI (the "ICTSI Litigation").

---

[1] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

9. In November 2019, a jury trial verdict was reached against the Debtor and Local 8, finding the Debtor and Local 8 had caused damages to ICTSI of $93,635,000. The jury concluded that 55% of those damages were the responsibility of the Debtor and 45% were the responsibility of Local 8.

10. On March 5, 2020, the Oregon Court found the maximum damages supported by the weight of the evidence admitted by the Oregon Court during the two-week trial was $19,061,248, and ordered ICTSI to decide by March 19, 2020, whether it would accept that reduced amount of damages, or retry the amount of damages.

11. ICTSI rejected the reduced damages amount, and a new trial on damages was scheduled to begin late February 2024. The new trial has been stayed by the commencement of the Debtor's chapter 11 case and Local 8's chapter 11 case (pending in Oregon).

12. The Debtor estimated that it would need to incur more than $8.5 million in additional legal fees and related expenses through the conclusion of the new damages trial and any related appeals.

**C. The Chapter 11 Case**

13. On September 30, 2023 (the "Petition Date"), the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court Northern District of California to immediately address the ICTSI Litigation and emerge as a stronger labor organization.

14. As of the Petition Date, the Debtor had approximately $9.5 million of cash-on-hand, which was and still is the Debtor's only material asset. The Debtor's cash-on-hand is generated by monthly *per capita* payments by local unions.

15. Since the Petition Date, the Debtor has remained in possession of its property and has continued to operate and manage itself as debtor in possession pursuant to section 1184 of the Bankruptcy Code.

**D. The Subchapter V Plan**

16. The Debtor filed its first amended *Plan of Reorganization for Small Business Under Chapter 11* [Docket No. 60] (the "Plan") on November 2, 2023. The Plan proposes to pay all creditors

with allowed administrative and priority claims against the Debtor on the effective date of the Plan or otherwise in the ordinary course of business. The Plan also divides creditors with general unsecured claims into two classes. Holders of Class 3A Claims (ICTSI Litigation) will receive the GUC Fund (approximately $6.1 million) on the effective date of the Plan in full and final satisfaction of such claims. Holders of Class 3B Claims (Non-ICTSI Litigation General Unsecured Claims) will have their claims reinstated on the effective date of the Plan and will be paid in full in the ordinary course of business from the Debtor's working capital reserve (approximately $1.28 million). Class 3B Claims are not subject to the discharge.

17. Subject to the Court's calendar and availability, a hearing to consider confirmation of the Plan is scheduled for the week of March 25, 2024.

E. **Assets of the Estate**

18. As set forth in the Plan's liquidation analysis, the liquidation value of the Debtor's assets is approximately $6.5 million.

19. Besides its cash-on-hand, the Debtor is not aware of any other material estate assets. As such, the Debtor does not expect that the value of its estate will materially increase beyond its current value by any method.

F. **Claims Against the Estate**

20. Five claims were filed by the general bar date of December 11, 2023. The IRS filed a proof of claim based on an estimate of the Debtor's FUTA taxes for 2021. Zurich American Insurance Company filed a claim based on the Debtor's insurance obligations. The Pension Benefit Guaranty Corporation filed three proofs of claims regarding the Pension Plan for Officers & Professional Staff of the International Longshore & Warehouse Union of which the Debtor is a contributing sponsor. All of the timely filed claims are either unliquidated or contingent unsecured claims.

21. On December 8, 2023, ICTSI filed Proof of Claim No. 6 on the Claims Register asserting a general unsecured claim against the Debtor in the amount of $209,172,004 based on its asserted unliquidated damages and pre-judgment interest related to the claims asserted in the ICTSI Litigation. All claims of ICTSI are being resolved upon dismissal of the Chapter 11 Case and in connection with the proposed Settlement Agreement.

G. **Proposed Settlement Agreement**

22. Following several weeks of mediation overseen by Judge Neil Bason, the Debtor filed its *Motion for the Entry of an Order Authorizing and Approving the Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Settlement Motion") on February 1, 2024. In the Settlement Motion, the Debtor requests that the Court enter an order approving the Settlement Agreement by and among the Debtor, ILWU Coast Longshore Division ("CLD"), and Pacific Longshoremen's Memorial Association, Inc. ("PLMA" and together with ILWU and CLD, the "Non-Profit Entities"), on the one hand, and ICTSI, on the other hand. The Settlement Motion is set for hearing on the same date as this Motion.

23. The salient terms of the Settlement Agreement are as follows:

   a. The Non-Profit Entities will collectively pay $20.5 million (the "Settlement Payment") to ICTSI.

   b. The ICTSI Litigation will be dismissed with prejudice with respect to the Debtor.

   c. The Parties will exchange mutual releases as set forth in Sections 3.1 through 3.3 of the Settlement Agreement.

   d. The Parties will be bound by the mutual non-disparagement provision set forth in the Settlement Agreement.

24. To preserve estate resources and enable the funding of the Settlement Payment, the Settlement Agreement requires the concurrent dismissal of this Chapter 11 Case.

25. If the court approves the Settlement Agreement, the primary purpose of the bankruptcy has been achieved. As I stated in my declaration in support of the Debtor's first day motions [Docket No. 9] (the "First Day Declaration"), the Debtor initiated this Chapter 11 Case to immediately address the ICTSI Litigation and emerge as a stronger labor organization. The Settlement Agreement resolves ICTSI's claim, fixes the Debtor's liabilities, and the Debtor will have no causes of action to prosecute.

26. If the case is dismissed, the Debtor will pay its creditors in the ordinary course of business.

27. If authorized, the Debtor will pay its professionals retained pursuant to section 327 of the Bankruptcy Code in the ordinary course of business following the dismissal without further order of the Court.

28. The Debtor believes that the appropriate resolution of this Chapter 11 Case is dismissal, as requested in the Motion. The dismissal this Chapter 11 Case will provide a quick and cost-efficient exit that helps avoid unnecessary professional fees.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: February 1, 2024
San Francisco, California

*William Adams*
William E. Adams, President